**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **BERNARD TOKARZ,** | |
| Plaintiff, | **CIVIL ACTION FILE NO.** |
| vs. | **JURY TRIAL DEMANDED** |
| **CITY OF ATLANTA,** **SHANNON K. MANIGAULT,** *individually and in her official capacity as Inspector General for City of Atlanta* **CITY OF ATLANTA OFFICE OF INSPECTOR GENERAL,** | |
| Defendants. | |

## COMPLAINT

Plaintiff **BERNARD TOKARZ** ("PLAINTIFF" OR "TOKARZ") through his counsel, **STEPHEN M. KATZ, THE KATZ LAW GROUP LLC,** alleges:

## NATURE OF THIS ACTION

1. This is action brought to recover damages and equitable relief under 42 U.S.C. § 1983 for violation of Plaintiff's rights under

the First, Fourth and Fourteenth Amendments, and for invasion of privacy under Georgia law.

### ARTICLE III STANDING & SUBJECT MATTER JURISDICTION

2.     **TOKARZ** has Article III standing to bring his claims in that the Defendant's violation of 42 U.S.C. 1983 (1) has caused **TOKARZ** to suffer an "injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized" , and " (b) "actual or imminent, not conjectural or hypothetical' (2) the injury was directly and causally connected to Defendants' acts and omissions, and (3) it is "likely" as opposed to merely "speculative," that all of **TOKARZ**'s injuries-in-fact will be "redressed by a favorable decision" that awards him a judgment for compensatory damages from City of Atlanta and City of Atlanta Office of Inspector General and compensatory and punitive damages from Defendant Shannon K. Manigault, together with attorney's fees from all Defendants.

3.     This Court has jurisdiction over **TOKARZ**'s claims under 28 U.S.C. §§ 1331, 1367 in that this is an action arising under a federal statute and the state claims are part of a common nucleus of operative facts. 28 U.S.C. § 1367.

## VENUE

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that her claims arose in the Northern District of Georgia.

## PARTIES

5.      **BERNARD TOKARZ,** a United States Citizen, lives in the Northern District of Georgia.

6.      Defendant **CITY OF ATLANTA** is a municipal corporation organized under the laws of the State of Georgia, with its principal offices located at 55 Trinity Avenue, SW, Atlanta, GA. 30303. The City of Atlanta may be served with process through its Mayor or City Attorney.

7.       Defendant **SHANNON K. MANIGAULT** is the current Inspector General for the City of Atlanta. Defendant Manigault can be served by delivering a copy of the summons and complaint to her at 185 Ted Turner Drive, SW, Suite 6200, Atlanta, GA 30303.

8.      Defendant **CITY OF ATLANTA OFFICE OF INSPECTOR GENERAL** is an independent agency formed by the City of Atlanta. Defendant City of Atlanta Office of Inspector General can be served by delivering a copy of the summons and complaint to Shannon K.

Manigault at 185 Ted Turner Drive, SW, Suite 6200, Atlanta, GA 30303.

**FACTS**

A.     **BACKGROUND**

9.     The Office of the Inspector General (OIG) describes itself as "the City of Atlanta's independent watchdog agency for the advancement of integrity in municipal operations."

10.     OIB is comprised of two divisions—Compliance and Independent Procurement Review. OIG conducts investigations and reviews, provides education and advice, and supposedly "enforces rules and regulations to ensure the lawful, effective, and efficient administration of City of Atlanta government."

11.     OIG is tasked with investigating "allegations of fraud, waste, abuse, and corruption, of City of Atlanta employees, elected officials, commission and board members, vendors and subcontractors who do business with the City of Atlanta."

12.     The Inspector General is currently appointed by the Governing Board of the Office of the Inspector General and the Ethics Office (Governing Board), confirmed by Atlanta City Council, and approved by the Mayor."

13.     The Office of the Inspector General is currently an independent body led by the Inspector General. OIG and the Inspector General report to the Governing Board of the Office of the Inspector General and the Ethics Office.

14.     The OIG and Inspector General have a duty to comply with all Georgia statutes and to conduct their investigations in accordance with the laws of the United States Government and the State of Georgia.

15.     O.C.G.A. § 7-1-360(b) provides, in pertinent part:

> (b) Unless directed otherwise by a court of competent jurisdiction, before disclosure, production, or examination of records produced under paragraph (1) or (2) of subsection (a) of this Code section, the agency or other party seeking the disclosure or production of the records shall provide notification to the depositor or other customer of such request.

16.     The OIG and Inspector General are required to comply with O.C.G.A. § 7-1-360(b).

17.     According to the OIG, "the Charter of the City of Atlanta grants OIG the power to issue subpoenas, which principally assists the office in obtaining documentation from third parties. With respect to documentation possessed by the City of Atlanta, the Charter requires

that City departments and employees provide OIG with immediate access to such records." https://atloig.org/faq/

18. The OIG's statements to the public regarding its subpoena power are materially misleading in that the statements omit material limitations on OIG's subpoena power.

19. Article 8, Section 8-101(e)(5) of the City Charter provides:

> Records and property subject to disclosure under this section which state law recognizes as confidential and/or privileged shall be exempt from disclosure to Office of the Inspector General or the Ethics Office or subpoena issued under this section.

20. Bank account records are recognized as private and confidential and are exempt from disclosure to the Office of Inspector General and the Inspector General unless the OIG and the Inspector General comply with O.C.G.A. § 7-1-360(b) .

21. On or about May 26, 2022, the OIG and Inspector General issued a document entitled "Subpoena Duces Tecum" to the Navy Credit Union demanding that it produce the banking records of Eugene ("Gene") Williams for the period from January 1, 2021 through May 26, 2022.

22. The alleged "subpoena duces tecum" demanded production of (a) Checking account records including banking

statements, monthly periodic account statements, debit and credit memos, signature cards, (b) Record of savings accounts, certificates of deposits and other savings instruments, (c) Record of savings accounts, certificates of deposits and other savings instruments, and (d) All other documents necessary to show and identify items credited to and drawn against each account.

23.    The OIG and Inspector General did not comply with O.C.G.A. § 7-1-360(b) in issuing the subpoena for the banking records of Eugene ("Gene") Williams.

24.    The "subpoena duces tecum" contained the following statement in all capital letter so that the OIG and Inspector General could avoid compliance with O.C.G.A. § 7-1-360(b) and avoid disclosure of the subpoena to Eugene ("Gene") Williams:

> DISCLOSURE OF THE EXISTENCE OF THIS SUBPOENA OR ITS CONTENTS COULD IMPEDE THE INVESTIGATION BEING CONDUCTED AND THEREBY INTERFERE WITH THE ENFORCEMENT OF LAW. PLEASE DO NOT NOTIFY.

25.    On or about May 26, 2022, the OIG and Inspector General issued a document entitled "Subpoena Duces Tecum" to the Credit Union of Atlanta demanding that it produce the banking records of

Eugene ("Gene") Williams and Charlie Helton for the period from January 1, 2021 through May 26, 2022.

