

**CITY OF ATLANTA**
**OFFICE OF THE INSPECTOR GENERAL**

SHANNON K. MANIGAULT
INSPECTOR GENERAL

185 TED TURNER DRIVE SW, SUITE 6200
ATLANTA, GA 30303

INSPECTORGENERAL@ATLANTAGA.GOV
ATLOIG.ORG • 404.546.2270

August 14, 2024

Doug Shipman
President
Atlanta City Council
55 Trinity Avenue SW
Atlanta, GA 30303

Justin Cutler
Commissioner
Department of Parks and Recreation
55 Trinity Avenue SW
Atlanta, GA 30303

Liliana Bakhtiari
Chair – Committee on Council
Atlanta City Council
55 Trinity Avenue SW
Atlanta, GA 30303

Kentorri Garmon
Commissioner
Department of Public Works
55 Trinity Avenue SW
Atlanta, GA 30303

Jaideep Majumdar
Chief Procurement Officer
55 Trinity Avenue SW
Atlanta, GA 30303

Jabu M. Sengova
Ethics Officer
68 Mitchell Street
Atlanta, GA 30303

Greg Clay
Executive Director
Mayor's Office of Constituent Services
55 Trinity Avenue SW
Atlanta, GA 30303

Patrise Perkins-Hooker
City Attorney
55 Trinity Avenue SW
Atlanta, GA 30303

Dear Colleagues:

The Compliance Division of the City of Atlanta Office of the Inspector General (OIG) recently concluded an investigation into a complaint regarding activities between Post 1 At Large (Post 1) Council Member Michael J. Bond and a Georgia lobbyist, Bernard "Bernie" Tokarz. During its investigation, OIG discovered financial ties between Tokarz and several City of Atlanta (City) employees and officials, including Bond, and potential self-dealing and vendor steering by Vanessa Manley, a Mayor's Office of Constituent Services (OCS) employee and former Post 1 chief of staff, arising from her program management role for City Midnight Basketball events. OIG recommends measures to address identified vendor misconduct and strengthen City policies and practices surrounding lobbying and disclosure of relationships.

## Background

In January 2023, a complainant (the Complainant) contacted OIG to express concern regarding a reimbursement request by Bond in connection with an ordinance, Ordinance 22-O-1239. Ordinance 22-O-1239, enacted on February 6, 2023, authorized the City to donate to Second Helpings Atlanta (Second Helpings) in an amount not to exceed $20,000 "to support initiatives to provide free meals to City of Atlanta residents facing food insecurities." Prior to its enactment, Ordinance 22-O-1239 initially proposed that Post 1 be reimbursed for payments made "to support the Citywide initiative with HelloFresh and its partners Second Helping of Atlanta and Pratt Industries to provide free meals to City of Atlanta residents facing food insecurities" (the HelloFresh initiative). During City Council committee meetings on March 21, 2022, and March 29, 2022, Bond had indicated that Post 1 needed to be reimbursed for robocalls, text messages, and emails made to Atlanta citizens as part of the HelloFresh initiative.

The Complainant questioned the propriety of the reimbursement request. The Complainant informed OIG that Bond had, at one point, requested that the reimbursed funds be directed to a post office box associated with Tokarz. The Complainant identified Tokarz as Bond's chief of staff. The Complainant informed OIG that Tokarz frequently accompanied Bond as part of Bond's staff and raised concerns about Tokarz having access to internal City Council discussions and information. The Complainant inquired as to whether Tokarz, who the Complainant also identified as a lobbyist, should be required to wear a badge when interacting with the City Council in the same manner required by lobbyists when appearing in the Georgia State Capitol.

OIG initiated an investigation and took several investigative actions, including, but not limited to reviewing City, business, and financial records; and conducting interviews.[1]

## Findings

### Ordinance 22-O-1239

At a March 21, 2022, full City Council meeting, Bond introduced two items for City Council approval: a proposed resolution that authorized the City to partner with HelloFresh and Post 1 for citywide initiatives with the "Beyond the Box" program and a proposed ordinance for the City to partner with HelloFresh and the Post 1 Council member to donate an undisclosed sum to their citywide initiatives. Both items were approved.

During that meeting, Bond stated that the proposed resolution to partner with HelloFresh should have additional language stating, "Be it finally resolved that this resolution is retroactive to August 2021." This proposed resolution would be adopted as Resolution 22-R-3341. The final version of Resolution 22-R-3341 did not include the language that the resolution would be retroactive to August 2021.

---

[1] The City of Atlanta prohibits retaliation again any employee who has provided information to OIG in connection with an OIG investigation. City of Atlanta Code of Ordinances §§ 3-508(d) and 8-101(k)

The proposed ordinance to donate money to HelloFresh and Post 1 would later become Ordinance 22-O-1239. At a March 29, 2022, Community Development/Human Services Committee (CD/HS) meeting in which 22-O-1239 was on the agenda, Bond told CD/HS that the payments were not for a donation, as stated in the ordinance, and that the payments were to reimburse Post 1 for paying for robocalls, text messages, emails to citizens that Post 1 covered as part of the City's initiative with HelloFresh. Bond described the discrepancy between donation and reimbursement as an error.

Several CD/HS members raised concerns regarding Bond's reimbursement request. For example, Council Member Byron Amos voiced concern regarding the precedent of a City Council member requesting reimbursement for supporting an initiative and described the request as a "slippery slope" that could lead to repeated requests from Council members to be reimbursed for funds spent out of their Council budget. Amos asked that the Law Department or Finance Department provide guidance on whether reimbursement requests were allowable.

Bond told CD/HS that Post 1 was entitled to reimbursement because Post 1 had made its payments toward the HelloFresh initiative. Bond informed CD/HS that the City Council had "just voted to support [the HelloFresh initiative] one week ago" and that the City Council had "made the HelloFresh program a citywide program and made it retroactive back to August."[2] Bond also stated that this was not the first instance of a City Council member requesting a reimbursement.

Aside from the reimbursement concerns, members of CD/HS also voiced concerns about the omission of a specified dollar amount from the proposed ordinance. Bond resubmitted an amended version of Ordinance 22-O-1239 later in the meeting. The amended version of Ordinance 22-O-1239 requested that Post 1 be reimbursed for $10,490.62. Ultimately, CD/HS voted to hold Ordinance 22-O-1239 in committee.

Ordinance 22-O-1239 would be held in committee, circulating between the Finance/ Executive Committee (FEC)[3] and CD/HS, from March 2022 through January 2023. While held in committee, several changes were made to Ordinance 22-O-1239; most notably, the requested reimbursement amount increased from $10,490.62 to $20,000.00.

On January 26, 2023, a final amended version of 22-O-1239 was submitted for review to FEC. This version removed the reimbursement language, instead requesting that $20,000 be donated directly to Second Helpings, Inc. At the FEC meeting, Bond stated that he still believed that he was "entitled" to reimbursement, but he supported the ordinance so that the HelloFresh initiative would continue. Bond added that the donation to Second Helpings was what he originally planned to do with the requested funds once reimbursed. The amended version of Ordinance 22-O-1239 was approved by City Council in February 2023.

---

[2] Bond appeared to have been referring to Resolution 22-R-3341. As noted, Resolution 22-R-3341 did not include the retroactive language Bond had requested.

[3] Ordinance 22-O-1239 was dual referred to CD/HS and FEC. In March 2022, after CD/HS held Ordinance 22-O-1239, FEC voted to hold the ordinance in committee without discussion.

*City Lobbyist Laws*

OIG found no statute or policy requiring that lobbyists identify themselves on City property. On the website of the City's Ethics Office (Ethics), Ethics states that the City does not have any laws governing lobbyists and that Georgia law governs lobbyist registration and lobbyist gift reports.

*Tokarz*

OIG reviewed City personnel records and found no record that Tokarz was, or has ever been, employed by the City of Atlanta. Although not employed by the City, OIG's review of City records suggests that Tokarz regularly advises Bond on City business. In emails from Tokarz to Bond and Bond's staff, Tokarz advises on matters such as City board and position appointments, proposed legislation, and public relations. The email Tokarz uses to communicate with Bond has the suffix @cloverhurst.com.

Records from the Georgia Secretary of State website identified Tokarz as the incorporator, chief financial officer, secretary, and registered agent for the Committee to Re-elect Michael Julian Bond, Inc. (Bond's Campaign Committee). In addition, on documents found on the City's campaign disclosure filing system, Tokarz is identified as the chairperson and treasurer for Bond's Campaign Committee.

Tokarz serves as the principal agent for multiple businesses that have done business with the City. Tokarz is listed on the Georgia Secretary of State website as the organizer for Howell Mill Communications, LLC (Howell Mill), and Cloverhurst Strategies LLC (Cloverhurst); both businesses have conducted business with the City.[4] During an interview with OIG, Tokarz also informed OIG that he has an ownership interest in Russell Landscape, LLC (Russell Landscape), a landscaping business that has contracted with the City.[5] According to Tokarz, Russell Landscape does not compensate him financially as he has an alternate arrangement with Russell Landscape.

Tokarz is also a registered lobbyist with the State of Georgia. On Tokarz' lobbyist registration form, Tokarz lists his address as Post Office Box 12121, Atlanta, GA, 30355, USA (Box #12121). Tokarz informed OIG that, historically, he has operated as a lobbyist representing people before City agencies, the City Council, and the Mayor's Office. Tokarz identified two companies for which he had conducted lobbying services before the City: RJ Reynolds and Atkins Real Estate.

I.   Bond's Campaign Committee

According to information obtained from the Georgia Secretary of State website, Bond's Campaign Committee's corporate address is 50 Sunset Avenue NW, Atlanta, GA, 30314. OIG

---

[4] According to records obtained from the Georgia Secretary of State website, Jeremy Berry is the registered agent for Howell Mill and Cloverhurst. Records obtained by OIG indicate that Berry was the City Attorney from May 2017 through July 2018.

[5] Russell Landscape has an active contract with the City, EA-S-1210103 (expires January 2030). Russell Landscape has contracted with the City previously on the following City contracts: FC-10309 (expired June 2021), EA-S-1220091 (expired August 2022) and EA-S-1220132(B) (expired January 2023).

4

observed on social media, and Bond's Campaign Committee website, that donors to Bond's Campaign Committee are requested to send donations to Post Office Box 551041, Atlanta, GA, 30355 (Box #551041). Bond's Campaign Committee was incorporated on June 16, 2017, with Tokarz listed as the incorporator.

OIG reviewed files from the Georgia Government Transparency & Campaign Finance Commission (CFC) and the City's Easy Campaign Finance Portal (the City's Campaign Portal). OIG could not find registration forms for Bond's Campaign Committee on either the CFC website or the City's Campaign Portal.[6] OIG found an October 2008, Declaration of Intention to Accept Campaign Contributions form (DOI form) Bond filed with the Georgia State Ethics Commission (the predecessor to the CFC). On the DOI form, Bond identified himself as the chairperson and treasurer for Bond's Campaign Committee.

In an interview with Tokarz, Tokarz informed OIG that Bond's Campaign Committee is structured so that he is the "only one that can write checks." Tokarz told OIG that he is the only signatory on the Bond's Campaign Committee bank account. OIG reviewed Campaign Finance Disclosure (CFD) forms filed by Bond's Campaign Committee and found that throughout 2021, the Bond's Campaign Committee's CFD forms list Box #551041 as its mailing address. Also, on the CFD forms, Bond's Campaign Committee reported several expenditures paid to Howell Mill as well as to Tokarz personally. From April 2021 through November 2021, Bond's Campaign Committee reported at least $65,848.45 in expenditures paid to Howell Mill for campaign consulting, campaign signs, and "direct mail." In addition, OIG found three expenditure payments made by Bond's Campaign Committee to Tokarz directly, for a total of $8,400 (no reason given).[7] In December 2021, Bond's Campaign Committee also loaned Bond $17,300. The address reported on the loan was Box #551041.

II.  Howell Mill

According to records from the Georgia Secretary of State website, Howell Mill's registered address is Box #551041. Tokarz is listed as Howell Mill's organizer. During an interview with OIG, Tokarz confirmed that Howell Mill is his company. Tokarz informed OIG that Howell Mill provides robocalls for several City Council members. The City's finance transparency website, "Checkbook.atlantaga.gov," (Checkbook) reports that the City has paid Howell Mill $52,303 from July 2021 through August 2023. This total includes 24 invoice payments, for a combined amount of $42,212.87, from the Post 1 account to Howell Mill. OIG reviewed these payments, and all invoices that OIG observed were for robocall and text message services provided by Howell Mill.

