

**THE KATZ LAW GROUP** LLC

**STEPHEN M. KATZ**
Email:  smkatz@katz.legal

137 Johnson-Ferry Road • Suite 2230
Marietta, Georgia 30068-4949
Telephone:  770.988.8181
Facsimile:  770.988.8182
Internet:  www.katz.legal

3 September 2024

The Hon. Doug Shipman
President
Atlanta City Council
55 Trinity Avenue SW
Atlanta, GA 30303

Justin Cutler
Commissioner
Department of Parks and Recreation
55 Trinity Avenue SW
Atlanta, GA 30303

The Hon. Liliana Bakhtiari
Chair – Committee on Council
Atlanta City Council
55 Trinity Avenue SW
Atlanta, GA 30303

Kentorri Garmon
Commissioner
Department of Public Works
55 Trinity Avenue SW
Atlanta, GA 30303

Jaideep Majumdar
Chief Procurement Officer
55 Trinity Avenue SW
Atlanta, GA 30303

Jabu M. Sengova
Ethics Officer
68 Mitchell Street
Atlanta, GA 30303

Greg Clay
Executive Director
Mayor's Office of Constituent Services
55 Trinity Avenue SW
Atlanta, GA 30303

Patrise Perkins-Hooker
City Attorney
55 Trinity Avenue SW
Atlanta, GA 30303

Re:     *Response to Letter from Office of Inspector General dated August 14, 2024*

3 September 2024
Page 2 of 7

_____

Dear President Shipman, Councilmember Bakhtiari and Other City Officials:

### INTRODUCTION

In January, 2023, the Office of Inspector General ("OIG") received a complaint that contained three allegations (i) that reimbursements from the City of Atlanta to Post 1 for "Hello Fresh" were sent to a post office box, (ii) that Mr. Tokarz was Councilman Michael Bond's actual or de facto Chief of Staff, and (iii) that Mr. Tokarz failed to identify himself as a lobbyist and/or failed to display his lobbyist badge. (OIG Ltr. 8/14/2024, pg. 2)

The OIG quickly learned that all of the allegations contained in the complaint were baseless, that is the allegations were factually and legally frivolous. Instead of dismissing the baseless complaint, the OIG recklessly launched a wide-ranging political investigation in which it sought to accuse Councilman Bond, Mr. Tokarz, and others associated with them of corruption and impropriety.

Even assuming that OIG had authority to investigate matters outside of the complaint, which is expressly denied, OIG's findings are meritless and border on slander. OIG's use of its position to conduct a reckless political attack on a public official and private citizens is reminiscent of McCarthyism and calls into question the fitness of the current Inspector General for the office she currently holds.

### RESPONSE TO OIG'S LETTER

#### A.    OIG Should Have Summarily Dismissed the Baseless Complaint

The compliant that ostensibly gives rise to the OIG's referral letter dated August 14, 2024, was filed by a political opponent of Councilman Bond.

**Allegation No. 1: Reimbursements from Post 1 to HMC for HelloFresh Expenses**. The HelloFresh initiative was originally a charitable program developed by Councilman Bond and the Post 1 office, to provide food for the needy during the COVID-19 pandemic. At the time the City Council did not have reliable access to the Everbridge Mass Notification system used by the City, so the Post 1 office had contracted with Howell Mill Communications ("HMC") to provide mass notification services like robocalls and text messages, as several other council offices had done in the past. Quotes and invoices were submitted to the Post 1 office, which following all applicable provisions of the Procurement and Real Estate Code processed those invoices for payment.

The City Council passed an ordinance authorizing the HelloFresh program and later authorized the program as a citywide initiative. After the program was authorized as a citywide initiative, the Post 1 office sought reimbursement for expenses it had previously incurred and paid for HelloFresh prior to the program becoming a citywide initiative.

**THE KATZ LAW GROUP** LLC

3 September 2024
Page 3 of 7

_____

The reimbursements paid to Post 1 from the City General Fund, for the HelloFresh initiative were authorized and paid directly to the Post 1 office. At no time whatsoever were any payments made to Mr. Tokarz, HMC or to any company affiliated with Mr. Tokarz from funds not designated for the Post 1 Office. OIG's letter falsely suggests that funds paid to HMC by Post 1 were improper. Nothing could be further from the truth: Post 1 retained HMC to provide services. HMC provided the services to Post 1. Post 1 paid HMC for those services. OIG's suggestion that HMC received payment for its services from a source other than Post 1 is false and known by OIG to be false. The publication of false statements about Bond and Tokarz calls into question the fitness of the current Inspector General for the office she currently holds.