26.     The alleged "subpoena duces tecum" demanded production of (a) Checking account records including banking statements, monthly periodic account statements, debit and credit memos, signature cards, (b) Record of savings accounts, certificates of deposits and other savings instruments, (c) Record of savings accounts, certificates of deposits and other savings instruments, and (d) All other documents necessary to show and identify items credited to and drawn against each account.

27.     The OIG and Inspector General did not comply with O.C.G.A. § 7-1-360(b) in issuing the subpoena for the banking records of  Eugene ("Gene") Williams and Charlie Helton.

28.     The "subpoena duces tecum" contained the following statement in all capital letter so that the OIG and Inspector General could avoid compliance with O.C.G.A. § 7-1-360(b) and avoid disclosure of the subpoena to  Eugene ("Gene") Williams:

> DISCLOSURE OF THE EXISTENCE OF THIS SUBPOENA OR ITS CONTENTS COULD IMPEDE THE INVESTIGATION BEING CONDUCTED AND THEREBY INTERFERE WITH THE ENFORCEMENT OF LAW. PLEASE DO NOT NOTIFY.

29.     On or about May 26, 2022, the OIG and Inspector General issued a document entitled "Subpoena Duces Tecum" to Block, Inc., 1455 Market Street, Suite 600, San Francisco, CA 94103 demanding that it produce the banking records of Eugene ("Gene") Williams and Charlie Helton for the period from January 1, 2021 through May 26, 2022.

30.     The alleged "subpoena duces tecum" demanded production of (a) Checking account records including banking statements, monthly periodic account statements, debit and credit memos, signature cards, (b) Record of savings accounts, certificates of deposits and other savings instruments, (c) Record of savings accounts, certificates of deposits and other savings instruments, and (d) All other documents necessary to show and identify items credited to and drawn against each account.

31.     The OIG and Inspector General did not comply with O.C.G.A. § 7-1-360(b) in issuing the subpoena for the banking records of Eugene ("Gene") Williams and Charlie Helton.

32.     The "subpoena duces tecum" contained the following statement in all capital letter so that the OIG and Inspector General could avoid compliance with O.C.G.A. § 7-1-360(b) and avoid

disclosure of the subpoena to Eugene ("Gene") Williams and Charlie Helton:

> DISCLOSURE OF THE EXISTENCE OF THIS SUBPOENA OR ITS CONTENTS COULD IMPEDE THE INVESTIGATION BEING CONDUCTED AND THEREBY INTERFERE WITH THE ENFORCEMENT OF LAW. PLEASE DO NOT NOTIFY.

33.     On or about June 30, 2022, the OIG and Inspector General issued a document entitled "Subpoena Duces Tecum" to the Credit Union of Atlanta demanding that it produce the banking records of Rita Braswell for the period from January 1, 2018 through December 31, 2021.

34.     The alleged "subpoena duces tecum" demanded production of (a) Checking account records including banking statements, monthly periodic account statements, debit and credit memos, signature cards, (b) Record of savings accounts, certificates of deposits and other savings instruments, (c) Record of savings accounts, certificates of deposits and other savings instruments, and (d) All other documents necessary to show and identify items credited to and drawn against each account.

35.     The OIG and Inspector General did not comply with O.C.G.A. § 7-1-360(b) in issuing the subpoena for the banking records of Rita Braswell.

36.     The "subpoena duces tecum" contained the following statement in all capital letter so that the OIG and Inspector General could avoid compliance with O.C.G.A. § 7-1-360(b) and avoid disclosure of the subpoena to Rita Braswell:

> DISCLOSURE OF THE EXISTENCE OF THIS SUBPOENA OR ITS CONTENTS COULD IMPEDE THE INVESTIGATION BEING CONDUCTED AND THEREBY INTERFERE WITH THE ENFORCEMENT OF LAW. PLEASE DO NOT NOTIFY

37.     On or about August 13, 2022, the OIG and Inspector General issued a document entitled "Subpoena Duces Tecum" to Block, Inc., 1455 Market Street, Suite 600, San Francisco, CA 94103 demanding that it produce the banking records of Eugene (AKA 'Gene') Williams for the period from January 1, 2020 through August 23, 2022.

38.     The alleged "subpoena duces tecum" demanded production of (a) Checking account records including banking statements, monthly periodic account statements, debit and credit memos, signature cards, (b) Record of savings accounts, certificates of

deposits and other savings instruments, (c) Record of savings accounts, certificates of deposits and other savings instruments, and (d) All other documents necessary to show and identify items credited to and drawn against each account.

39.    The OIG and Inspector General did not comply with O.C.G.A. § 7-1-360(b) in issuing the subpoena for the banking records of  Eugene (AKA 'Gene') Williams.

40.    The "subpoena duces tecum" contained the following statement in all capital letter so that the OIG and Inspector General could avoid compliance with O.C.G.A. § 7-1-360(b) and avoid disclosure of the subpoena to  Eugene (AKA 'Gene') Williams:

> DISCLOSURE OF THE EXISTENCE OF THIS SUBPOENA OR ITS CONTENTS COULD IMPEDE THE INVESTIGATION BEING CONDUCTED AND THEREBY INTERFERE WITH THE ENFORCEMENT OF LAW. PLEASE DO NOT NOTIFY.

41.    On or about December 6, 2022, the OIG and Inspector General issued a document entitled "Subpoena Duces Tecum" to the Velocity Community Credit Union, P.O. Box 30669, Palm Beach Gardens, FL 33420, Attn: Asset Recovery, demanding that it produce the banking records of Glen R. Behrend for the period from January 1, 2022 through October 31, 2022.

42.   The alleged "subpoena duces tecum" demanded production of (a) Checking account records including banking statements, monthly periodic account statements, debit and credit memos, signature cards, (b) Record of savings accounts, certificates of deposits and other savings instruments, (c) Record of savings accounts, certificates of deposits and other savings instruments, and (d) All other documents necessary to show and identify items credited to and drawn against each account.

43.   The OIG and Inspector General did not comply with O.C.G.A. § 7-1-360(b) in issuing the subpoena for the banking records of Glen R. Behrend.

44.   The "subpoena duces tecum" contained the following statement in all capital letter so that the OIG and Inspector General could avoid compliance with O.C.G.A. § 7-1-360(b) and avoid disclosure of the subpoena to Glen R. Behrend:

DISCLOSURE OF THE EXISTENCE OF THIS SUBPOENA OR ITS CONTENTS COULD IMPEDE THE INVESTIGATION BEING CONDUCTED AND THEREBY INTERFERE WITH THE ENFORCEMENT OF LAW. PLEASE DO NOT NOTIFY.

45.   On or about March 23, 2023, the OIG and Inspector General issued a document entitled "Subpoena Duces Tecum" to the

Southern First Bank, 6 Verdae Boulevard, Greenville, SC 39607, demanding that it produce the banking records of Bernard (AKA Bernie) Tokarz for the period from January 1, 2021 through March 27, 2023.