On March 23, 2022, two days after Bond proposed Resolution 22-R-3341 and Ordinance 22-O-1239, Post 1 paid an invoice from Howell Mill for $10,490.62 (the same amount Bond requested that Post 1 be reimbursed at the March 29, 2022, CD/HS meeting). The invoice included the description "P1 Robocalls and Text Messages" and was dated February 15, 2022. Records obtained from the City's online records database, Oracle, indicate that the $10,490.62 amount on the February

---

[6] CFC informed OIG that there was no registration information for Bond's Campaign Committee on file. CFC told OIG that registration papers must be filed with the CFC. CFC said that there would not be a paper version of the registration as the CFC requires all registrations to be electronically filed.

[7] Tokarz' employer is listed as "Cloverhurst LLC" on the CFD form.

5

2022 Howell Mill invoice came from eight earlier unpaid invoices for robocall and text messaging services provided by Howell Mill from July 2021 through February 2022.

As the listed address on the CFD forms for Bond's Campaign Committee was Box #5510141, a post office box shared with Howell Mill, OIG reviewed Howell Mill's financial records to determine the degree, if any, of Bond's financial relationship with Howell Mill. While OIG found no direct financial link between Bond and Howell Mill, OIG found four additional payments (than those reported on the CFD forms) from April 2021 through September 2021, totaling $17,385.80, made by Bond's Campaign Committee to Howell Mill for campaign consulting. OIG also found five payments, totaling $57,296.81, made by Howell Mill from April 2021 through December 2022 to consulting firms for what appears to be consulting work on Bond's re-election campaign.[8]

In addition, OIG discovered that from July 2021 through August 2021, Howell Mill made four payments, totaling $9,101.25, and six payments, totaling $4,375, to senior-level employees within the City Department of Transportation (DOT) and Department of Human Resources (DHR), respectively, for campaign consultation work.

III. Cloverhurst

According to the Georgia Secretary of State website, Cloverhurst's registered address is Box #12121. As with Howell Mill, Tokarz is listed as Cloverhurst's organizer. Tokarz informed OIG that he started Cloverhurst in 2015. Tokarz said that Cloverhurst provides security officer services.

In January 2022, the Department of Parks and Recreation (DPR), via the Department of Procurement (DOP), requested an Invitation for Bids (IFB) for On-Call Georgia Peace Officer Standards and Training Council (POST) certified officers to provide security, traffic control, and other necessary functions for DPR programs and facilities. This solicitation would be titled IFB-S-1220215.

Cloverhurst – Aaron, JV (Cloverhurst/Aaron) a joint venture between Cloverhurst and the Aaron Group, Inc. (TAG) was one of three IFB-S-1220215 respondents. Georgia Secretary of State records identify TAG's CEO, CFO, and registered agent as Michel Turpeau. Aaron Turpeau is listed as TAG's secretary and chairperson. On the solicitation forms for IFB-S-1220215, Cloverhurst is listed as the majority (51%) partner on the joint venture. Michel Turpeau worked as an intern with the Department of Watershed Management from May 2019 through August 2019. Aaron Turpeau served in the mayoral cabinets of former City Mayors Maynard Jackson and Andrew Young. On the TAG website, it states that Aaron Turpeau worked for 17 years with the City. Oracle records show Aaron Turpeau as a retired City employee.

As part of the solicitation process for IFB-S-1220215, offerors were required to submit a "Contractor Disclosure and Declaration Form" (CDD form). The definitions section of the CDD form defines an offeror as "Any individual or entity that submits a Bid or Proposal in response to a solicitation, as follows: An Offeror is a business entity (as defined in City Code §2-1102)[9] submitting

---

[8] The memo sections on the payments reference consulting for "Bond" or "MJB."

[9] Business is defined in Atlanta City Code §2-1102 as any corporation, partnership, individual, sole proprietorship, joint stock company, joint venture, firm or any other private legal entity.

6

a bid or proposal in response to the Solicitation." However, Sections B and C of the CDD form states that an offeror is "any individual or entity that submits a bid/proposal in response to a solicitation" without including the "business entity" language described in the definition.

On April 18, 2022, Tokarz completed the CDD form. Section B, Question 2 of the CDD form asks if the "Offeror in the last three years, employed or retained as an independent contractor(s) any current or former City of Atlanta employees." If the offeror checks 'yes' to this question, it is asked to provide the name of the current or former City employee and the position held by said employee. Tokarz checked "yes" to this question, and included a list of eleven City employees, all of whom work in the Atlanta Police Department (APD). Tokarz wrote that each of the APD employees worked off-duty on APD-approved jobs coordinated by Cloverhurst.

Section B, Question 5 of the CDD form has two subsections, Questions 5a and Question 5b. Question 5a concerns personal relationships, and Question 5b concerns financial relationships. The preamble to Questions 5a and 5b stated that **"Failure to disclose information may result in suspension or debarment by the City of Atlanta"** (emphasis in original). Question 5b asks if the offeror had "any Personal or Financial relationships" that may give rise to a conflict of interest. Financial relationship was defined as "any interest held with a City employee or official…which may/did yield, directly or indirectly, a monetary or material benefit to the Offeror or the Offeror's family." Tokarz answered "no" to this question.

In addition, as part of the solicitation process for IFB-S-1220215, Tokarz submitted a signed and completed "Prohibited Sources (Contractors & Vendors) Ethics Pledge" form (the Ethics Pledge form). On the Ethics Pledge form, Tokarz agreed that he would 1) avoid situations involving city officials and employees that may give the perception of impropriety (and that he would consult with Ethics about any uncertainties) and 2) disclose any matter in which he had "a financial or personal interest as defined in (sic) concerning any City bid, proposal, contract, or subcontract" and disclose if his employer, prospective employer, or a related business entity, has financial or personal interests with the City.

All offerors for IFB-S-1220215 were required to provide three or more references able to attest to the offeror's performance ability and credibility in a particular industry or trade. One of the three references Tokarz provided for Cloverhurst was Groundwork Consulting LLC, (Groundwork Consulting) located at 2148 Newnan Street, Suite 119 East Point, GA 30304 (2148 Newnan St.). On the references form, Tokarz reported that Cloverhurst had done various projects for Groundwork Consulting from 2019 through 2022. Tokarz described the services provided as "off duty, the department approved POST Certified officers for security, traffic control at various community events and parties." Tokarz also reported that Cloverhurst and Groundwork Consulting had contracted with one another multiple times and that Cloverhurst was paid $1,000 to $5,000 per event.

Tokarz identified Vanessa Manley as the contact person for Groundwork Consulting. Records from Oracle report that from October 2019 through September 2022, Manley was employed as City Council senior assistant in Post 1 under Bond. During an interview with OIG, Manley informed OIG that she was Bond's former chief of staff. Tokarz told OIG that he was aware that

7

Manley was Bond's former chief of staff and informed OIG that she "did a great job" in the role. Tokarz informed OIG that he mostly worked on campaign-related items with Manley.

OIG asked Tokarz if he did not consider the multiple contracts between Cloverhurst and Manley/Groundwork Consulting as a "financial interest held" per Section B Question 5 of the CDD form. Tokarz told OIG that he did not believe that Manley was employed with the City when he completed the CDD form for IFB-S-1220215. However, OIG found direct emails from Tokarz to Manley's City email address in March 2022, April 2022, May 2022, June 2022, and August 2022. Most of these emails relayed information concerning community events such as lunches, and groundbreaking ceremonies, as well as items concerning Bond. Tokarz also remained in contact with Manley after she transferred from Post 1 to OCS. For example, in November 2022, Tokarz forwarded Manley notice of a groundbreaking event at Atlanta's Centennial Yards. Also, in April 2023, Tokarz emailed the Vice President of the Fulton-Dekalb Housing Authority an introduction to his "friend Vanessa Manley...with the Mayor's Office of Constituent Services."

OIG asked Tokarz about the fact that he did not disclose on the CDD form the payments Howell Mill received from the City for robocalls, the City employees who have worked for Howell Mill, and his management of Bond's Campaign Committee. Tokarz informed OIG that he did not report these other pursuits because Howell Mill and Bond's Campaign Committee were separate entities from Cloverhurst and himself.

In Section C of the CDD form, offerors are required to agree to certain representations. Section C, Part Two of the CDD form requires the offeror to agree to the following representation:

> **Blackout Period.** The blackout period begins with the advertisement of the synopsis and shall remain in effect until execution of the contract or the solicitation is cancelled and will not be resolicited, whichever comes first. During the blackout period, all questions pertaining to this solicitation must be directed to the Department of Procurement's assigned Procurement Professional or the appropriate Supervisor. Offeror or any representative, agent or other person acting on behalf of Offeror is prohibited from contacting any other City agency, employee, representative, or elected or appointed official regarding questions about this solicitation. Violations of this section will result in Offeror's disqualification.

Concerning joint ventures, Section C states that the CDD form representation was "solely made on behalf of and reflect information as it pertains to the member of the Joint Venture Team completing this form." Tokarz initialed each page of Section C of the CDD form. Tokarz also signed the declaration, under penalty of perjury, that he examined the CDD form, including Sections B and C, and that to the best of his knowledge, all statements contained within the response were "true, correct, and complete."

On June 16, 2022, DOP sent a letter to Tokarz alerting him that Cloverhurst/Aaron was one of the two top bidders for IFB-S-1220215 and that Cloverhurst/Aaron had been recommended for an award of the contract. The other awardee under IFB-S-1220215 was Metropolitan Security Associates (MSA).

On August 15, 2022, the City Council passed Resolution 22-R-4148, authorizing the City to enter into an agreement for IFB-S-1220215 for On-Call POST certified officers with Cloverhurst/Aaron and MSA in an amount not to exceed $750,000 annually. The resolution further stated that the terms of the agreement would include an initial two-year term and a discretionary one-year renewal option. Bond voted to approve Resolution 22-R-4148.

On August 31, 2022, Tokarz emailed DPR Deputy Commissioner Doug Voss the following:

Doug,

Hope all is well. It was good to see you last week. I appreciate the opportunity to work with DPR.

While we are still waiting on DOP to finalize the contract for IFB-S-1220215, On Call POST Certified Officers; I wanted to see if you had some time next week to meet so I can get a better understanding of where/when DPR will need officers.

Let me know when/where and I will make myself available.

BT

On November 1, 2022, the City executed agreement IFB-S-1220215(a) with Cloverhurst/Aaron. In an interview with Tokarz, Tokarz acknowledged that his August 2022 communication with Voss occurred prior to the November 2022 execution of Cloverhurst/Aaron's agreement with the City and that that communication violated the City's blackout period policy as written. Tokarz expressed to OIG that he did not believe that the City's blackout period policy should apply to this communication, as Cloverhurst/Aaron had received notice of the award from the City before the communication. Tokarz opined that the blackout period policy concerned "lobbying" which, Tokarz suggested, was not an issue since the agreement had already been awarded. Tokarz also informed OIG he had "an idea for a piece of legislation" and stated that "we're going to have to change [the blackout period policy's] definition."

Under IFB-S-1220215(a), Cloverhurst/Aaron was to "furnish management, supervision, manpower, equipment, and supplies necessary" to provide the City POST certified officers at DPR locations. The agreement indicated that POST certified officers may be needed to provide security at the following DPR locations:

- Outdoor Pools
- Football Game Sites
- Basketball Game Sites
- Baseball Game Sites
- Oakland Cemetery
- Other DPR Locations As Needed

On April 17, 2023, the City passed Resolution 23-R-3341, "executing amendment number one" to IFB-S-1220215(a) to add $1,000,000 in funding to IFB-S-1220215(a) for DPR.[10] DPR informed City Council that the funds were needed to provide security at the City's 12 outdoor pools, as well as the City's organized youth basketball tournaments. On May 1, 2023, the City passed Resolution 23-R-3492, adding the City Department of Public Works (DPW) as an authorized user of IFB-S-1220215(a) and (b) and allocating an additional $660,120.00 in funds to these agreements. On March 18, 2024, the City passed Ordinance 24-O-1113, adding $1,500,000 to IFB-S-1220215(a) and (b) to cover an expansion in services provided.