**Allegation No. 2: Tokarz Served as Bond's Chief of Staff**. OIG's letter states, "The Complainant identified Tokarz as Bond's chief of staff." This allegation is completely false. Tokarz has never served as Bond's chief of staff. Bond has never referred to Tokarz as "chief of staff" and Tokarz has never referred to himself as Bond's "chief of staff." The fact that Bond consults with or seeks Tokarz's opinion is neither unlawful or improper. Indeed, Bond consults with and seeks the advice of numerous individuals, including citizens. By suggesting that Bond's association with Tokarz, a non-employee and private citizen, is improper, OIG is coming dangerously close to interfering with Bond and Tokarz's First Amendment rights and subjecting herself and the City of Atlanta to legal action:

> The First Amendment to the United States Constitution, U.S. Const. amend. I, protects political association as well as political expression. Freedom to associate with others for the common advancement of political beliefs and ideas is a form of "orderly group activity" protected by the First Amendment and the Fourteenth Amendment to the United States Constitution, U.S. Const. amend. XIV. A person's right to associate with the political party of his choice is "an integral part of this basic constitutional freedom."

*Rodriguez v. City of Doral*, 863 F.3d 1343, 1349–50(11th Cir. 2017) (citing *Elrod v. Burns*, 427 U.S. 347, 357, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976) (plurality opinion) (quoting *Buckley v. Valeo*, 424 U.S. 1, 11, 96 S. Ct. 612, 46 L. Ed. 2d 659 (1976)). The OIG's attempt to interfere with the basic constitutional rights of Bond and Tokarz calls into question the fitness of the current Inspector General for the office she currently holds.

**Allegation No. 3: Tokarz Failed to Identify Himself as a Lobbyist**. OIG's letter describes the third allegation of the complaint: "The Complainant inquired as to whether Tokarz, who the Complainant also identified as a lobbyist, should be required to wear a badge when interacting with the City Council in the same manner required by lobbyists when appearing in the Georgia State Capitol."

This allegation is also completely false. OIG's investigation revealed or should have revealed that Tokarz, a registered lobbyist, always wears his lobbyist badge when visiting a city facility and

3 September 2024
Page 4 of 7

always signs in as a lobbyist when visiting a city facility. The inability of the current Inspector General to get basic facts right in an investigation calls into question her fitness for the office she currently holds.

B.      OIG's Wide-Ranging Investigation Exceeded the Scope of the Complaint and Was An Abuse of Power that Warrants the Removal of the Inspector General

There are several other matters in OIG's letter which reveal the extent to which the OIG has abused her authority in this investigation or demonstrated incompetence during her unauthorized wide-ranging investigation:

1.      OIG's Investigation of Lobbying Activities Violates State Law

OIG's own report indicates that it did not have authority to investigate the acts of lobbyists. Indeed, OIG's report found that state law preempts local level regulation of lobbyists, which are governed solely by state law. OIG's report states:

> OIG found no statute or policy requiring that lobbyists identify themselves on City property. On the website of the City's Ethics Office (Ethics), Ethics states that the City does not have any laws governing lobbyists and that Georgia law governs lobbyist registration and lobbyist gift reports.

(OIG Ltr 8/14/2024, pg. 4). Despite finding that it lacked legal authority to investigate lobbyists, OIG describes Tokarz's alleged activities at length in its letter and states or implies that Tokarz acted improperly. In the first instance, OIG had no authority to investigate Tokarz activities as a lobbyist. In the second instance, OIG's factual allegations against Tokarz are quite simply, false.

For example, OIG's letter states that it "found no record that Tokarz was, or has ever been, employed by the City of Atlanta." The letter goes on to state that Tokarz "regularly" gives Bond his opinion on "City board and position appointments, proposed legislation, and public relations." (OIG Ltr 8/14/2024, pg. 4). These activities are exactly what lobbyists do every day at the state and local level. So, on one hand, OIG states that it lacks authority over lobbyists, but goes on to question activities that are squarely within the duties of lobbyists, including Tokarz.

The OIG's attempt to expand her authority to investigate lobbyists is in violation of state law and calls into question the fitness of the current Inspector General for the office she holds.

2.      OIG's False Statements regarding Campaign Finance Reports and Other Matters

OIG's letter states:

OIG reviewed files from the Georgia Government Transparency & Campaign Finance

THE KATZ LAW GROUP LLC

3 September 2024
Page 5 of 7

Commission (CFC) and the City's Easy Campaign Finance Portal (the City's Campaign Portal). OIG could not find registration forms for Bond's Campaign Committee on either the CFC website or the City's Campaign Portal.6 OIG found an October 2008, Declaration of Intention to Accept Campaign Contributions form (DOI form) Bond filed with the Georgia State Ethics Commission (the predecessor to the CFC). On the DOI form, Bond identified himself as the chairperson and treasurer for Bond's Campaign Committee.

(OIG Ltr 8/14/2024, pg. 6).

Had the OIG actually looked at the law, she would have learned that the Campaign Finance act requires county and municipal candidates to register and file disclosures with the Municipal Clerk or the County Board of Elections. Bond timely registered and filed disclosures with the Municipal Clerk or the County Board of Elections. The OIG's statements regarding Bond's registration and disclosures are completely inaccurate and false. Indeed, OIG did not know and failed to determine where the reports are actually filed.