46. The alleged "subpoena duces tecum" demanded production of (a) Checking account records including banking statements, monthly periodic account statements, debit and credit memos, signature cards, (b) Record of savings accounts, certificates of deposits and other savings instruments, (c) Record of savings accounts, certificates of deposits and other savings instruments, and (d) All other documents necessary to show and identify items credited to and drawn against each account.

47. The OIG and Inspector General did not comply with O.C.G.A. § 7-1-360(b) in issuing the subpoena for the banking records of Bernard (AKA Bernie) Tokarz.

48. The "subpoena duces tecum" contained the following statement in all capital letter so that the OIG and Inspector General could avoid compliance with O.C.G.A. § 7-1-360(b) and avoid disclosure of the subpoena to Bernard (AKA Bernie) Tokarz:

DISCLOSURE OF THE EXISTENCE OF THIS SUBPOENA OR ITS CONTENTS COULD IMPEDE THE INVESTIGATION BEING CONDUCTED AND THEREBY INTERFERE WITH THE ENFORCEMENT OF LAW. PLEASE DO NOT NOTIFY.

49. On or about April 7, 2023, the OIG and Inspector General issued a document entitled "Subpoena Duces Tecum" to the Fifth Third Bank, 38 Fountain Square Plaza, Cincinnati, OH 45202, demanding that it produce the banking records of Sheaner Magee for the period from January 1, 2022 through April 7, 2023.

50. The alleged "subpoena duces tecum" demanded production of (a) Checking account records including banking statements, monthly periodic account statements, debit and credit memos, signature cards, (b) Record of savings accounts, certificates of deposits and other savings instruments, (c) Record of savings accounts, certificates of deposits and other savings instruments, and (d) All other documents necessary to show and identify items credited to and drawn against each account.

51. The OIG and Inspector General did not comply with O.C.G.A. § 7-1-360(b) in issuing the subpoena for the banking records of Sheaner Magee.

52.     The "subpoena duces tecum" contained the following statement in all capital letter so that the OIG and Inspector General could avoid compliance with O.C.G.A. § 7-1-360(b) and avoid disclosure of the subpoena to Sheaner Magee:

> DISCLOSURE OF THE EXISTENCE OF THIS SUBPOENA OR ITS CONTENTS COULD IMPEDE THE INVESTIGATION BEING CONDUCTED AND THEREBY INTERFERE WITH THE ENFORCEMENT OF LAW. PLEASE DO NOT NOTIFY.

53.     On or about April 7, 2023, the OIG and Inspector General issued a document entitled "Subpoena Duces Tecum" to the Navy Federal Credit Union, 820 Follin Lane SE, Vienna, VA 22180, demanding that it produce the banking records of Sheaner Magee for the period from January 1, 2022 through April 7, 2023.

54.     The alleged "subpoena duces tecum" demanded production of (a) Checking account records including banking statements, monthly periodic account statements, debit and credit memos, signature cards, (b) Record of savings accounts, certificates of deposits and other savings instruments, (c) Record of savings accounts, certificates of deposits and other savings instruments, and (d) All other documents necessary to show and identify items credited to and drawn against each account.

55. The OIG and Inspector General did not comply with O.C.G.A. § 7-1-360(b) in issuing the subpoena for the banking records of Sheaner Magee.

56. The "subpoena duces tecum" contained the following statement in all capital letter so that the OIG and Inspector General could avoid compliance with O.C.G.A. § 7-1-360(b) and avoid disclosure of the subpoena to Sheaner Magee:

> DISCLOSURE OF THE EXISTENCE OF THIS SUBPOENA OR ITS CONTENTS COULD IMPEDE THE INVESTIGATION BEING CONDUCTED AND THEREBY INTERFERE WITH THE ENFORCEMENT OF LAW. PLEASE DO NOT NOTIFY.

57. On or about April 7, 2023, the OIG and Inspector General issued a document entitled "Subpoena Duces Tecum" to the Early Warning Services, 5801 N. Pima Road, Scottsdale, AZ 85250, demanding that it produce the banking records of Sheaner Magee for the period from January 1, 2022 through April 7, 2023.

58. The alleged "subpoena duces tecum" demanded production of all documents related to certain ZELLE accounts (a) Checking account records including banking statements, monthly periodic account statements, debit and credit memos, signature cards,

(b) Record of savings accounts, certificates of deposits and other savings instruments, (c) Record of savings accounts, certificates of deposits and other savings instruments, and (d) All other documents necessary to show and identify items credited to and drawn against each account.

59. The OIG and Inspector General did not comply with O.C.G.A. § 7-1-360(b) in issuing the subpoena for the ZELLE and banking records of Sheaner Magee.

60. The "subpoena duces tecum" contained the following statement in all capital letter so that the OIG and Inspector General could avoid compliance with O.C.G.A. § 7-1-360(b) and avoid disclosure of the subpoena to Sheaner Magee:

> DISCLOSURE OF THE EXISTENCE OF THIS SUBPOENA OR ITS CONTENTS COULD IMPEDE THE INVESTIGATION BEING CONDUCTED AND THEREBY INTERFERE WITH THE ENFORCEMENT OF LAW. PLEASE DO NOT NOTIFY.

61. On or about April 18, 2023, the OIG and Inspector General issued a document entitled "Subpoena Duces Tecum" to the Credit Union of Atlanta, 670 Metropolitan Parkway, SW, Atlanta, GA 30310,

demanding that it produce the banking records of Carla Lipscomb for the period from January 1, 2020 through October 31, 2021.

62. The alleged "subpoena duces tecum" demanded production of all documents relating to (a) Checking account records including banking statements, monthly periodic account statements, debit and credit memos, signature cards, (b) Record of savings accounts, certificates of deposits and other savings instruments, (c) Record of savings accounts, certificates of deposits and other savings instruments, and (d) All other documents necessary to show and identify items credited to and drawn against each account.

63. The OIG and Inspector General did not comply with O.C.G.A. § 7-1-360(b) in issuing the subpoena for the banking records of Carla Lipscomb.

64. The "subpoena duces tecum" contained the following statement in all capital letter so that the OIG and Inspector General could avoid compliance with O.C.G.A. § 7-1-360(b) and avoid disclosure of the subpoena to Carla Lipscomb:

> DISCLOSURE OF THE EXISTENCE OF THIS SUBPOENA OR ITS CONTENTS COULD IMPEDE THE INVESTIGATION BEING CONDUCTED AND THEREBY INTERFERE WITH THE ENFORCEMENT OF LAW. PLEASE DO NOT NOTIFY.

65.     On or about April 18, 2023, the OIG and Inspector General issued a document entitled "Subpoena Duces Tecum" to the Bank of America, 100 North Tryon Street, Charlotte, NC 28255, demanding that it produce the banking records of Carla Lipscomb for the period from January 1, 2020 through October 31, 2021.