The initial term for IFB-S-1220215(a) was from November 1, 2022, to October 31, 2024. IFB-S-1220215(a) permitted DPR to pay Cloverhurst/Aaron up to $1,500,000 from November 2022 through October 2024. However, since being passed, the City has added more than three million dollars to IFB-S-1220215(a). On April 18, 2023, when Resolution 23-R-3341 passed allocating an additional one million dollars in funding to IFB-S-1220215(a), IFB-S-1220215(a) was five months old and DPR had accrued $309,828.76 in billable services from Cloverhurst/Aaron; DPR still had $440,171.24 (approximately 59%) of its original annual budget available to disburse to Cloverhurst/Aaron.

After Resolution 23-R-3341 passed, from April 2023 through October 2023 (the final seven months of the first year of IFB-S-1220215(a)), DPR paid Cloverhurst/Aaron $2,125,160.99. From November 2022[11] through March 2024, DPR has paid Cloverhurst/Aaron $3,002,011.28, more than twice the originally contemplated amount for IFB-S-1220215(a). Of the approximately $3 million DPR has paid Cloverhurst/Aaron, approximately $2.4 million was paid within the first year of IFB-S-1220215(a), representing a 280% increase over IFB-S-1220215(a)'s original $750,000 annual limit.

DOP informed OIG that there were delays in executing MSA's agreement due to issues obtaining proper insurance bonding. As a result, Cloverhurst/Aaron operated as the lone security provider for DPR for most of the first year after the City approved IFB-S-1220215. OIG notes that Cloverhurst/Aaron's rates are 23.33% higher than MSA's.

---

[10] There was no corresponding legislation for MSA's agreement IFB-S-1220215(b).

[11] DPR made eight payments to Cloverhurst/Aaron, totaling $19,980, in September and October 2022, prior to the November 2022 execution of IFB-S-1220215(a). This is $20 less than the City's then-maximum $20,000 department small purchase limit.

| | Firm/Bidder Name | Bid Amount |
|---|---|---|
| 1 | Cloverhurst/Aaron JV. | **Group I** – Atlanta Police Department ("APD") POST CERTIFIED OFFICER<br>- Standard Rate (per hour) No Vehicle $92.50/HR<br>- Required Rate (per hour) Vehicle Required $97.50/HR<br>**Group II** – Non APD POST CERTIFIED OFFICER<br>- Standard Rate (per hour) No Vehicle $92.50/HR<br>- Required Rate (per hour) Vehicle Required $97.50/HR |
| 3 | Metropolitan Security Associates | **Group I** – Atlanta Police Department ("APD") POST CERTIFIED OFFICER<br>- Standard Rate (per hour) No Vehicle $75.00/HR<br>- Required Rate (per hour) Vehicle Required $85.00/HR<br>**Group II** – Non APD POST CERTIFIED OFFICER<br>- Standard Rate (per hour) No Vehicle $70.00/HR<br>- Required Rate (per hour) Vehicle Required $80.00/HR |

(Bid comparison between Cloverhurst/Aaron and MSA bids)

MSA's agreement, IFB-S-1220215(b) was executed on August 9, 2023. A review of City records suggests that, although MSA is now an approved vendor, DPR still primarily uses Cloverhurst/Aaron to provide security services. According to records from Checkbook, from November 2023 (MSA's first recorded payment) through March 2024, DPR has paid 15 MSA invoices for a total of $126,129; over that same period, DPR has paid 29 Cloverhurst/Aaron invoices for a total of $566,189.03.[12]

*Tokarz and Bond's Relationship*

Tokarz informed OIG that he had known Bond since he was very young. Tokarz described Bond as "a dear friend, dear family friend" and told OIG that he considers Bond "like a second father." OIG found several images of Bond and Tokarz together in social settings on Bond's social media.[13]

Bond voted to approve Resolution 22-R-4148, which authorized the City to enter into an agreement with Cloverhurst/Aaron. Bond also voted in support of Resolutions 23-R-3341 and 23-R-3492, which added additional funding for IFB-S-1220215(a). Bond introduced Ordinance 24-O-1113, which added $1.5 million to IFB-S-1220215(a) and (b) and voted in support of its passage. Also, on July 5, 2022, Bond sponsored 22-P-0025, a proclamation recognizing TAG chairman Aaron Turpeau and his wife Brenda Turpeau for years of service to the City and their contributions to the Atlanta community.

OIG conducted a review to determine the extent to which Bond was involved in the City's selection of Cloverhurst/Aaron as a security vendor. OIG discovered no communications between City staff and Bond regarding City contracts with Tokarz and/or Cloverhurst. Tokarz informed OIG that he became aware of the IFB-S-1220215 by monitoring DOP's website. OIG interviewed leaders

---

[12] According to records from Oracle, from November 2023 through June 2024, the City has made 13 payments to MSA for a total of $174,199.50; over that same period, the City has made 35 payments to Cloverhurst/Aaron for a total of $1,710,382.31.

[13] Bond responded to the OIG invitation for an in-person interview with an offer to instead provide written responses to questions he requested OIG provide via email. OIG declined.

11

of the departments utilizing the services of IFB-S-1220215, and neither reported any communications with Bond regarding Cloverhurst/Aaron's selection as a security contractor.

*Other City Employees Associated with Tokarz*

As OIG discovered employment and financial relationships between Tokarz and City employees that were not disclosed during the IFB-S-1220215 solicitation, OIG attempted to review the personnel records for Tokarz' companies. On December 1, 2023, OIG delivered three subpoenas to Tokarz' attorney's office. The subpoenas requested personnel records for employees and independent contractors hired by Tokarz, Cloverhurst, and Howell Mill Communications.

The due date for responsive documents to the subpoenas was initially December 29, 2023. On January 3, 2024, Tokarz' attorney informed OIG that it should receive the requested information the following week. OIG did not receive the requested information the following week. On January 25, 2024, OIG asked that Tokarz submit the subpoenaed information by February 1, 2024. OIG informed Tokarz that if OIG did not receive the documents by February 1, 2024, OIG would consider the subpoena request declined and would continue with its investigation. That day (January 25, 2024), Tokarz' attorney informed OIG that he had the documents, and that OIG would receive the requested information the next day. OIG did not receive the requested documents on January 26, 2024, nor by the February 1, 2024, deadline. To date, OIG still has not received the subpoenaed information from Tokarz.

*Manley*

As noted, Tokarz identified Manley as a reference contact for IFB-S-1220215. Manley was first employed with the City as a City Council assistant from October 2004 through August 2007. In September 2011, Manley resumed City employment. Manley informed OIG that she returned to City employment at the behest of then-OCS Director and current City Council Member Andrea Boone. From 2011 through 2019, Manley held various titles with the City including data/reporting analyst, business process analyst, engineering aide, and others. According to Oracle records, from 2015 to 2017, Manley worked under Boone.

In October 2019, Manley was promoted to City Council senior assistant under Bond. On November 5, 2021, Manley wrote Bond that she was resigning from her position as chief of staff effective December 3, 2021. In the letter, Manley informed Bond that she could be reached at Atlantachangeagent@gmail.com. Manley informed OIG that after submitting the resignation letter, Bond asked her to continue in a part-time capacity for approximately 10 hours per week, which she agreed to do until Fall 2022 when she transferred to OCS. Manley's timecard records show that from January 24, 2022, through September 16, 2022, Manley worked four shifts (totaling 32 hours) per month.

In September 2022, Manley transferred to OCS, where she was employed as a senior advisor. In September 2023, Manley was promoted to program management officer. Manley changed titles again in December 2023 to community engagement director, a position she would hold until January 6, 2024, when she resigned from City employment. On June 6, 2024, Manley returned to City service as a project manager for OCS.

I. Manley's Outside Employment

According to records from the Georgia Secretary of State, Manley is listed as one of two organizers for Groundwork Consulting. The other organizer is Mark Henderson. Manley confirmed that this is the same Mark Henderson who served as the executive director of OCS from August 2017 through May 2018.[14] Groundwork Consulting was organized on December 12, 2020. The address Manley provided on the filing paperwork for Groundwork Consulting is 2148 Newnan Street, Suite 119.

Manley informed OIG that during the 2007 through 2011 gap in City employment, she was employed as executive director for the Arts Xchange. OIG review revealed that the Arts Xchange is an arts center, located at 2148 Newnan Street, the same reported address as Groundwork Consulting. As late as August 2023, Manley was listed on the Arts Xchange website as the Co-Chair of its Board of Trustees.

Manley told OIG that she began working for Groundwork Consulting after she stopped working for Bond. Manley confirmed that she served on the Arts Xchange board from 2018 through 2022. Manley also stated that she rented a space at the Arts Xchange which she uses as an office and receives mail. Manley told OIG that she allowed Henderson to use her office space as an address for Groundwork Consulting. Manley said that Henderson previously ran Groundwork Consulting from his home, but it was determined that it would be more convenient to use Manley's office as the address for Groundwork Consulting.

Georgia Secretary of State Records also showed that Manley was the Chief Financial Officer (CFO) of Groundwork International Mission Inc. (administratively dissolved on September 30, 2021) and, as of the date of this report, is the CFO of Shaking the Nations Inc. (Shaking the Nations).[15] Mary Smith-Clarke was/is identified as the Chief Executive Officer (CEO) for both companies. Manley stated in interviews with OIG that she was unaware that she is/was listed as CFO for either company.

Manley explained to OIG that Shaking the Nations is a religious organization where she volunteers. Manley informed OIG that Shaking the Nations is run by Mary Smith-Clarke, who is also her pastor, and a frequent volunteer for events in Atlanta. Manley stated that she was not employed by Shaking the Nations. When told that she is listed as the CFO for Shaking the Nations on the Georgia Secretary of State website, Manley told OIG that she did not "feel" as if she was the CFO, but if she is listed on the Shaking the Nations Georgia registration documents then that is "what it is."

Manley completed a City "Request for Permission to Perform Outside Employment" form (outside employment form) on September 29, 2022. On the form, Manley reported working for Groundwork Consulting and listed the business address for Groundwork Consulting as 2148 Newnan Street. Manley described the work as "grassroots" consulting and public relations. Manley described her duties as "public relations, special event coordination, and political campaigns, etc."

---

[14] In an interview with OIG, Manley described Henderson as her "old boss" at OCS.

[15] Georgia Secretary of State records also identify Manley as the founder and registered agent of Chosen Vessels Dance Company, LLC, (administratively dissolved in 2012.)

Manley wrote that she began employment with Groundwork Consulting in November 2019. Manley also reported that she worked 20 hours per week (on Friday nights and weekends) for Groundwork Consulting.

On the outside employment form, Manley identified Nomsa Hampton as her supervisor with Groundwork Consulting. Hampton was employed with the City as a City Council senior assistant from September 2021 through October 2022. Hampton initially was hired in City Council District 4. On January 3, 2022, Hampton transferred to Post 1 under Bond. According to a cover letter submitted by Hampton to DHR in July 2022, Hampton managed external communications for Bond and was responsible for drafting media statements, letters, proclamations, and content for social media and other media outlets.

A review of Post 1 communications showed that, prior to her employment with the City, Hampton provided public relations services for Bond through her company, Nosiike Media Group (Nosiike). While Hampton worked for Nosiike, Hampton and Manley frequently worked directly with one another on Bond public relations matters. Hampton did not list employment with Groundwork Consulting on her LinkedIn page, nor on a 2022 resume Hampton submitted to DHR.

Manley told OIG that she did not believe that she ever worked with Hampton when she was with the City, as Hampton only worked briefly with Bond. Manley told OIG that she worked with Henderson and Hampton. Manley told OIG that she listed Hampton as her supervisor at Groundwork Consulting by mistake, and that, to the extent that she had a supervisor at Groundwork Consulting it was Henderson.

II. Connections Between City and Private Employment

According to records from Checkbook, from September 2021 through February 2023, the City paid Groundwork Consulting $43,851.80. These payments include 10 invoice payments from September 2021 through March 2022, totaling $20,000, from City Council District 10, two $1,000 payments from Post 1 in September 2022 and February 2023, and eight payments from July 2022 through September 2022, totaling $16,500, from DPR. OIG also found five payments from April 2019 through July 2022, totaling $8,800 from the City to Shaking the Nations.[16] This includes two payments from City Council District 10 and one payment from Post 1.