In addition, the OIG misstates facts related to Mr. Tokarz's cooperation. Mr. Tokarz voluntarily submitted to an interview at the OIG office and voluntarily turned over requested information. Mr. Tokarz repeatedly informed OIG that the companies he owns/operates do not have employees. Mr. Tokarz acknowledged reimbursing campaign volunteers, which were not City of Atlanta employees exercising authority. The reimbursement to campaign volunteers was completely lawful and appropriate. Mr. Tokarz fully cooperated with OIG.

3.    **OIG's False Statements that Bond's Campaign Loaned Him $17,300**

OIG's letter falsely states, "In December 2021, Bond's Campaign Committee also loaned Bond $17,300. The address reported on the loan was Box #551041." Contrary to OIG's statements, no loan was ever made from the Bond campaign to candidate Bond. This was debt the campaign incurred and was correctly recorded as such.

4.    **OIG's False Statements Regarding Michel Turpeau's Association with Tokarz**

In its report, OIG states, "Michel Turpeau worked as an intern with the Department of Watershed Management from May 2019 through August 2019." (OIG Ltr 8/14/2024, pg. 8). OIG is, of course, attempting to suggest that Tokarz had an improper association with a City of Atlanta employee. But, once again, the OIG's assertion is completely false.

Contrary to OIG's assertion on page eight of its letter, Michel Turpeau of the Aaron Group (partner in Cloverhurst/Aaron JV), passed away in December 2023. Michel "Marty" Turpeau was the Chairman of the Development Authority of Fulton County. He was never an intern in the Department of Watershed Management. The person named in the OIG letter is Marty's son, "Mickey." Mickey graduated from college in December of 2023 right before his father passed. Marty's last trip out of

**THE KATZ LAW GROUP** LLC

3 September 2024
Page 6 of 7

state was to see his only son graduate.

https://www.ajc.com/news/obituaries/fulton-development-authority-chair-marty-turpeau-dead-at-55/43QJMYZMBFGBXGGSEQ3YYRLOL4/

5.    **OIG's False Statements Concerning the "Blackout Period"**

OIG falsely asserts that Tokarz violated the "blackout period" when he sent an email on August 31, 2022, to DPR Deputy Commissioner Doug Voss to meet and "get a better understanding of where/when DPR will need officers." (OIG Ltr. 8/14/2024, pg. 12). OIG's letter also notes that

> On August 15, 2022, the City Council passed Resolution 22-R-4148, authorizing the City to enter into an agreement for IFB-S-1220215 for On-Call POST certified officers with Cloverhurst/Aaron and MSA in an amount not to exceed $750,000 annually. The resolution further stated that the terms of the agreement would include an initial two-year term and a discretionary one-year renewal option.

(OIG Ltr 8/14/2024, pg. 12). According to OIG, this communication by Tokarz after the City Council voted to approve Cloverhurst/Aaron's (Tokarz's company) contract for On-Call POST certified officers violated a "blackout period." This allegation is tendentious and false.

Once again, OIG can't get its facts or law straight. Contrary to OIG's assertion, nothing in the code mandates a blackout period. Moreover, any such "blackout period," informal or otherwise, does not apply after the City Council votes to approve a contract. For example, in testimony before the Atlanta City Council last month, Deputy Commissioner of ATLDOT Greg Moore stated,

> The city could not negotiate until the committee's vote ended a blackout period with the contractor.
>
> https://www.ajc.com/news/fairburn-road-complete-streets-project-faces-financial-scrutiny/PRWTT6YLPJEPJGQQGDQEHRXSTY/

There is no authority in the City Code for a "blackout period" after the City Council votes to approve a contract.

## CONCLUSION

The federal government has identified standards for evaluating the performance and professional conduct of inspector generals. These standards include four categories: Integrity, Objectivity, Independence, and Professional Judgment. OIG's letter dated 14 August 2024

**THE KATZ LAW GROUP** LLC

3 September 2024
Page 7 of 7

demonstrates that the current OIG is grossly deficient in all four areas. The OIG's misstatement of law and facts, mischaracterization of evidence, interference with constitutional rights, incompetent fact finding, and overt political attack on a private citizen and a Member of the Atlanta City Council demonstrate that she lacks Integrity, Objectivity, Independence, and Professional Judgment necessary for the Inspector General position. As set forth herein, OIG's letter to you dated 14 August 2024 is an abuse of power, an abuse of the current OIG's authority that not only lessens public confidence in City Government but subjects the City to liability and impairs the functioning of critical departments that serve Atlanta's citizens. Atlanta's citizens deserve better, and we implore elected officials to take immediate corrective action.

Very truly yours,



Stephen M. Katz

cc: Mr. Bernie Tokarz
    The Hon. Michael Julian Bond
    The Hon. Andrea Boone
    LaChandra Burks, Chief Operating Officer
    Odie Donald II, Chief of Staff
    Shannon Manigault, Inspector General