66.     The alleged "subpoena duces tecum" demanded production of all documents relating to (a) Checking account records including banking statements, monthly periodic account statements, debit and credit memos, signature cards, (b) Record of savings accounts, certificates of deposits and other savings instruments, (c) Record of savings accounts, certificates of deposits and other savings instruments, and (d) All other documents necessary to show and identify items credited to and drawn against each account.

67.     The OIG and Inspector General did not comply with O.C.G.A. § 7-1-360(b) in issuing the subpoena for the banking records of Carla Lipscomb.

68.     The "subpoena duces tecum" contained the following statement in all capital letter so that the OIG and Inspector General could avoid compliance with O.C.G.A. § 7-1-360(b) and avoid disclosure of the subpoena to Carla Lipscomb:

DISCLOSURE OF THE EXISTENCE OF THIS SUBPOENA OR ITS CONTENTS COULD IMPEDE THE INVESTIGATION BEING CONDUCTED AND THEREBY INTERFERE WITH THE ENFORCEMENT OF LAW. PLEASE DO NOT NOTIFY.

69.	On or about May 2, 2023, the OIG and Inspector General issued a document entitled "Subpoena Duces Tecum" to Wells Fargo Bank, PO Box 29728, Phoenix, AZ 85038, demanding that it produce the banking records of Carla Lipscomb for the period from January 1, 2020 through October 31, 2021.

70.	The alleged "subpoena duces tecum" demanded production of all documents relating to ZELLE accounts and (a) Checking account records including banking statements, monthly periodic account statements, debit and credit memos, signature cards, (b) Record of savings accounts, certificates of deposits and other savings instruments, (c) Record of savings accounts, certificates of deposits and other savings instruments, and (d) All other documents necessary to show and identify items credited to and drawn against each account.

71.	The OIG and Inspector General did not comply with O.C.G.A. § 7-1-360(b) in issuing the subpoena for the ZELLE and banking records of Carla Lipscomb.

72. The "subpoena duces tecum" contained the following statement in all capital letter so that the OIG and Inspector General could avoid compliance with O.C.G.A. § 7-1-360(b) and avoid disclosure of the subpoena to Carla Lipscomb:

> DISCLOSURE OF THE EXISTENCE OF THIS SUBPOENA OR ITS CONTENTS COULD IMPEDE THE INVESTIGATION BEING CONDUCTED AND THEREBY INTERFERE WITH THE ENFORCEMENT OF LAW. PLEASE DO NOT NOTIFY.

73. On or about May 2, 2023, the OIG and Inspector General issued a document entitled "Subpoena Duces Tecum" to Block, Inc., 1455 Market Street, Suite 600, San Francisco, CA 94103, demanding that it produce the banking records of Carla Lipscomb for the period from January 1, 2020 through October 31, 2021.

74. The alleged "subpoena duces tecum" demanded production of all documents relating to (a) Checking account records including banking statements, monthly periodic account statements, debit and credit memos, signature cards, (b) Record of savings accounts, certificates of deposits and other savings instruments, (c) Record of savings accounts, certificates of deposits and other savings

instruments, and (d) All other documents necessary to show and identify items credited to and drawn against each account.

75.    The OIG and Inspector General did not comply with O.C.G.A. § 7-1-360(b) in issuing the subpoena for the banking records of Carla Lipscomb.

76.    The "subpoena duces tecum" contained the following statement in all capital letter so that the OIG and Inspector General could avoid compliance with O.C.G.A. § 7-1-360(b) and avoid disclosure of the subpoena to Carla Lipscomb:

> DISCLOSURE OF THE EXISTENCE OF THIS SUBPOENA OR ITS CONTENTS COULD IMPEDE THE INVESTIGATION BEING CONDUCTED AND THEREBY INTERFERE WITH THE ENFORCEMENT OF LAW. PLEASE DO NOT NOTIFY.

77.    On or about May 2, 2023, the OIG and Inspector General issued a document entitled "Subpoena Duces Tecum" to the Early Warning Services, 5801 North Pima Road, Scottsdale, AZ 85250, demanding that it produce the banking records of Carla Lipscomb for the period from January 1, 2020 through October 31, 2021.

78.    The alleged "subpoena duces tecum" demanded production of all documents relating to (a) Checking account records

including banking statements, monthly periodic account statements, debit and credit memos, signature cards, (b) Record of savings accounts, certificates of deposits and other savings instruments, (c) Record of savings accounts, certificates of deposits and other savings instruments, and (d) All other documents necessary to show and identify items credited to and drawn against each account.

79.    The OIG and Inspector General did not comply with O.C.G.A. § 7-1-360(b) in issuing the subpoena for the banking records of Carla Lipscomb.

80.    The "subpoena duces tecum" contained the following statement in all capital letter so that the OIG and Inspector General could avoid compliance with O.C.G.A. § 7-1-360(b) and avoid disclosure of the subpoena to Carla Lipscomb:

> DISCLOSURE OF THE EXISTENCE OF THIS SUBPOENA OR ITS CONTENTS COULD IMPEDE THE INVESTIGATION BEING CONDUCTED AND THEREBY INTERFERE WITH THE ENFORCEMENT OF LAW. PLEASE DO NOT NOTIFY.

81.    On or about July 24, 2023, the OIG and Inspector General issued a document entitled "Subpoena Duces Tecum" to the Block, Inc., 1455 Market Street, Suite 600, San Francisco, CA 94103, demanding

that it produce the banking records of Xklusiv Sounds for the period from January 1, 2021 through July 24, 2023.

82.    The alleged "subpoena duces tecum" demanded production of all documents relating to (a) Checking account records including banking statements, monthly periodic account statements, debit and credit memos, signature cards, (b) Record of savings accounts, certificates of deposits and other savings instruments, (c) Record of savings accounts, certificates of deposits and other savings instruments, and (d) All other documents necessary to show and identify items credited to and drawn against each account.

83.    The OIG and Inspector General did not comply with O.C.G.A. § 7-1-360(b) in issuing the subpoena for the banking records of Xklusiv Sounds.

84.    The "subpoena duces tecum" contained the following statement in all capital letter so that the OIG and Inspector General could avoid compliance with O.C.G.A. § 7-1-360(b) and avoid disclosure of the subpoena to Xklusiv Sounds:

> DISCLOSURE OF THE EXISTENCE OF THIS SUBPOENA OR ITS CONTENTS COULD IMPEDE THE INVESTIGATION BEING CONDUCTED AND THEREBY INTERFERE WITH THE ENFORCEMENT OF LAW. PLEASE DO NOT NOTIFY.

85. On or about August 11, 2023, the OIG and Inspector General issued a document entitled "Subpoena Duces Tecum" to the Wells Fargo Bank, PO Box 29728, Phoenix, AZ 85038, demanding that it produce the banking records of Angela Epps for the period from January 1, 2021 through August 10, 2023.

86. The alleged "subpoena duces tecum" demanded production of all documents relating to (a) Checking account records including banking statements, monthly periodic account statements, debit and credit memos, signature cards, (b) Record of savings accounts, certificates of deposits and other savings instruments, (c) Record of savings accounts, certificates of deposits and other savings instruments, and (d) All other documents necessary to show and identify items credited to and drawn against each account.