OIG observed multiple instances of Manley conducting Groundwork Consulting business, (e.g., providing event management and coordination, transmitting invoices for payment, making purchases, and submitting press release drafts to clients for review) using her City email address. Manley's observed use of City property to conduct outside business extended as far back as October 2020 and was ongoing through as late as February 2023. Often, Manley cycled information between her City email address and her personal email address, Atlantachangeagent@gmail.com, and vice-

---

[16] Checkbook reports that from September 2016 through January 2018 the City made nine payments, totaling $11,251, to "Chosen Vessels Dance Company C/O Vanessa Manley". Three payments were from District 10. Five payments were from OCS (Manley was employed with OCS during this time.) Due to the age of the payments, OIG could not find the invoices in Oracle, however, on Checkbook three payments did include descriptions of services. The service described were, generally, catering, event engagement, and recreational services.

versa. Manley also included her personal email address on many internal City communications, even those that did not outwardly appear to involve her outside employment.

| From: | Manley, Vanessa <vmanley@AtlantaGa.Gov> |
|---|---|
| Sent on: | Wednesday, October 28, 2020 1:28:06 PM |
| To: | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| CC: | Pastor Mary Smith <▮▮▮▮▮▮▮▮▮▮▮> |
| Subject: | Shaking the Nation Proposal Attached |
| Attachments: | STN PROPOSAL .pdf (185.58 KB), ATT00001.txt (38 Bytes) |

Mrs. Hooper -

Attached you will find the proposal for Shaking the Nations, Inc. Please note that we are currently investigating out of town resources for turkeys because the metro Atlanta area is experiencing a shortage. If you would like us to provide different poultry or meat product let us know.

The 20% service charge would allow STN to upgrade our targeted marketing and provide administrative support and provide some additional food enhancements toward the success of the event.

We are very excited about partnering with you.

Please call me or Evangelist Mary directly if you have any questions or concerns.

| From: | Manley, Vanessa <vmanley@AtlantaGa.Gov> |
|---|---|
| Sent on: | Monday, June 28, 2021 6:34:13 PM |
| To: | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| BCC: | ▮▮▮▮▮▮▮▮▮ |
| Subject: | RE: [EXTERNAL] Georgia Aquarium |
| Attachments: | STN501c3.jpg (982.47 KB), ShakingTheNationsW9.pdf (117.57 KB) |

Kelli,

Attached is a copy of the 501c3 and updated w9 form for Shaking the Nations, the ministry that is co-hosting the event and can be responsible for the bill payment. We are excited about hosting this event at the aquarium.

VM

15



**From:**  Groundwork Georgia ██████████████
**Sent on:** Tuesday, January 25, 2022 3:07:48 PM
**To:**  Manley, Vanessa <vmanley@atlantaga.gov>
**Subject:** [EXTERNAL] Fwd: Meeting

Vanessa Manley
████████, cell

Begin forwarded message:

> **From:** Groundwork Georgia ██████████████ >
> **Date:** January 19, 2022 at 10:00:27 AM EST
> **To:** Atlanta Change Agent <atlantachangeagent@gmail.com>
> **Subject:** Fwd: Meeting
>
> Vanessa Manley
> ████████, cell
>
> Begin forwarded message:
>
> > **From:** ██████████████
> > **Date:** January 19, 2022 at 9:54:53 AM EST
> > **To:** firstladygsutton██████ >, groundworkga ██████ vcarjuly ██████
> > **Subject:** Meeting
> >
> > https://teams.microsoft.com/l/meetup-join/19%3ameeting_ZTkwM2Y3YzItMWYvYi0ONWNmLTg1MDYtNTYzNDc02jA0NDgw%40thread.v2/0?
> >
> > ██████ |C.A.S.S. Firm
> > Managing Partner/CEO
> > ██████
> > Office: ██████
> > Email: ██████
> > Web: ██████
> > Office: ██████
> > Atlanta, Georgia 30331
> > Landmark Forum Education

**From:** Atlanta Change Agent <atlantachangeagent@gmail.com>
**Sent on:** Tuesday, February 28, 2023 5:11:34 PM
**To:** Manley, Vanessa <vmanley@atlantaga.gov>
**Subject:** [EXTERNAL] Fwd: Order #24647 Confirmation — HS Online Customer Sales

Vanessa Manley
▮▮▮▮▮▮▮▮▮, cell

Begin forwarded message:

> **From:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
> **Date:** September 1, 2022 at 7:07:01 PM EDT
> **To:** Groundwork Consulting <atlantachangeagent@gmail.com>
> **Subject: Order #24647 Confirmation — HS Online Customer Sales**
> **Reply-To:** ▮▮▮▮▮▮▮▮▮▮▮▮

---

**From:** Groundwork Georgia ▮▮▮▮▮▮▮▮▮▮▮▮
**Sent on:** Friday, January 27, 2023 12:35:32 AM
**To:** Manley, Vanessa <vmanley@atlantaga.gov>
**Subject:** [EXTERNAL] Fwd: EMORY UNIVERSITY FOCUS GROUP DISCUSSION-TOMORROW-1/26/23-7:00PM

Vanessa Manley
▮▮▮▮▮▮▮▮ cell

Begin forwarded message:

> **From:** Groundwork Georgia <▮▮▮▮▮▮▮▮▮▮▮
> **Date:** January 26, 2023 at 6:47:28 PM EST
> **To:** ▮▮▮▮▮▮
> **Subject: Fwd: EMORY UNIVERSITY FOCUS GROUP DISCUSSION-TOMORROW-1/26/23-7:00PM**
>
> ---------- Forwarded message ---------
> **From:** Groundwork Georgia ▮▮▮▮▮▮▮▮▮▮
> **Date:** Wed, Jan 25, 2023 at 5:48 PM
> **Subject:** EMORY UNIVERSITY FOCUS GROUP DISCUSSION-TOMORROW-1/26/23-7:00PM
> **To:** ▮▮▮▮▮▮▮▮▮▮▮
>
> Focus Group #2 -- Primary Elections
> Time: Jan 26, 2023 07:00 PM Eastern Time (US and Canada)
>
> Join Zoom Meeting

17

Manley used her City email address to conduct outside business with the City. Manley forwarded Groundwork Consulting invoices for payment to City staff using her City email address. OIG also discovered two instances in which Manley used her City email address to contact the Department of Finance (Finance) and other City staff when there were payment issues for Groundwork Consulting and Shaking the Nations. Manley also solicited donations (not using her City email address) from City Council members on behalf of Shaking the Nations events.

| | |
|---|---|
| **From:** | Atlanta Change Agent <atlantachangeagent@gmail.com> |
| **Sent on:** | Friday, November 19, 2021 4:06:05 PM |
| **To:** | Mark Henderson⬛⬛⬛⬛⬛⬛⬛; ⬛⬛⬛⬛⬛⬛; Boone, Andrea <aboone@atlantaga.gov> |
| **Subject:** | [EXTERNAL] IMG_6820.TIF |
| **Attachments:** | IMG_6820.TIF (47.6 KB) |

Address:

Shaking The Nations Inc.

⬛⬛⬛⬛⬛⬛

Financial contributions towards this event are tax-deductible and should be made payable three ways to: "Shaking the Nations" via check, via paypal at: PayPal⬛⬛⬛⬛ via cash app to:⬛⬛⬛⬛

Questions contact: Vanessa Manley
⬛⬛⬛⬛

Vanessa Manley

(Manley contacting Boone about payments to Shaking the Nations)

Shaking the Nations participated in a May 11, 2022, event honoring Dr. Gerald Durley, a figure in the greater Atlanta community. As part of this event, Manley circulated information to City staff about attending this event and communicated with City staff about the execution of the event. In April 2022, Council Member Matt Westmoreland donated $5,000 to Shaking the Nations "in honor of the 80th birthday of Reverend Dr. Gerald Gurley (sic)." However, there was an issue with the payment, and the money was not initially received.

From: Gerald Secret Party Planner ████████████████
Sent: Monday, April 18, 2022 7:29 AM
To: Overstreet, Marci Collier
Subject: [EXTERNAL] Invoice for Dr. Durley's Surprise Celebration
Attachments: MarciInvoice-QuoteDurley.docx

Councilmember Overstreet,

Thank you for your RSVP for Dr. Gerald Durley's 80th Birthday Celebration. Attached is your invoice and quote. Shaking the Nations is a vendor with the city.

Vanessa and Don

(Manley soliciting donation from a City Council member)

In May 2022, Manley reached out to Boone and Finance staff for assistance in having the payment to Shaking the Nations processed. There were several communications between Manley and City staff regarding the status of the payment. On June 15, 2022, the City processed the $5,000 donation to Shaking the Nations. On June 16, 2022, $2,000 from Shaking the Nations was deposited into Manley's bank account via the online money transfer application Zelle.

From: Manley, Vanessa <vmanley@AtlantaGa.Gov>
Sent on: Thursday, May 26, 2022 7:44:00 PM
To: Jumper, Donald <donjumper@atlantaga.gov>; Boone, Andrea <aboone@atlantaga.gov>
Subject: Fw: Shaking the Nations, Inc. - INV #40122

Councilwoman Boone,

Is there anyway you can assist with securing the 2 payments to Shaking the Nations.
$2500 from District 10
$5000 from Councilman Westmoreland.

Check or Direct Deposit is acceptable.

Vanessa Manley on behalf of Rev. Mary Smith

From: Brown, Brigette B. <BBBrown@AtlantaGa.Gov>
Sent: Thursday, May 26, 2022 3:35 PM
To: Manley, Vanessa <vmanley@AtlantaGa.Gov>
Subject: Shaking the Nations, Inc. - INV #40122

Hi Vanessa,

The invoice has not been processed for payment yet. Oracle shows that it Needs Revalidation. This typically means AP Has not began processing it or it is being help pending an approval from Mary Tanner because it's a donation and was sent on a Disbursement Form. See Below:

(Manley's request for assistance regarding Shaking the Nations payment)

19

| Payment Number | Payment Document | Payment Status | Reconciled | Payee | Payment Date | Payment Amount |
|---|---|---|---|---|---|---|
| 2398529 | COA Check | Cleared | Yes | Shaking the Nations, Inc. | 6/15/22 | 5,000.00 USD |

(City's June 15, 2022, payment to Shaking the Nations)

III. Midnight Basketball

In March 2022, the City began planning an event for the inaugural City of Atlanta Midnight Basketball League (MBL). The event was to take place at the C.T. Martin Natatorium and Recreation Center on April 14, 2022. DPR managed the MBL. Manley was chosen as part of the MBL "Core Enhancement Team." Manley told OIG that she was asked by Boone to assist with the MBL program. Manley explained to OIG that Boone likely invited Manley to assist because the MBL was taking place at a facility located in District 10. Manley told OIG that she was responsible for establishing an infrastructure for the MBL event, doing public relations, and linking community vendors and resources with the event. Communications show that Manley was instrumental in managing the logistics for the MBL event. In June 2022, Mayor Andre Dickens awarded Manley a plaque for her support in the inaugural MBL.

Groundwork Consulting was selected as one of the vendors for the MBL. OIG reviewed invoices from Groundwork Consulting for the MBL and found that the work performed by Groundwork Consulting mirrored the duties Manley described as part of the MBL's core enhancement team. Groundwork Consulting billed the City for, among other services: public relations, event management, community partner engagement, vendor recruitment and coordination, and run-of-show logistics.

Manley told OIG it was "fair to say" that she worked the MBL as a Groundwork Consulting employee. Manley explained to OIG that, while working for the MBL, she only worked for Bond in a part-time capacity. Manley told OIG that when Boone requested Manley work on the MBL event, Boone requested that Manley work on the MBL event as a Groundwork Consulting employee, not as a City employee. Manley also told OIG that DPR knew that Manley was acting as a private contractor, not as a City employee on the MBL.

DPR could not describe how Groundwork Consulting was selected as a vendor. OIG contacted the DPR employee who served as the initial MBL director, Ramondo Davidson, and was told that it is "safe to assume [Groundwork] visited [the MBL and] made some type of introduction to either me or one of my staff or team members." Davidson also informed OIG that the City "started [the MBL] program almost two years ago now so [he was] not sure how the initial introduction happened but [he] could say the same for all vendors [the City has] used."