87. The OIG and Inspector General did not comply with O.C.G.A. § 7-1-360(b) in issuing the subpoena for the banking records of Angela Epps.

88. The "subpoena duces tecum" contained the following statement in all capital letter so that the OIG and Inspector General

could avoid compliance with O.C.G.A. § 7-1-360(b) and avoid disclosure of the subpoena to Angela Epps:

> DISCLOSURE OF THE EXISTENCE OF THIS SUBPOENA OR ITS CONTENTS COULD IMPEDE THE INVESTIGATION BEING CONDUCTED AND THEREBY INTERFERE WITH THE ENFORCEMENT OF LAW. PLEASE DO NOT NOTIFY.

89. On or about August 11, 2023, the OIG and Inspector General issued a document entitled "Subpoena Duces Tecum" to the Fifth Third Bank, 38 Fountain Square Plaza, Cincinnatti, OH 45202, demanding that it produce the banking records of Yedidiah Omodare for the period from January 1, 2021 through August 10, 2023.

90. The alleged "subpoena duces tecum" demanded production of all documents relating to (a) Checking account records including banking statements, monthly periodic account statements, debit and credit memos, signature cards, (b) Record of savings accounts, certificates of deposits and other savings instruments, (c) Record of savings accounts, certificates of deposits and other savings instruments, and (d) All other documents necessary to show and identify items credited to and drawn against each account.

91.    The OIG and Inspector General did not comply with O.C.G.A. § 7-1-360(b) in issuing the subpoena for the banking records of Yedidiah Omodare.

92.    The "subpoena duces tecum" contained the following statement in all capital letter so that the OIG and Inspector General could avoid compliance with O.C.G.A. § 7-1-360(b) and avoid disclosure of the subpoena to Yedidiah Omodare:

> DISCLOSURE OF THE EXISTENCE OF THIS SUBPOENA OR ITS CONTENTS COULD IMPEDE THE INVESTIGATION BEING CONDUCTED AND THEREBY INTERFERE WITH THE ENFORCEMENT OF LAW. PLEASE DO NOT NOTIFY.

93.    On or about August 11, 2023, the OIG and Inspector General issued a document entitled "Subpoena Duces Tecum" to the Wells Fargo Bank, PO Box 29728, Phoenix, AZ 85038, demanding that it produce the banking records of Shaniecia Tucker for the period from January 1, 2020 through July 20, 2023.

94.    The alleged "subpoena duces tecum" demanded production of all documents relating to (a) Checking account records including banking statements, monthly periodic account statements, debit and credit memos, signature cards, (b) Record of savings

accounts, certificates of deposits and other savings instruments, (c) Record of savings accounts, certificates of deposits and other savings instruments, and (d) All other documents necessary to show and identify items credited to and drawn against each account.

95.    The OIG and Inspector General did not comply with O.C.G.A. § 7-1-360(b) in issuing the subpoena for the banking records of Shaniecia Tucker.

96.    The "subpoena duces tecum" contained the following statement in all capital letter so that the OIG and Inspector General could avoid compliance with O.C.G.A. § 7-1-360(b) and avoid disclosure of the subpoena to Shaniecia Tucker:

> DISCLOSURE OF THE EXISTENCE OF THIS SUBPOENA OR ITS CONTENTS COULD IMPEDE THE INVESTIGATION BEING CONDUCTED AND THEREBY INTERFERE WITH THE ENFORCEMENT OF LAW. PLEASE DO NOT NOTIFY.

97.    On or about August 11, 2023, the OIG and Inspector General issued a document entitled "Subpoena Duces Tecum" to the Block, Inc., 1455 Market Street, Suite 600, San Francisco, CA 94103, demanding that it produce the banking records of Shaniecia Tucker for the period from January 1, 2021 through August 10, 2023.

98. The alleged "subpoena duces tecum" demanded production of all documents relating to CASH APP and (a) Checking account records including banking statements, monthly periodic account statements, debit and credit memos, signature cards, (b) Record of savings accounts, certificates of deposits and other savings instruments, (c) Record of savings accounts, certificates of deposits and other savings instruments, and (d) All other documents necessary to show and identify items credited to and drawn against each account.

99. The OIG and Inspector General did not comply with O.C.G.A. § 7-1-360(b) in issuing the subpoena for the banking records of Shaniecia Tucker.

100. The "subpoena duces tecum" contained the following statement in all capital letter so that the OIG and Inspector General could avoid compliance with O.C.G.A. § 7-1-360(b) and avoid disclosure of the subpoena to Shaniecia Tucker:

> DISCLOSURE OF THE EXISTENCE OF THIS SUBPOENA OR ITS CONTENTS COULD IMPEDE THE INVESTIGATION BEING CONDUCTED AND THEREBY INTERFERE WITH THE ENFORCEMENT OF LAW. PLEASE DO NOT NOTIFY.

101. On or about August 11, 2023, the OIG and Inspector General issued a document entitled "Subpoena Duces Tecum" to Early Warning Systems, 5801 North Pima Road, Scottsdale, AZ 85250, demanding that it produce the banking records of Shaniecia Tucker for the period from January 1, 2021 through August 10, 2023.

102. The alleged "subpoena duces tecum" demanded production of all documents relating to ZELLE and (a) Checking account records including banking statements, monthly periodic account statements, debit and credit memos, signature cards, (b) Record of savings accounts, certificates of deposits and other savings instruments, (c) Record of savings accounts, certificates of deposits and other savings instruments, and (d) All other documents necessary to show and identify items credited to and drawn against each account.

103. The OIG and Inspector General did not comply with O.C.G.A. § 7-1-360(b) in issuing the subpoena for the ZELLE and banking records of Shaniecia Tucker.

104. The "subpoena duces tecum" contained the following statement in all capital letter so that the OIG and Inspector General could avoid compliance with O.C.G.A. § 7-1-360(b) and avoid disclosure of the subpoena to Shaniecia Tucker:

DISCLOSURE OF THE EXISTENCE OF THIS SUBPOENA OR ITS CONTENTS COULD IMPEDE THE INVESTIGATION BEING CONDUCTED AND THEREBY INTERFERE WITH THE ENFORCEMENT OF LAW. PLEASE DO NOT NOTIFY.

105. On or about August 11, 2023, the OIG and Inspector General issued a document entitled "Subpoena Duces Tecum" to Navy Credit Union, 820 Follin Lane SE, Vienna, VA 22180, demanding that it produce the banking records of Angela Epps for the period from January 1, 2021 through August 10, 2023.

106. The alleged "subpoena duces tecum" demanded production of all documents relating to (a) Checking account records including banking statements, monthly periodic account statements, debit and credit memos, signature cards, (b) Record of savings accounts, certificates of deposits and other savings instruments, (c) Record of savings accounts, certificates of deposits and other savings instruments, and (d) All other documents necessary to show and identify items credited to and drawn against each account.