Although Davidson could not recall how DPR came to hire Groundwork Consulting, OIG found communications suggesting that Davidson, and by extension DPR, may have been aware that Manley was working for Groundwork Consulting on the MBL. On August 11, 2022, Manley sent an email, with Davidson carbon copied to an MBL vendor. In the email, Manley identified herself as a Groundwork Consulting employee. Also, on August 11, 2022, a different vendor contacted

20

DPR, with Davidson and Manley carbon copied, for assistance on repayment. The vendor was first informed by DPR to contact his "Groundwork Representative," however, when the vendor stated he/she did not know Groundwork, DPR instructed the vendor to contact Davidson. Finally, OIG found several internal emails between Manley and DPR employees where Manley included her Atlantachangeagent@gmail.com email address in the addressee lists.

| From: | Atlanta Change Agent <atlantachangeagent@gmail.com> |
|---|---|
| Sent on: | Thursday, August 11, 2022 9:45:35 PM |
| To: | ███████████ |
| CC: | Davidson, Ramondo <rdavidson@atlantaga.gov>; Groundwork Georgia ███████████ |
| Subject: | [EXTERNAL] Last Invoice Submitted - Paid in Full |
| Attachments: | NEXT STEP STAFFING - INVOICE.pdf (173.14 KB) |

Brother Ricky,

Please review the last invoice that was paid out by City of Atlanta for 8 games. As you can see we paid you for the following:

- Season 1 Championship Game
- Season 2 Opener at Rosel Fann
- Season 2 Games at CT Martin 8 Games
July 13 - August 17 (6 Games)
- Season 2 Playoff Game at CT Martin - August 24 (1 Game)
-Season 2 Championship Game at CT Martin -August 31 (1 Game)

Please review my math carefully and let me know if there is any discrepancy.

I am also copying Ramondo to make sure there are only 8 games in the season, please confirm.

Vanessa Manley
Groundwork Consulting
███████████

(August 2022 email with Davidson carbon copied where, at the bottom, Manley identifies herself as a Groundwork Consulting employee)

21



**From:** Mitchell, Parthenia <PMMitchell@AtlantaGa.Gov>
**Sent:** Thursday, August 11, 2022 4:09 PM
**To:** Andre Pounds
**Cc:** Davidson, Ramondo <rDavidson@AtlantaGa.Gov>; Manley, Vanessa <vmanley@AtlantaGa.Gov>
**Subject:** RE: MyDJDre - Midnight Basketball - Additional weeks

Work directly with Ramondo, he can authorize payment.

Parthenia

**From:** Andre Pounds
**Sent:** Thursday, August 11, 2022 4:08 PM
**To:** Mitchell, Parthenia <PMMitchell@AtlantaGa.Gov>
**Cc:** Davidson, Ramondo <rDavidson@AtlantaGa.Gov>; Manley, Vanessa <vmanley@AtlantaGa.Gov>
**Subject:** [EXTERNAL] RE: MyDJDre - Midnight Basketball - Additional weeks

Thank you Ms. Mitchell,
I'm not familiar with "Groundwork" nor the process; this is the first time I've heard about it. Can you inform how I contact a representative of Groundwork?

**From:** Mitchell, Parthenia <PMMitchell@AtlantaGa.Gov>
**Sent:** Thursday, August 11, 2022 3:52 PM
**To:** Andre Pounds
**Cc:** Davidson, Ramondo <rDavidson@AtlantaGa.Gov>; Manley, Vanessa <vmanley@AtlantaGa.Gov>
**Subject:** FW: MyDJDre - Midnight Basketball - Additional weeks

Thank you for reaching out. Please have your invoice approved and signed off on by your Groundwork representative and Director Davidson. Once you have done so, please forward to me for processing.

Have a great evening.

Thank you,

Parthenia

(August 2022 emails from DPR to Vendor)

OIG found several emails between Manley and Boone, before and after MBL, where Manley conducted business (e.g., forwarding draft public relation statements, invoices, event planning, etc.) as a Groundwork Consulting employee, suggesting Boone was aware of Manley's employment with Groundwork Consulting.

In a February 2024 interview with Boone, OIG asked if Boone knew that Manley was part of a company called Groundwork Consulting. Boone stated that she was vaguely aware of this and added that Manley did a lot of different special projects in the community. Boone also told OIG that Manley did a lot of faith-based event management and described Manley as "really an evangelist."

OIG informed Boone that Groundwork Consulting was also employed by former City of Atlanta employee, Mark Henderson. Boone stated that she knew Henderson. Boone said that she met Henderson through Bond, and also knew Henderson from when he was director of the Office of Constituent Services, which Boone told OIG was her former role.

22

When asked how she came in contact with Groundwork Consulting, Boone informed OIG that she "[knows] Mark Henderson and [she knows] Vanessa Manley." OIG asked Boone if Groundwork Consulting approached her to work on the MBL or if she approached Groundwork Consulting. Boone informed OIG that she asked Groundwork Consulting to work on the MBL and said, "We were getting it off the ground." Boone said she wanted the MBL to be successful because it was in her district.

OIG asked if Boone hired Manley as a Groundwork Consulting representative. Boone replied that she had, because [the City] "couldn't find anybody" that knew how to reach out to community organizations such as "Grady" and job sponsors such as "Amazon," "UPS," "Red Bull," and the "Second Chance Program." Boone told OIG that "most conventional employees don't want to touch it. So, we in that community, we needed somebody who had the connection to go out and bring people in."

OIG asked Boone if she knew that Manley was a City employee when she hired her to work at the MBL. Boone said that she "thought at some point [Manley] may have been doing like five or six hours of work or 10 hours of work for Mr. Bond. Like maybe 10 hours a week…Because I didn't see her here so, I don't think much. She wasn't doing much like a full-time employee, you know?" OIG asked Boone if she knew if Manley was working part-time for the City when she hired Manley to work on the MBL. Boone stated that she assumed Manley "may have been doing something for Mr. Bond, like maybe eight or 10 hours a week or 15 hours."

Boone told OIG that she knew Mary Smith and Shaking the Nations. OIG showed Boone the April 2022 invoice from Shaking that Nations that District 10 had paid. OIG asked what work Shaking the Nations performed. Boone stated that she believed Shaking the Nations helped package food for the event and brought in volunteers. OIG asked if Boone knew if Manley worked for Shaking the Nations. Boone told OIG that she believed that Manley was affiliated with "a lot of organizations throughout the City," describing Manley as a "community person."

In April 2023, Manley completed a City of Atlanta Ethics Financial Disclosure form (financial disclosure form). On the financial disclosure form, Manley disclosed that she had engaged in outside employment with Groundwork Consulting.[17] Manley did not report outside employment with Shaking the Nations. In Section Six of the financial disclosure form, Manley declared "under penalty of perjury that…to the best of [her] knowledge it [was] a true, accurate, and complete statement of [her] financial and personal interests" (emphasis in original).

In Section Two of the financial disclosure form, Manley was instructed to report any companies that employed her that also did business with the City since January 1, 2022. Manley reported that Groundwork Consulting had worked on the MBL. Since Manley reported that Groundwork Consulting had done business with the City, Manley was also required to answer whether she was "personally involved in any way acquiring or doing work in connection with the business or contract for the City." Manley answered 'No' to this question. Manley informed OIG that she most likely answered no because she did not understand the question and added that she

---

[17] Manley also reported employment with the "Jen Jordan for Georgia Attorney General Campaign" and with "Clover Healthcare" (no relation to Cloverhurst).

thought the question regarded a contract between the City of Atlanta and Groundwork Consulting.[18]

Despite Manley's statements to OIG that she was not working on the MBL as a City employee, Manley communicated with internal and external parties about the MBL using her City email address. Manley solicited sponsors for the MBL using her City email address, including Chick-fil-A, Inc., Coca-Cola Bottling Company United, Papa John's Pizza, and former National Basketball Association athlete, Shaquille O'Neal. Manley confirmed that she used her City email address and not her outside employment email address while working on the MBL. Manley stated that she was uncertain if she had ever been informed about the City's policies regarding the use of City property for private employment.

---

[18] On Manley's 2024 financial disclosure, Manley does not report any outside employment, despite evidence collected suggesting that she continued employment with Groundwork Consulting after the January 1, 2023, reporting period.

| | |
|---|---|
| From: | Manley, Vanessa <vmanley@AtlantaGa.Gov> |
| Sent on: | Wednesday, April 6, 2022 4:48:54 PM |
| To: | ███████████ |
| CC: | Atlanta Change Agent <AtlantaChangeAgent@gmail.com> |
| Subject: | Invitation for Dr. O'Neal to Support Mayor Andre Dickens' Midnight Basketball |
| Attachments: | Showcase2MidnightBasketballFlyer.pdf (8.46 MB) |

As always, thank you for taking my call and for your unwavering support of the City of Atlanta. We are reaching out to ask our dear friend Dr. Shaquille O'Neal for his commitment and support of another great community outreach project. We are excited to announce that Atlanta Mayor Andre Dickens and the City of Atlanta Department of Parks and Recreation has officially launched the inaugural Midnight Basketball League. We will be hosting our n showcase on Wednesday, April 13, 2022 at the C.T. Martin Recreation Center located at 3201 Martin Luther King, Jr. Drive, SW, Atlanta, GA 30311.

Midnight Basketball was developed in the 1990s to curb inner-city crime throughout the United States. The primary objective was to target urban young adults and offer them an alternative that would keep them off the streets and reduce their exposure to crime and drugs. The demographics and current community of interest that we are starting with in Atlanta are young men from the ages of 17 and older. We have registered more than a doze teams and are creating empowerment based events that offer wrap around services for the entire community.

In conjunction with the showcase we will be hosting a Community Resource Fair from 6:00PM-9:00PM where citizens will enjoy a job fair, hair cuts, and educational empowerment opportunities and motivational entertainment throughout the evening. **In order to ensure that this inaugural event is a succe the City of Atlanta is requesting a partnership with Dr. Shaquille Oneal and Papa Johns Pizza to serve as the signature sponsors by providing 50 pizzas (25 be delivered to the Recreation Center Kitchen at 5:30pm and 25 to be delivered at 7:30pm) for the constituents and a one hour celebrity appearonce of Shaquielle Oneal for the pre-game festivities from 6:30pm-7:30pm.**

The event flyer is attached for your review. Our fiscal non profit sponsor for this program is the Atlanta Police Athletic League (PAL). The impact of this endeavor depends on the financial and in-kind support of our business and civic community. We look forward to your consideration and support as a sponsor of this exciting event. In closing I hope that you join us as a partner, by giving careful consideration to this request and respond to Vanessa Mor at vmanley@atlantaga.gov or 404-702-9260. I thank you again for your past support and hope that you will once again make this unique community outreach event a success.

Media Links Below:

11Alive - https://www.11alive.com/video/news/local/atlanta-mayor-brings-back-midnight-basketball/85-bfea0cd6-5f84-4402-ad7f-0933e16b105a

WSB - https://www.wsbtv.com/video/local-video/mayor-atlanta-introduces-midnight-basketball-way-possibly-curb-crime-city/c591a7ee-df8e-40o2-afa2-1d67bbbb0o5f/

Fox 5 - https://www.fox5atlanta.com/news/midnight-basketball-is-back-in-atlanta

CBS46 - https://www.cbs46.com/2022/03/31/atlanta-mayor-launches-midnight-basketball-league-curb-crime/

Vanessa Manley
Lead Organizer, Midnight Basketball

(Manley's letter to sponsor)

On April 4, 2022, Manley emailed Boone and then-City Council Data/Reporting Analyst Brigette Brown a request for Boone to review and approve an attached invoice. The attached invoice was from Groundwork Consulting and was a $2,500 bill for services provided by Groundwork Consulting at the MBL Community Resource Fair on April 13, 2022 (the April 2022 GC Invoice). The April 2022 GC Invoice included the reference number 40122-COA and was dated April 1, 2022. Manley is identified as the sender on the invoice.

25

Boone approved the April 2022 GC Invoice; however, later on April 4, 2022, the City Department of Procurement (DOP) informed Brown that the payment request had been returned because District 10 had exceeded the allowable $20,000 small purchases threshold for Groundwork Consulting.[19] Brown forwarded DOP's response to Manley on April 11, 2022.