107. The OIG and Inspector General did not comply with O.C.G.A. § 7-1-360(b) in issuing the subpoena for the banking records of Angela Epps.

108. The "subpoena duces tecum" contained the following statement in all capital letter so that the OIG and Inspector General could avoid compliance with O.C.G.A. § 7-1-360(b) and avoid disclosure of the subpoena to Angela Epps:

> DISCLOSURE OF THE EXISTENCE OF THIS SUBPOENA OR ITS CONTENTS COULD IMPEDE THE INVESTIGATION BEING CONDUCTED AND THEREBY INTERFERE WITH THE ENFORCEMENT OF LAW. PLEASE DO NOT NOTIFY.

109. On or about August 11, 2023, the OIG and Inspector General issued a document entitled "Subpoena Duces Tecum" to Credit Union of Atlanta, 670 Metropolitan Parkway, SW, Atlanta, GA 30310, demanding that it produce the banking records of Angela Epps for the period from January 1, 2021 through August 10, 2023.

110. The alleged "subpoena duces tecum" demanded production of all documents relating to (a) Checking account records including banking statements, monthly periodic account statements, debit and credit memos, signature cards, (b) Record of savings accounts, certificates of deposits and other savings instruments, (c) Record of savings accounts, certificates of deposits and other savings

instruments, and (d) All other documents necessary to show and identify items credited to and drawn against each account.

111. The OIG and Inspector General did not comply with O.C.G.A. § 7-1-360(b) in issuing the subpoena for the banking records of Angela Epps.

112. The "subpoena duces tecum" contained the following statement in all capital letter so that the OIG and Inspector General could avoid compliance with O.C.G.A. § 7-1-360(b) and avoid disclosure of the subpoena to Angela Epps:

> DISCLOSURE OF THE EXISTENCE OF THIS SUBPOENA OR ITS CONTENTS COULD IMPEDE THE INVESTIGATION BEING CONDUCTED AND THEREBY INTERFERE WITH THE ENFORCEMENT OF LAW. PLEASE DO NOT NOTIFY.

113. On or about April 26, 2024, the OIG and Inspector General issued a document entitled "Subpoena Duces Tecum" to Early Warning Services, 5801 North Pima Road, Scottsdale, AZ 85250, demanding that it produce the banking records of John or Jane Doe for the period from January 1, 2021 through April 2, 2024.

114. The alleged "subpoena duces tecum" demanded production of all documents relating to ZELLE accounts including

without limitation, Account records including 1. applications, banking statements, transaction details, monthly periodic account statements, debit and credit memos, list of account holders, and signature cards, and 2. All other documents necessary to show and identify the account and/or username for all items credited to and drawn against each account.

115.   The OIG and Inspector General did not comply with O.C.G.A. § 7-1-360(b) in issuing the subpoena for the banking records of John or Jane Doe.

116.   The "subpoena duces tecum" contained the following statement in all capital letter so that the OIG and Inspector General could avoid compliance with O.C.G.A. § 7-1-360(b) and avoid disclosure of the subpoena to Angela Epps:

> DISCLOSURE OF THE EXISTENCE OF THIS SUBPOENA OR ITS CONTENTS COULD IMPEDE THE INVESTIGATION BEING CONDUCTED AND THEREBY INTERFERE WITH THE ENFORCEMENT OF LAW. PLEASE DO NOT NOTIFY.

117.   On or about February 3 2025, the City of Atlanta issued a "cease and desist" letter to the OIG and the Inspector General

demanding that they stop the pattern and practice of violating the rights of citizens, vendors and employees of the City of Atlanta.

118. The February 3, 2025 letter from the City of Atlanta through its General Counsel, provided in pertinent part:

> On behalf of the City of Atlanta, I am demanding that your office cease the practice of adding disclosure notices on your subpoenas immediately. The specific language to be removed is "Disclosure of the existence of this subpoena or its contents could impede the investigation being conducted and thereby interfere with the enforcement of the law. Please do not notify." This language is designed to have financial institutions view this subpoena as being one issued pursuant to O.C.G.A. Section 7-1-360(3) as part of a criminal or tax investigation of the depositor or customer of the financial institution. Your subpoenas are in the nature of those issued pursuant to O.C.G.A. Section 7-1-360(2). The difference is the requirement of notice to be provided to the depositor or customer of the financial institution.
>
> The situation recently came to my office's attention. I am hereby notifying you that this practice must cease immediately. The failure to provide notice to the depositor or customer which is a citizen, vendor or employee of the City of Atlanta is not legal, and it places the City of Atlanta at risk for potential liability for this **intentional violation** of Georgia's Banking and Finance laws. The is practice also subverts the provisions in Part I, (Charter and Related Laws), Subpart A, (Charter), Article 8, Section 8-10-1(e) of the Municipal Code of the City of Atlanta which grants a party subject to a subpoena the right to file a motion with your board to seek to quash the subpoena. Without notice of the issuance of the subpoena, this right has been eviscerated. (emphasis added).

119. As a direct and proximate result of the Defendants' practice and pattern of issuing subpoenas in violation of the privacy rights of citizens, vendors and employees of the City of Atlanta, Tokarz has suffered injury.

120. More specifically, after violating Plaintiff's rights under the Fourth and Fourteenth Amendments, Defendant Manigault used the illegally obtained banking records to file a frivolous ethics complaint with the State Ethics Commission.

121. On August 14, 2024, Defendant Manigault issued a report in which she accused Tokarz and others of corruption and financial misconduct. At the time she issued the report, the OIG and Defendant Manigault had completed their investigation of Tokarz.

122. On September 3, 2024, Tokarz responded in writing in which he refuted Defendant Manigault's report and exercised his First Amendment right to publicly denounce her investigative methods, misconduct and violations of his and others' constitutional rights, stating in part:

> The federal government has identified standards for evaluating the performance and professional conduct of inspector generals. These standards include four categories: Integrity, Objectivity, Independence, and Professional Judgment. OIG's letter dated 14

August 2024 demonstrates that the current OIG is grossly deficient in all four areas. The OIG's misstatement of law and facts, mischaracterization of evidence, interference with constitutional rights, incompetent fact finding, and overt political attack on a private citizen and a Member of the Atlanta City Council demonstrate that she lacks Integrity, Objectivity, Independence, and Professional Judgment necessary for the Inspector General position. As set forth herein, OIG's letter to you dated 14 August 2024 is an abuse of power, an abuse of the current OIG's authority that not only lessens public confidence in City Government but subjects the City to liability and impairs the functioning of critical departments that serve Atlanta's citizens. Atlanta's citizens deserve better, and we implore elected officials to take immediate corrective action.[1]

123.   Specifically, Defendant Manigault disclosed and used the illegally obtained banking information in the frivolous ethics complaint and went so far as to include copies of illegally obtained financial documents in the body of the frivolous complaint to the State Ethics Commission. (Exhibit 1).