On April 14, 2022, Manley emailed Brown and Boone an "updated" invoice. The updated invoice was nearly identical to the April 2022 GC Invoice, only instead of Groundwork Consulting, the vendor was listed as Shaking the Nations (the April 2022 STN Invoice). Although Groundwork Consulting's and Manley's names did not appear on the April 2022 STN Invoice, other information, including the amount, billed services, invoice date, contact telephone number, and the invoice reference number matched the information on the April 2022 GC Invoice. Boone approved the April 2022 STN Invoice, and payment was issued to Shaking the Nations.

---

**From:** Boone, Andrea
**Sent:** Monday, April 4, 2022 10:45 AM
**To:** Brown, Brigette B.
**Subject:** Re: [EXTERNAL] Invoice for Services Attached
**Attachments:** GroundworkInvoiceBooneApril.docx

Approved.

Sent from my iPhone

On Apr 4, 2022, at 10:44 AM, Brown, Brigette B. <BBBrown@atlantaga.gov> wrote:

From: Gerald Secret Party Planner ███████████████████
Sent: Monday, April 4, 2022 8:16 AM
To: Brown, Brigette B. <BBBrown@AtlantaGa.Gov>; Boone, Andrea <ABoone@AtlantaGa.Gov>
Subject: [EXTERNAL] Invoice for Services Attached

Please review and approve.

Vanessa Manley
404-702-9260

---

[19] Atlanta Code Section 2-1190 covers small purchases. Small purchases are discretionary purchases department heads can make without DOP approval. Until June 30, 2023, the dollar threshold for Small Purchases was limited to $20,000 (aggregate value) in a fiscal year per vendor. In June 2023, City Council approved 23-O-1212 which increased the dollar threshold for small purchases to $100,000, effective July 1, 2023.



## Invoice Date: 4-1-22
## Invoice Number: 40122-COA

| To: | From: |
|---|---|
| Andrea L. Boone<br>Atlanta City Council<br>District 10<br>aboone@atlantaga.gov<br>404-557-1620 | Vanessa Manley<br>Groundwork Consulting<br><br>CoA Supplier ID:  2200443 |

| DESCRIPTION | |
|---|---|
| ❖  Midnight Basketball Community Resource Fair-April 13<br>    • Public Relations<br>    • Event Management<br>    • Press Release<br>    • Vendor Recruitment and Coordination<br>    • Event Supplies<br>    • Community Partner Management<br>    • Run of Show Logistics<br>    • Collateral Signage, Banners, and Graphic Design Support<br>    • Volunteer Management and Recruitment | $1000.00 |
| ❖  Administrative Support $25/ Hour x 40 Hours | $1000.00 |
| ❖  Extra Special Event Staffing (Africa, Ish, Tosha, James, Wanda) | $500.00 |
| **TOTAL DUE** | **$2500.00** |

We accept Check, CashApp, Zelle and Paypal as acceptable forms of payments made payable to:

**Groundwork Consulting**
**2148 Newnan Street, East Point, GA 30344**

To coordinate payment please call

(April 2022 GC Invoice)

27

From:       Brown, Brigette B. <BBBrown@AtlantaGa.Gov>
Sent on:    Monday, April 11, 2022 12:52:08 PM
To:         Manley, Vanessa <vmanley@atlantaga.gov>
Subject:    FW: Return of Requisition #22219987
Attachments: Groundwork Consulting Quote #40122-COA (2).docx (202.62 KB)

From: Brown, Angela <AnBrown@AtlantaGa.Gov>
Sent: Monday, April 4, 2022 4:56 PM
To: Brown, Brigette B. <BBBrown@AtlantaGa.Gov>
Cc: Freeman, Shawanda <sfreeman@AtlantaGa.Gov>; Ford, Rita <RFord@AtlantaGa.Gov>
Subject: Return of Requisition #22219987

Good afternoon,

Requisition #22219987 was returned for the following reason(s):

- D10/ ACC have exceeded the $20,000.00 Small Purchase limit for this vendor (Groundwork Consulting, Inc) for the FY22 fiscal year.

  The following purchase orders have been issued for D10 to this vendor, this FY22 fiscal year. All as **MICRO-PURCHASES**:

        PO #52203677 - $2500.00
        PO #52204954 - $2500.00
        PO #52205646 - $2500.00
        PO #52207762 - $2500.00
        PO #52208865 - $2500.00
        PO #52209477 - $2500.00
        PO #52210774 - $2500.00
        PO #52212074 - $2500.00
        PO #52214536 - $2500.00

        Totals = $22,500.00 with $0 available for purchases.

Please process this requisition through Accounts Payable.

If there are any questions or concerns, please contact me or Mrs. Shawanda Freeman.

(Brown forwarding DOP communication to Manley)

28

| | |
|---|---|
| **From:** | Boone, Andrea |
| **Sent:** | Thursday, April 14, 2022 1:14 PM |
| **To:** | Manley, Vanessa |
| **Cc:** | Brown, Brigette B. |
| **Subject:** | Re: Shaking the Nations Invoice |
| **Attachments:** | ShakingTheNationsInvoiceBoone.docx |

Approved.

Sent from my iPhone

On Apr 14, 2022, at 1:01 PM, Manley, Vanessa <vmanley@atlantaga.gov> wrote:

Brigette,

Attached is an updated invoice. Please check and see if the new address is updated. Thanks.

vm



IT'S JUST KINGDOM BUSINESS

### Invoice Date: 4-1-22
### Invoice Number: 40122-COA

| To: | From: |
|---|---|
| Andrea L. Boone<br>Atlanta City Council<br>District 10<br>aboone@atlantaga.gov<br>404-557-1620 | Shaking the Nations |

| DESCRIPTION | |
|---|---|
| ❖ Midnight Basketball Community Resource Fair-April 13<br> • Public Relations<br> • Event Management<br> • Press Release<br> • Vendor Recruitment and Coordination<br> • Event Supplies<br> • Community Partner Management<br> • Run of Show Logistics<br> • Collateral Signage, Banners, and Graphic Design Support<br> • Volunteer Management and Recruitment<br> • Administrative Support | $2500.00 |
| **TOTAL DUE** | **$2500.00** |

We accept Check, CashApp, Zelle and Paypal as acceptable forms of payments made payable to:

Shaking the Nations

To coordinate payment please call ▮

(April 2022 STN Invoice)

29

OIG showed Manley both invoices and asked Manley whether it was Groundwork Consulting or Shaking the Nations that provided the services listed on the invoices. Manley initially stated that she was "a little confused" by the invoices and "would prefer not to answer." However, Manley opined that the Shaking the Nations invoice was to "pay some of the expenses" associated with MBL and not for work performed by Shaking the Nations. OIG listed the services Shaking the Nations billed the City for, such as "event management, press releases, vendor recruitment, graphic design" and others, and told Manley the billed services seemed to be for event management work and not for expenses. Manley agreed with OIG's assessment regarding the nature of the billed services.

Later, Manley told OIG that Shaking the Nations provided several volunteers for the event. OIG asked Manley again whether it was Shaking the Nations or Groundwork Consulting that provided the listed services for the event. When asked again, Manley stated definitively that it was not Shaking the Nations who provided work for the MBL event. OIG inquired why Shaking the Nations, and not Groundwork Consulting, received payment for services provided at the MBL event. Manley repeated that she was confused.

In the February 2024 interview, OIG asked Boone if she could remember whether Groundwork Consulting or Shaking the Nations provided the services described on both invoices. Boone informed OIG that, as the invoices were over two years old at the time of the interview, she could not remember. Boone also informed OIG that she did not want OIG to damage Manley's reputation or the reputation of the MBL program. Boone indicated to OIG that the relatively small amount of money on the invoice was not worth her or OIG's attention. Boone suggested that OIG investigate "real fraud and waste and corruption" and "deal with some real issues instead of trying to polarize or poison a good product that's helping young people in the community." Boone also informed OIG that Manley did a lot of work for the event, that the amount of money paid to Manley was more than fair, and that she would give Groundwork Consulting a reference.

IV. Manley and Tokarz

OIG told Manley that she was listed as a reference, as a Groundwork Consulting employee, for Cloverhurst on a contract with the City. Manley told OIG that the name Cloverhurst sounded familiar. OIG told Manley that Cloverhurst was managed by Tokarz. Manley told OIG that Tokarz was a friend of her brother[20] and hers. OIG asked if she had alerted Tokarz to the MBL events. Manley stated she was uncertain if she had and added that she believed that the Atlanta Police Department provided security at MBL events. Manley informed OIG that she believed that Tokarz reached out to her before using her name as a reference.

Analysis

OIG's investigation revealed several acts of misconduct including: failure to disclose potential conflicts of interests and financial relationships on a City solicitation, failure to disclose outside employment on the City's financial disclosure form, false statements, false filings, fraud, misuse of City property, theft of City time,  self-dealing, violations of the City's blackout period

---

[20] Former District 3 Atlanta City Council Member Ivory Lee Young, Jr.

policy, and several violations of the City's ethics, outside employment, and conflicts of interests laws and policies. In addition, OIG noted multiple increases in City funding allocated to a City contract, to the ultimate benefit of Cloverhurst/Aaron.

While OIG found no official misconduct committed by Bond, considering his close personal relationship with Tokarz and the possible financial interests shared between the two, there are concerns regarding Bond's decision to vote on legislation for IFB-S-1220215(a), the use of Tokarz' company as a vendor for Post 1, and, also, Post 1's attempt to seek reimbursement for funds paid to a company owned by Tokarz.

*Ordinance 22-O-1239*

As noted, this case was initiated due to a complaint concerning Bond's request that City Council reimburse Post 1 for costs incurred from robocall and text message services Post 1 purchased to support the City's HelloFresh Initiative. While Bond's requests for reimbursement do not appear to have violated any City rules or policies, OIG questions the propriety of a Council member using office funds to transact with a company owned by a close associate and then requesting that the City reimburse their office for the payments made to said company. Such conduct may give the impression that a Council member was using City funds to enrich a friend's business.

*Failure to Disclose Financial Relationships*

Tokarz did not disclose potential conflicts of interest, namely his financial relationships held with City staff, in Cloverhurst's bid for IFB-S-1220215. OIG identified ambiguities and potential gaps in the submittal forms that may undermine the City's transparency efforts.

In the Definitions section of the CDD form, the CDD form provides competing definitions of "offeror." The CDD form defines offeror as "any individual or entity that submits a Bid or Proposal in response to a solicitation, as follows: An offeror is a business entity (as defined in City Code §2-1102) submitting a bid or proposal in response to the solicitation." This definition combines two separate definitions, one in which an offeror is "any individual or entity" responding to a solicitation and another where an offeror is "a business entity" as defined by City Code that responds to a solicitation. Thus, it is not entirely clear on this reading whether an offeror is "any individual or entity" or "a business entity" only.

OIG notes that Section B and Section C of the CDD form repeat that an offeror is "any individual or entity that submits a Bid/Proposal in response to a solicitation." However, Section C also states that any representations made therein are "deemed to have been made on behalf of the offeror." Section B does not have such language. The absence of this "on behalf of" language in other sections besides Section C suggests that in the sections where the language does not appear, the questions posed are for the offeror as a separate entity from the person completing the form.

OIG also discovered an error in the Ethics Pledge section of the solicitation form. The Ethics Pledge section requires the filer to identify any financial or personal interests, however, the form does not identify the source that defines financial or personal interests. Rather the form states "financial or personal interest as defined in concerning any City of Atlanta bid, proposal…". As

31

such, it remains unsettled what information the person completing the form must disclose separate from the business entity.

Finally, there are potential vulnerabilities in the CDD disclosure requirements. For example, Section B, Question 2 of the CDD form asks if the offeror in the last three years employed, or retained as an independent contractor, any current or former City of Atlanta employees. However, there is no reciprocal requirement that the offeror disclose whether a City employee had employed or retained the offeror as an independent contractor within the last three years. The City would be best served by knowing about employment relationships between the offeror and City employees regardless of whether the offeror was the hiring party or the hired. If the offeror is employed by a City employee, the potential exists for the City employee or the offeror to leverage this relationship in the solicitation process.

Section B, Question 5b (disclosure of financial interests) may appear to cover employment relationships between City employees and offerors; however, the specific language used in the question may obscure the information the offeror is required to submit. Question 5b defines a financial relationship as any "interest held" with a City employee or official that may/did yield a money or material benefit. The term "interest" is undefined and "held" in this context could be interpreted to be limited only to interests held in common. By focusing the financial relationship inquiry on "interests held" instead of "relationships," the CDD form may give the unintended impression that the offeror must only disclose a shared interest, such as a partnership or other joint interest, between the offeror and City employees rather than any relationship that could or did yield a monetary or material benefit.