124.   The State Ethics Commission summarily dismissed Defendant Manigault's frivolous complaint.

125.   Defendant Manigault's frivolous complaint to the State Ethics Commission was clearly retaliatory because the frivolous ethics

---

[1] Tokarz's reference to ethics standards of federal OIGs in his September 3, 2024 statement was by way of example of ethical guidelines that should govern OIG conduct and was not intended to assert that Defendant Manigault was or has ever been a federal official.

complaint was made well after OIG and the Inspector General concluded their investigation of Tokarz and submitted a report and only *after* Tokarz issued a response to the report of the OIG and Inspector General.

126. The retaliatory State Ethics Commission complaint by Manigault was clearly intended to interfere with Tokarz's First Amendment rights.

## COUNT I
### PRELIMINARY AND PERMANENT INJUNCTION
### ENJOINING FUTURE VIOLATIONS OF 42 U.S.C. 1983

127. Plaintiff reasserts and incorporates the allegations of paragraphs 1 through 126 of this Complaint as if set forth in this paragraph.

128. Plaintiff has suffered irreparable injury and will suffer additional injury in the future, the exact extent, nature, and amount of such injury and potential injury being impossible to ascertain at this time.

129. Plaintiff is without an adequate remedy at law and, unless Defendant is enjoined by the Court from violating Plaintiff and others' rights under the First, Fourth and Fourteenth Amendments, Defendant

will continue to cause irreparable injury and damages to Plaintiff and others through the wrongful acts complained of herein.

130.  Plaintiff has a substantial likelihood of success in the merits of the claims he asserts in this Complaint under the First, Fourth and Fourteenth Amendments.

131.  Plaintiff and the community will be irreparably harmed unless Defendants, and, more particularly, Defendant Manigault, are enjoined via a  preliminary and permanent injunction prohibiting Defendants from violating his constitutional rights and those of other citizens.

132.  The burden to be imposed upon Defendants by the grant of injunctive relief is far outweighed by the harm to be suffered by Plaintiff arising from the actions and conduct of Defendants.

## COUNT II
### VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS, 42 U.S.C. § 1983

133.  Plaintiff reasserts and incorporates the allegations of paragraphs 1 through 132 of this Complaint as if set forth in this paragraph.

134. At all times relevant to this action Defendant Manigault and members of the OIG staff under her direction acted under color of state law and in the scope of their duties with OIG.

135. At all times relevant to his action, Plaintiff has had a privacy interest in the banking records described herein.

136. At no time did Defendants have a warrant to search the private property belonging to Plaintiff.

137. The searches of Plaintiff's property was not subject to the warrantless administrative exception to the Fourth Amendment and did not confer authority on the Defendants to ignore the requirement for a warrant.

138. Defendants were not conducting a "criminal or tax investigation as defined by O.C.G.A. § 7-1-360(a)(3).

139. Defendants were required to comply with O.C.G.A. § 7-1-360(2).

140. As set forth in the City of Atlanta's February 3, 2025 "cease and desist" letter to Defendant Manigault, the failure to comply with the provisions of O.C.G.A. § 7-1-360(a)(3) and violations of Plaintiff's rights under the Fourth and Fourteenth Amendments were "intentional."

141.   Defendants have engaged in a policy, practice, or custom that violates the Fourth Amendment to the United States Constitution, to wit: the unlawful seizure of Plaintiff's confidential banking information without due process of law.

142.   In acting as alleged in this complaint, Defendants violated Plaintiff's right to be free of unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

143.   As a direct and proximate result of defendants' actions, described in this complaint, plaintiff has suffered injury, loss, and damage, including  loss of liberty, invasion of privacy, emotional distress, pain, suffering, and property damage.

144.   Defendant Manigault acted knowingly, willfully, and maliciously, and with reckless and callous disregard for Plaintiff's federally protected rights under the Fourth and Fourteenth Amendments to the United States Constitution.

145.   Plaintiff is entitled to have and recover from all Defendants reasonable attorneys' fees in accordance with the provisions of The Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988, and 28 U.S.C. § 1920, including, without limitation, filing fees,

transcripts, costs related to reproduction of documents, etc. Plaintiff also seeks to recover non-taxable costs, including, without limitation, expert witness fees.

## COUNT III
### VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHTS, 42 U.S.C. § 1983

146. Plaintiff reasserts and incorporates the allegations of paragraphs 1 through 145 of this Complaint as if set forth in this paragraph.

147. At all times relevant to this action, the speech engaged in by Plaintiff on September 3, 2024 and thereafter was made in his capacity as a private citizen and not as an employee of City of Atlanta in that his speech regarding his opposition to the August 14, 2024 report issued by the OIG and Inspector General accusing Plaintiff of misconduct.

148. Plaintiff's speech, i.e. voicing opposition and providing a detailed refutation of Defendant Manigault's allegations of corruption against Plaintiff, constituted a "matter of public concern" as that phrase has been defined and interpreted under First Amendment jurisprudence.

149. Plaintiff's First Amendment interest in engaging in the speech outweighed the Defendant Manigault's interests in prohibiting

the speech in that Plaintiff's speech was political and concerned redressing grievances against a government official and entity. Further Plaintiff's speech (i) did not impede the defendants' ability to perform their functions efficiently and in a non-discriminatory fashion, (ii) was exercised in an appropriate manner, time, and place, and (iii) was exercised within an appropriate context.

150.   At all times relevant to this action, Defendant Manigault acted under color of state law.

151.   At all times relevant to this action, City of Atlanta had a policy, practice and/or custom of allowing Defendant Manigault to retaliate against individuals who spoke out on matters of public concern.

152.   Plaintiff's speech played a "substantial part" in Defendant Manigault's decision to file the frivolous State Ethics Commission charges with illegally obtained financial documents; Defendant Manigault would not have taken the same action absent Plaintiff's protected speech.

153.   As a direct and proximate result of the adverse action by Defendants, and, more particularly, Defendant Manigault, Plaintiff has sustained financial losses, for which he is entitled to recover.

154.   As a direct and proximate result of the violation of his rights under the First and Fourteenth Amendment, Plaintiff has sustained mental anguish for which he is entitled to recover.

155.   Defendant Manigault acted maliciously, willfully and wantonly and in reckless disregard for Plaintiff's rights under the First and Fourteenth Amendments, thereby entitling Plaintiff to punitive damages against her.

156.   Plaintiff is entitled to have and recover from all Defendants reasonable attorneys' fees in accordance with the provisions of The Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988, and 28 U.S.C. § 1920, including, without limitation, filing fees, transcripts, costs related to reproduction of documents, etc.  Plaintiff also seeks to recover non-taxable costs, including, without limitation, expert witness fees.

157.   Plaintiff should have and recover equitable relief from Defendant Manigault, sued in her individual and official capacity, consisting of, among other things, a permanent injunction prohibiting further retaliatory misconduct, together with such other and further equitable relief this court deems appropriate.

## COUNT IV

## INVASION OF PRIVACY

## (MANIGAULT)

158.  Plaintiff reasserts and incorporates the allegations of paragraphs 1 through 157 of this Complaint as if set forth in this paragraph.