As it is not clear what information Tokarz was required to share about his personal business relationships on the CDD form, Tokarz' stance—that, because they are separate entities from Cloverhurst, he did need to disclose Howell Mill's financial relationships with the City and City employees or that he effectively controls Bond's Campaign Committee—might appear to have merit. On closer review, Tokarz' stance is untenable.

Although the CDD provides two definitions for the offeror, the "any individual or entity" language appears in all definitions of the offeror provided on the CDD form. The "business entity" as defined by City code language only appears once, in the Definitions section, and it appears alongside the "any individual or entity" language. Also, certain questions on the CDD form were addressed to the offeror as the individual completing the form, and not simply the business entity. For example, in Section B, Questions 5a and 5b asked the offeror to disclose details regarding the offeror's familial and personal relationships, and Question 6 asked the offeror about any criminal convictions for human trafficking violations.

It strains credulity that one would believe that the City would not want the offeror to disclose that they own a company that is doing business with the City, contemporaneously with the solicitation, and that has recently employed City employees. The City would also want to know that the offeror manages a City Council member's campaign committee's finances, that the offeror and one of the offeror's companies have received monetary payments from the City Council member's campaign committee, and that the offeror issued a $17,000 loan to a City Council member from said

32

campaign committee. Tokarz should have known that he would need to disclose his financial relationships with City officials and employees.

Even if Tokarz, in good faith, did not believe he needed to disclose the financial relationships between City officials and staff vis-a-vis Howell Mill and Bond's Campaign Committee, this would not excuse the fact that Tokarz did not disclose Cloverhurst's financial relationship with Manley. In Tokarz' references for IFB-S-1220215, Tokarz reports that Cloverhurst had done business with Manley. Tokarz was aware that Manley was Bond's chief of staff and had a sustained professional relationship with Manley in her role as a City employee. Tokarz informed OIG that he omitted Manley from the CDD form because he did not believe that she was a City employee at the time he filled out the form. However, his communications with Manley, via Manley's City email address, from March 2022 through August 2022 indicate that Tokarz was aware that Manley was still employed with the City.

Beyond the solicitation disclosures, Tokarz not forthcoming with OIG regarding his financial relationships with City employees. OIG requested that Tokarz provide OIG with a list of individuals he employed, either personally or through Howell Mill and Cloverhurst. Despite being assured multiple times by Tokarz' attorney that OIG would receive the requested information, and multiple extensions issued by OIG, to date, OIG still has not received the requested information. Accordingly, OIG cannot fully gauge how many City employees have worked with Tokarz, Cloverhurst, and/or Howell Mill.

In sum, Tokarz failed to disclose his outside financial relationships with a City Council member and City employees and failed to disclose Cloverhurst's financial relationship with a City employee. The CDD form states that failure to disclose financial information may result in suspension or debarment by the City of Atlanta.

*Violation of the City's Blackout Period Policy*

From the public announcement of a solicitation until the execution of an agreement, the City's blackout period policy expressly bars the offeror from communicating with City staff (other than the assigned DOP professionals) regarding the solicitation. In August 2022, approximately one month before the execution of IFB-S-1220215(a), Tokarz reached out to DPR to discuss how Cloverhurst/Aaron would be needed. In the email to DPR, Tokarz stated that Cloverhurst/Aaron was "still waiting on DOP to finalize the contract for IFB-S-1220215" and yet, Tokarz still arranged a meeting with DPR to discuss the solicitation. In doing so, Tokarz violated the City's blackout period.

Tokarz acknowledged that this communication occurred during the blackout period. However, Tokarz expressed to OIG that the blackout period policy should not have applied to this communication because the contract had already been awarded. Tokarz also indicated to OIG that he would propose legislation to change the duration of the blackout period policy. Until such change occurs, it is not up to Tokarz to determine when the City's blackout period policy may be disregarded. According to the rules of the City's blackout period policy, Cloverhurst/Aaron should have been disqualified from IFB-S-1220215.

*Funding for IFB-S-1220215(a)*

As discussed, since the execution of IFB-S-1220215(a), the City has added more than $3 million to IFB-S-1220215(a) within the initial term of the contract. While the delay in executing IFB-S-1220215(b) may explain the allocation of additional funding to IFB-S-1220215(a), it is unclear why so much more was needed. For example, in April 2023, the City passed Resolution 23-R-3341 adding an additional $1 million to IFB-S-1220215(a), even though little more than five months had passed since the execution of IFB-S-1220215(a) and approximately 59% of the original budget remained available.

DPR explained to City Council that the additional funds were needed for DPR to provide security at the City's outdoor pools and youth basketball tournaments; services that were already anticipated when the City executed IFB-S-1220215(a). DPR did not explain what had changed between November 2022 and April 2023 that had warranted a 133% increase to IFB-S-1220215(a) annual funding (a 30% increase of the initial two-year term funding of IFB-S-1220215(a) and (b) combined). It is possible that DPR underestimated the amount of funding that would be required to provide POST certified officers at DPR locations. It is also possible that the need for increased funding was a result of the delay in IFB-S-1220215(b)'s execution.

There were two awardees under IFB-S-1200215, Cloverhurst/Aaron and MSA. Cloverhurst/Aaron's rates were approximately 23% higher than MSA's. The exclusive use of Cloverhurst/Aaron as a security provider at DPR events may have caused DPR to exceed its original projected budget. With such a difference between Cloverhurst/Aaron's and MSA's rates, it might be presumed that, upon the execution of IFB-S-1220215(b), DPR would primarily (if not exclusively) use MSA to provide POST certified officers at DPR locations. However, the record indicates that Cloverhurst/Aaron still received the bulk of DPR security assignments even after the execution of IFB-S-1220215(b). As MSA would perform the same contractual service as Cloverhurst/Aaron at a less expensive rate, absent any extenuating circumstances that would prevent MSA from providing security at DPR events, the use of Cloverhurst/Aaron (at a disproportionate rate) would appear to constitute a waste of City funds.

In light of Tokarz' (and Aaron and Michel Turpeaus') ties to the City, the significant increases in City funding for Cloverhurst/Aaron's contract (as well as DPR's continued use of Cloverhurst/Aaron over the significantly less expensive MSA) raises concerns of cronyism and patronage.

*Council Member Vote on Cloverhurst Legislation*

As discussed, Bond voted to approve the legislation awarding IFB-S-1220215 to Cloverhurst/Aaron and the subsequent legislation to add funding to IFB-S-1220215(a). Section 2-813 of the Atlanta Code states:

> Every official or employee…who knows or with reasonable investigation should know that the official or employee has a financial interest or personal interest, direct or indirect, in any proposed legislation or in any decision pending before that official or employee or the agency of which the official or employee is a

34

member or employee shall not vote for or against, discuss, decide, in any way participate in considering the matter or seek to influence the votes or decisions of others on such matter.

While Bond does not have a direct financial interest in Cloverhurst, the fact that Cloverhurst is owned by Tokarz—the registered agent, chairperson, and treasurer for Bond's Campaign Committee and, also, the owner of Howell Mill, a company that has paid campaign consultants to work on behalf of Bond's most recent re-election campaign—suggests that Bond should have recused himself from voting on any legislation involving Tokarz and/or Cloverhurst. The email address Tokarz used in his communications with Bond had the '@Cloverhurst' suffix; accordingly Bond had reason to know that Cloverhurst was Tokarz' company.

Even if Bond and Tokarz did not have a financial relationship, the two have a close professional and personal relationship. Tokarz described Bond to OIG as almost a "second father." OIG found social media posts in which Tokarz and Bond are together at informal social occasions. Bond may have recused himself from voting on legislation, if for no other reason than to avoid any appearance of impropriety.

*Manley*

Manley violated several of the City's outside employment rules. Manley routinely engaged in outside employment activities, such as communicating with third parties, processing payments, and forwarding documents using her City email address. Manley also performed duties for Groundwork Consulting and Shaking the Nations, such as public relations, event management, outreach, and other activities, that largely mirrored her duties as Bond's chief of staff and her duties within OCS. Section 114-436 of the Atlanta Code states, in relevant part:

Outside employment shall constitute any paid employment of an employee which is in addition to such employee's employment with the city. As related to one's employment with the city, outside employment shall only be allowed under the following conditions:

- Such employment shall not interfere with or affect the performance of the employee's duties.

- Such employment shall not involve a conflict of interest or a conflict with the employee's duties.

- Such employment shall not involve the performance of duties which the employee should perform as part of such employee's employment with the city.

- Such employment shall not involve the use of records or equipment of the city.

35

Records suggest that Manley used her position as a City employee for personal gain. Manley used City resources to solicit donations from City officials for Shaking the Nations. Manley reached out to City officials and departments for assistance with payment processing for Groundwork Consulting and Shaking the Nations. In one instance, Manley worked with Finance to ensure that a Council member's $5,000 donation to Shaking the Nations was processed, only for Manley to receive a $2,000 payment from Shaking the Nations the day after it was processed.

Manley did not disclose to the City details about her outside employment. For example, Manley omitted her employment with Shaking the Nations on her 2023 financial disclosure form. Although Manley claimed to be unaware that she was listed as CFO for Shaking the Nations, communications show Manley doing business for Shaking the Nations. Also, Manley was the co-organizer of Groundwork Consulting, the listed address for Groundwork Consulting was her office at the Arts Xchange, and she was the named reference for Groundwork Consulting on Tokarz' bid for IFB-S-1220215. These facts suggest that Manley ran Groundwork Consulting along with (former OCS Director) Henderson. Yet, Manley detailed on the City's outside employment form that (former fellow Post 1 employee) Hampton was her supervisor at Groundwork. Manley could not explain why she listed Hampton as her supervisor.

Although Manley reported her employment with Groundwork Consulting and, also, Groundwork's involvement with the City's MBL on her financial disclosure, when asked on the financial disclosure if she had any personal involvement in any way in acquiring or doing work in connection with the business or contract for the MBL, Manley answered "No." Far from having no involvement with the MBL, records show Manley was part of the MBL's "Core Enhancement Team" and was instrumental in the planning, management, and staffing for the MBL. Also, Manley billed the City as a Groundwork Consulting employee (later as a Shaking the Nations employee) for her work on the MBL.

Manley told OIG that she checked No because she believed the financial disclosure's question referred only to contracts. The plain language of the financial disclosure form's question makes clear that the inquiry was not limited to contracts. Given Manley's other omissions (and false statements), it appears that Manley intended to conceal the extent of her involvement on the MBL as a Groundwork Consulting employee.

Manley informed OIG that, while employed with the City, she was hired to work on the MBL as a Groundwork Consulting employee. Section 5-401(a) of the Atlanta Code states:

> Except as otherwise provided by general law, no elected official, appointed officer, or employee of the city or any office, department, or agency thereof, shall knowingly:
>
> 1. Engage in any business or transaction with, or have a financial or personal interest, direct or indirect, in the affairs of, the city, except through a procedure employing sealed bids.
>
> 2. Engage in or accept private employment or render services for private interests when such employment or service is in conflict or incompatible with the proper

36

discharge of his or her official duties or would tend to impair his or her independence of judgment or action in the performance of official duties.

As Manley was hired to work on the MBL without having gone through a procedure employing sealed bids, Manley's work as a Groundwork Consulting (and/or Shaking the Nations) employee on the MBL violated Section 5-401(a) (as well as Section 114-436) of the Atlanta Code.

Manley informed OIG that Boone hired her to work at the MBL as a Groundwork Consulting employee. Manley also told OIG that DPR knew that she was working on the MBL as a Groundwork Consulting employee. Records suggest that these statements were true. Davidson, the director of MBL, was carbon copied on an email in August 2022 where Manley identified herself to a vendor as a Groundwork Consulting employee. DPR communications also indicate that Davidson oversaw vendor payment to "Groundwork representatives" and Manley included her private "AtlantaChangeAgent" email address on several DPR communications. Boone confirmed that she hired Manley as a Groundwork Consulting employee to work on the MBL, and also that she was aware that Manley was working part-time for the City when she hired Manley.

It is concerning that City employees, and an elected City official, condoned this breach of City protocols. While Boone and the DPR employees may not have been aware of the Atlanta Code's 'sealed bid' requirement for City employees who conduct business with the City, having an active City employee work on the MBL in a private capacity should have prompted these parties to investigate whether Manley's dual private/public employment on the MBL was allowable.