159.  The conduct in which Defendant Manigault engaged, as described above, constituted an affront to Plaintiff personal dignity and an intrusion of solitude and private affairs.

160.  As a direct and proximate result of the Defendant Manigault's actions, Plaintiff has suffered damages, which he is entitled to recover from Defendants.

161.  Defendant Manigault's invasion of privacy caused, and will continue to cause, Plaintiff mental anguish depression, anxiety, loss of enjoyment of life, and other non-pecuniary losses for which he is entitled to recover.

162.  Plaintiff is entitled to recover from the Defendant Manigault general (compensatory and special) damages together with punitive damages, and other legal and equitable relief, as this Court deems just and appropriate.

Date:  6 February 2025.

By: **/s/ Stephen M. Katz**
Stephen M. Katz
Ga. Bar No. 409065

**THE KATZ LAW GROUP** LLC

137 Johnson-Ferry Road  ·  Suite 2230
Marietta, Georgia 30068-4949
Email: smkatz@katz.legal

Telephone: 770.988.8181

<span style="color:red">Exhibit 1</span>



**CITY OF ATLANTA**
**OFFICE OF THE INSPECTOR GENERAL**
SHANNON K. MANIGAULT
INSPECTOR GENERAL

185 TED TURNER DRIVE SW, SUITE 6200
ATLANTA, GA 30303

INSPECTORGENERAL@ATLANTAGA.GOV
ATLOIG.ORG • 404.546.2270

October 2, 2024

David Emadi
Executive Secretary
Georgia Government Transparency & Campaign Finance Commission
200 Piedmont Avenue SE
Suite 1416 – West Tower
Atlanta, GA 30334

Dear Secretary Emadi:

The Compliance Division of the City of Atlanta Office of the Inspector General (OIG) recently concluded an investigation that involved Bernard "Bernie" Tokarz, a Georgia lobbyist who manages an Atlanta City Council member's campaign committee. In the course of the investigation, OIG identified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ payments made to ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮ In addition, OIG separately identified irregular expenditures ▮▮▮▮▮▮▮▮

Background

    a.  Tokarz

<span style="color:red">Exhibit 1</span>

Exhibit 1



| | Southern First Bank<br>PO Box 550687<br>Atlanta, GA 30355<br>southernfirst.com | 1310 |
|---|---|---|

Howell Mill Communications LLC.
PO Box 551041
Atlanta, GA 30355

| | DATE | AMOUNT |
|---|---|---|

PAY
Forty two thousand two hundred eighty three dollars & 28 cents ***************

10/18/2021      $**42,283.28

TO THE
ORDER
OF          HEG LLC.

MEMO  Bond, Archibong

AUTHORIZED SIGNATURE

---

[1] On March 10, 2023, OIG contacted CFC for information on Bond's Campaign Committee's registration paperwork. CFC informed OIG that there was no registration information for Bond's Campaign Committee on file. CFC told OIG that registration papers must be filed with CFC. CFC said that there would not be a paper version of the registration as CFC requires all registrations to be electronically filed.

[2] The memo sections on the payments reference consulting for "Bond" or "MJB."

2

Exhibit 1

Exhibit 1

FOR SECURITY PURPOSES, THE FACE OF THIS DOCUMENT CONTAINS A COLORED BACKGROUND AND MICROPRINTING IN THE BORDER

**1321**

Howell Mill Communications LLC.
PO Box 551041
Atlanta, GA 30355

Southern First Bank
PO Box 550687
Atlanta, GA 30355
southernfirst.com

| DATE | AMOUNT |
|------|--------|

PAY
Four thousand seven hundred seventy four dollars & 36 cents****************

7/11/2022      $**4,774.36

TO THE
ORDER
OF

MEMO

SECURITY FEATURES INCLUDED. DETAILS ON BACK

AUTHORIZED SIGNATURE

---

**1323**

Howell Mill Communications LLC.
PO Box 551041
Atlanta, GA 30355

Southern First Bank
PO Box 550687
Atlanta, GA 30355
southernfirst.com

| DATE | AMOUNT |
|------|--------|

PAY
Four thousand two hundred forty one dollars & 26 cents*******************

11/15/2022      $**4,241.26

TO THE
ORDER
OF

MEMO

SECURITY FEATURES INCLUDED. DETAILS ON BACK

AUTHORIZED SIGNATURE

---

**1308**

Howell Mill Communications LLC.
PO Box 551041
Atlanta, GA 30355

Southern First Bank
PO Box 550687
Atlanta, GA 30355
southernfirst.com

| DATE | AMOUNT |
|------|--------|

PAY
One thousand two hundred fifty dollars & no/100*****************************

9/1/2021      $**1,250.00

TO THE
ORDER
OF

MEMO

SECURITY FEATURES INCLUDED. DETAILS ON BACK

AUTHORIZED SIGNATURE

Exhibit 1

Exhibit 1





b. Boone

On July 1, 2021, the Atlanta Progressive News (APN), a local news publication,[3] published an article with the headline "Bond, Boone Most Progressive On Atlanta Council, Per APN 2021 Scorecard." In the article, APN identified Bond and Boone as the first and second most progressive City Council members in Atlanta.

According to records from the Georgia Secretary of State, APN's business address is P.O. Box 92667, Atlanta, Georgia 30314. On its September 2021 CCDR, Bond's Campaign Committee reported an August 19, 2021, $1,000 expenditure to APN, PO Box 92667. OIG found no prior or subsequent expenditures to APN. Boone's Campaign Committee likewise reported payments to APN following APN's article.

On an October 4, 2021, CCDR, Boone's Campaign Committee reported the following expenditures:

---

[3] As of the date of this letter, APN no longer maintains a website, OIG does not know the current status of APN.

Exhibit 1

Exhibit 1

| Recepient | Address | Date | Amount | Purpose |
|---|---|---|---|---|
| ███████ | ███████ | 6-Jul-21 | $300.00 | ███████ |
| ███████ | ███████ | 20-Jul-21 | $400.00 | ███ |
| ███████ | ███████ | 2-Aug-21 | $350.00 | ███████ |
| ███████ | ███████ | 2-Sep-21 | $300.00 | ███████ |
| ███████ | ███████ | 23-Sep-21 | $100.00 | ███████ |



| Recepient | Address | Date | Amount | Purpose |
|---|---|---|---|---|
| ███████ | ███████ | 21-Sep-21 | $180.00 | ███████ |
| ███████ | ███████ | 5-Oct-21 | $350.00 | ███ |
| ███████ | ███████ | 8-Oct-21 | $180.00 | ███████ |







Exhibit 1

Exhibit 1

Conclusion

Upon review, OIG has determined that this matter would be more appropriately addressed by your office. Accordingly, OIG is referring this matter to your office. If, while handling this matter, your office uncovers evidence of corrupt or criminal activity, please notify OIG. Please inform OIG of the ultimate disposition of the matter.

If you have any questions or concerns, please do not hesitate to contact me.

Sincerely,

Shannon K. Manigault
Inspector General

6

Exhibit 1