While Boone and DPR employees may have had reason to know that Manley was working on the MBL as a Groundwork Consulting employee, the same is not true for the City vendors and sponsors Manley contacted to support the MBL. Manley contacted several prominent business entities in the Atlanta metropolitan area for support on the MBL using her City email address. It is not apparent how these entities would have known that Manley was acting as a non-City actor when she contacted them for support. If Manley was operating in a private capacity, Manley should have used her Groundwork Consulting or private email address to contact these entities. Also, if Manley was working in a private capacity, using her City email address to perform her private job functions meant she was using City equipment for personal profit. This use would violate Section 5-401(b) of the Atlanta Code[21] which states that "[n]o elected official, officer, or employee shall use property of the city for his or her personal benefit or profit except in accordance with policies and procedures of the city."

In addition to the violation of City laws and policies, Manley's conduct may have violated the laws of the State of Georgia. On April 4, 2022, Manley submitted Groundwork Consulting Invoice #40122-COA for $2,500 to Boone for payment. The invoice included a description of tasks performed by Groundwork Consulting at the Midnight Basketball Community Resource Fair on April 13, 2022. Boone approved the payment to Groundwork Consulting, and the invoice was

---

[21] Manley's use of the City email address in this instance would also appear to violate Section 114-436 which bars City employees from using records or equipment of the City on outside employment and Section 2-811 of the Atlanta Code which states, "No official or employee shall request, use or permit the use of any publicly owned or publicly supported property, vehicle, equipment, labor or service for the private advantage of such official or employee or any other person or private entity."

forwarded for payment. However, DOP interrupted this transaction because District 10 had exceeded the City's $20,000 annual small-purchase limit for Groundwork Consulting. On April 11, 2022, a City Council data/reporting analyst communicated DOP's intervention to Manley. Three days later, on April 14, 2022, Manley submitted an "updated" invoice, Shaking the Nations Invoice #40122-COA, for payment. The $2,500 Shaking the Nations invoice was nearly identical to the Groundwork Consulting Invoice, containing the same description of services for the same April 13, 2022, Midnight Basketball Community Resource Fair. Boone approved this payment, and Shaking the Nations received payment in May 2022.

These records suggest Manley changed the company information on the originally submitted invoice from Groundwork Consulting to Shaking the Nations in an attempt to evade the restrictions imposed by the DOP's small purchase policy. In doing so, Manley submitted two different invoices, from two different companies, for the same work. Only one of the two companies provided the services described on the invoices. Consequently, one of the two invoices Manley submitted was false.

The Official Code of Georgia Annotated (OCGA) Section 16-10-20 states:

A person who knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact; makes a false, fictitious, or fraudulent statement or representation; or makes or uses any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of state government or of the government of any county, city, or other political subdivision of this state shall, upon conviction thereof, be punished by a fine of not more than $1,000.00 or by imprisonment for not less than one nor more than five years, or both.

In addition, OCGA 16-10-20.1 states:

Notwithstanding Code Sections 16-10-20 and 16-10-71, it shall be unlawful for any person to:

1. Knowingly file, enter, or record any document in a public record or court of this state or of the United States knowing or having reason to know that such document is false or contains a materially false, fictitious, or fraudulent statement or representation; or

2. Knowingly alter, conceal, cover-up, or create a document and file, enter, or record it in a public record or court of this state or of the United States knowing or having reason to know that such document has been altered or contains a materially false, fictitious, or fraudulent statement or representation.

By submitting a false invoice to District 10 for repayment—entering a false statement/document into a matter within the jurisdiction of Atlanta and/or the public record—Manley may have violated OCGA Section 16-10-20 and 16-10-20.1.

38

Also, OCGA Section 16-4-1 states:

> A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime.

And OCGA Section 16-8-3(a) states:

> A person commits the offense of theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property.[22]

Either Groundwork Consulting or Shaking the Nations was entitled to payment from District 10.[23] If Groundwork Consulting did not perform the work listed on the Groundwork Consulting invoice that Manley submitted to District 10, then Manley attempted to have Groundwork Consulting receive payment from District 10 to which it was not entitled. This could be a violation of OCGA Section 16-4-1, as the submission of the Groundwork Consulting invoice could qualify as an act constituting a substantial step toward the offense of theft by deception (OCGA 16-8-3). If Shaking the Nations did not perform the work on the invoice that Manley submitted to District 10, then it received payment for services that it did not provide. This could violate OCGA 16-8-3, as Shaking the Nations would have obtained money from the City by deceit or artful means to deprive the City of this money.[24]

Initially, neither Manley nor Boone could state whether Groundwork Consulting or Shaking the Nations had performed the services identified on the invoices. However, after questioning, Manley stated that Shaking the Nations did not perform work on the MBL. Records suggest that

---

[22] OCGA Section 16-8-3(b) states that a person deceives if he/she intentionally:

1. Creates or confirms another's impression of an existing fact or past event which is false and which the accused knows or believes to be false;

2. Fails to correct a false impression of an existing fact or past event which he has previously created or confirmed.

3. Prevents another from acquiring information pertinent to the disposition of the property involved.

4. Sells or otherwise transfers or encumbers property intentionally failing to disclose a substantial and valid known lien, adverse claim, or other legal impediment to the enjoyment of the property, whether such impediment is or is not a matter of official record; or

5. Promises performance of services which he does not intend to perform or knows will not be performed. Evidence of failure to perform standing alone shall not be sufficient to authorize a conviction under this subsection.

[23] Any such payment would be notwithstanding the Atlanta Code provisions and policies Manley's work on the MBL may have violated.

[24] Ultimately, the City received the services it paid for, regardless of whether Manley performed those services as a City, Groundwork, or Shaking the Nation employee. However, loss does not appear to be a requirement for the statute.

39

Manley acted as a Groundwork Consulting employee for the MBL and then, after the Groundwork Consulting invoice was rejected, used Shaking the Nations' name to elude the City's procurement regulations.

Boone made comments to OIG that downplayed the seriousness of the offense. Boone suggested that the relatively small dollar amount, $2,500, was not worth the time and effort OIG had placed into investigating the matter, and also suggested that OIG investigate "real fraud." While $2,500 may not constitute a substantial amount of money for the City, OIG takes any fraud or potential fraud perpetrated against the City seriously, regardless of the dollar amount—especially if that fraud may have been committed by a City employee, with the assistance, intentional or unintentional, of a City Council member.

In the February 2024 interview with Boone, Boone expressed concern about the reputational harm OIG's investigation could cause the MBL and suggested that OIG was attempting to "polarize or poison a good product that's helping young people in the community." OIG cannot overlook potential misconduct by City employees or officials simply because of their proximity to a worthwhile activity.

Conclusion and Recommendations

In January 2023, upon receiving a complaint, OIG initiated a review of Tokarz' relationship with Bond. OIG discovered no misconduct by Bond. However, OIG found that Tokarz has personal and financial relationships with several City officials and employees that he did not disclose, as required, in connection with a solicitation his company, Cloverhurst, was awarded with the City. OIG found that Tokarz was not forthcoming about his management of Bond's Campaign Committee's finances, payments he and his other companies had received from the City and from Bond's Campaign Committee, and employment relationships held with other City employees. OIG also found that Tokarz violated the City's blackout period policy for IFB-S-1220215.

Per the CDD form Tokarz submitted as part of his bid for IFB-S-1220215, Cloverhurst should be subject to suspension or debarment due to Tokarz' failure to disclose to DOP his financial relationships with City employees. In addition, Tokarz violated the blackout period for IFB-S-1220215; accordingly, Cloverhurst/Aaron should have been disqualified from RFP-S-1220215.

While IFB-S-1220215 had already been awarded to Cloverhurst/Aaron when Tokarz violated the blackout period, given Tokarz' other conduct, Cloverhurst/Aaron merits no leniency from the City. Cloverhurst/Aaron, at a minimum, should be barred from further work under IFB-S-1220215. The City can use alternative vendors to meet its security needs, including MSA, the other awardee on IFB-S-1220215. Transitioning to MSA may work to a net benefit for the City as MSA's rates are significantly less expensive than Cloverhurst/Aaron's.

The extent to which Tokarz may have leveraged his access to City officials and employees for a competitive advantage in doing business with the City raises concerns. OIG requested, via subpoena, that Tokarz provide a list of all employees who work for him, Cloverhurst, and Howell Mill. Tokarz did not comply with OIG's request, despite repeated assurances that he would, and multiple extensions given by OIG. As a result, OIG could not fully explore Tokarz' ties with City

40

employees beyond what OIG had independently discovered. Tokarz' evasiveness regarding his financial relationships with City employees does not comport with the transparency and candor one would expect of a City vendor. While OIG recommends that the City cease giving Cloverhurst/Aaron's assignments under IFB-S-1220215, OIG makes no recommendations regarding Howell Mill or Tokarz' other companies. However, given Tokarz' known (and potentially unknown) financial relationships with City officials and staff, and his lack of transparency on the matter, it may be prudent for the City, and City officials, to consider whether it should use Howell Mill or any of Tokarz' other companies to perform any further work for the City.

One of Cloverhurst's references for IFB-S-1220215 was Manley, a City employee. As a result of Tokarz' identification of Manley, along with her company Groundwork Consulting, OIG discovered that Manley used City resources to engage in outside employment, failed to disclose her involvement in the City event on her financial disclosure form, did not fully disclose all of her employment on her financial disclosure form, solicited funding for one of her businesses from City Council officials, used her access to City departments to facilitate payments to her companies, and submitted false statements regarding her outside employment. OIG also found that, at the request of a City Council member, Manley participated in the MBL, while an active City employee, and billed the City for her work through one of her companies.

Manley's work on the MBL violated the Atlanta Code. More concerning, City officials and employees knew, or should have known, that Manley was working on the MBL in violation of Atlanta Code. OIG's review revealed that Manley twice submitted invoices to District 10 for payment for what appeared to have been for the same work; once each for two of her companies. Neither Manley nor the District 10 Council member could explain why Manley submitted two invoices, from two different companies, for the same work. Records indicate that Manley may have done so to circumvent the City's small purchase rules. Manley's conduct may have violated Atlanta and Georgia laws. Accordingly, OIG refers the above findings to OCS for whatever disciplinary action OCS deems appropriate.

Over the course of this investigation, OIG has observed several instances of business dealings between City officials and employees and their friends. Aside from the appearance of impropriety these interrelationships may create, transactions between City personnel and their associates that do not go through the City's competitive procurement processes expose the City to undue risks such as overpayment and/or purchasing of substandard goods and services, and may encourage parties to curry favor with City officials to obtain an unfair advantage on City business dealings.

OIG refers the above findings to City Council, DOP, DPR, DPW, DHR, and Ethics for review. OIG recommends that:

1. DPR cease using Cloverhurst Strategies LLC on IFB-S-1220215(a).

2. DPW cease using Cloverhurst Strategies LLC on IFB-S-1220215(a).

3. DOP suspend or debar Cloverhurst Strategies LLC from doing business with the City.

4. DOP suspend or debar Groundwork Consulting, LLC from doing business with the City.

5. DOP suspend or debar Shaking the Nations, Inc. from doing business with the City.

6. DOP suspend or debar Vanessa Manley from doing business with the City.

7. City Council members and Council member staff engage in re-training regarding the City's outside employment policies.

8. City Council members and Council member staff engage in re-training regarding the City's conflict of interest policies.

9. DOP change the CDD form to clarify the terms "offeror" and "interests held."

10. DOP change the CDD form to add a requirement that offerors report all employment relationships with City employees.

11. DOP, in consultation with Ethics, clarify the definition of financial or personal interest in the Ethics' Pledge section.

12. City Council, Law, and Ethics collaborate to adopt internal City policies for lobbyists to increase transparency, including but not limited to a requirement that lobbyists identify themselves on City property.

Please notify OIG of your responses to the above recommendations within 30 days. If you do not accept the recommendations, please provide a written explanation. If you have any questions concerning the investigation or if you wish to discuss this further, please do not hesitate to contact me.

Sincerely,

Shannon K. Manigault
Inspector General

cc:    LaChandra Burks, Chief Operating Officer
       Odie Donald II, Chief of Staff
       Santana Kempson Wright, Council Chief of Staff