IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BERNARD TOKARZ,<br><br>        Plaintiff,<br>vs.<br><br>CITY OF ATLANTA, SHANNON K. MANIGAULT, individually and in her official capacity, *et al*,<br><br><br>        Defendants. | CASE NO.<br>**1:25-cv-00566-VMC** |

### PLAINTIFF'S RESPONSE TO DEFENDANT SHANNON K. MANIGAULT'S (INDIVIDUAL CAPACITY) MOTION TO DISMISS

**BERNARD TOKARZ,** through his counsel, **STEPHEN M. KATZ,** hereby responds to Defendant **SHANNON K. MANIGAULT'S (INDIVIDUAL CAPACITY) MOTION TO DISMISS**. For purposes of this response, Defendant shall be referred to as "Manigualt."

## STATEMENT OF FACTS[1]

The Office of the Inspector General (OIG) investigates only individuals who are employed or associated with the City of Atlanta, such as elected officials and vendors. OIG is tasked with investigating "allegations of fraud, waste, abuse, and corruption, of City of Atlanta employees, elected officials, commission and board members, vendors and subcontractors who do business with the City of Atlanta." (Complaint, § 11).

When Manigault was first hired as the Inspector General, she underwent extensive training from the City of Atlanta and the City Attorney regarding the issuance of subpoenas by the Inspector General. The training was conducted pursuant to the authority of Atlanta's City Attorney. During the same time period, Manigault and members of her staff met with the State of Georgia's Inspector General and his staff.

The purpose of the meetings, which were sanctioned by the City of Atlanta and/or its City Attorney, were, in part, to explore the ways in which the Inspector General could obtain authority to as a recognized

---

[1] Except where indicated, the facts are taken directly from the Complaint. Where facts in addition to those in the Complaint are set out, Plaintiff identifies those facts as not currently set forth in the Complaint. In section D of this response, Plaintiff does request permission to file an Amended Complaint should the Court conclude that the Complaint fails in whole or in part to state a claim.

law enforcement agency authorized to issue investigative subpoenas. At the time of Manigault's training and her meetings with the State of Georgia Inspector General, both Manigault and officials at the City of Atlanta were well aware that the Inspector General for Atlanta was not a law enforcement agency and lacked the authority to issue investigative subpoenas.[2]

For nearly 3 years and despite knowing that she did not have the right to issue investigative subpoenas, Defendant Manigault, the Inspector General, issued subpoenas to dozens of financial institutions in which she sought confidential banking records, ostensibly relating to city employees, elected officials, vendors, etc. (Complaint, §§ 19–126). All of the subpoenas contained the following statement in all capital letters at the top of the subpoena:

> *DISCLOSURE OF THE EXISTENCE OF THIS SUBPOENA OR ITS CONTENTS COULD IMPEDE THE INVESTIGATION BEING CONDUCTED AND THEREBY INTERFERE WITH THE ENFORCEMENT OF LAW.*
>
> *PLEASE DO NOT NOTIFY.*

(Complaint, §§ 24, 28, 32, 36, 40, 44, 48, 52, 56, 60, 64, 68, 72, 76, 80, 84, 88, 92, 96, 100, 104, 108, 112, and 116). These paragraphs in the

---

[2] The facts set forth in this paragraph were not contained in the original complaint.

Complaint list just some of the instances comprising the pattern and practice of issuing illegal subpoenas.  The subpoenas were illegal because Manigault did not have authority to issue investigative subpoenas. Thus, Manigault did not have authority to direct financial institutions to not disclose the existence of the subpoena to the bank's depositor, the owner of the banking account.

Plaintiff and the City of Atlanta agree that the subpoenas issued by the OIG with the directive not to disclose the subpoena were illegal, violated Georgia law, subverted the City of Atlanta Charter, violated the rights of individuals, and, importantly, subjected the City of Atlanta itself to potential liability from the individuals who owned the banking accounts. (Complaint, § 118).

On February 3, 2025, Atlanta's City of Attorney reprimanded Manigault and directed to cease and desist from issuing illegal subpoenas that contained a directive to financial institutions not to disclose the existence of the subpoena to the depositor/customer/account owner.

<u>**ARGUMENT AND CITATION TO AUTHORITY**</u>

**A. Manigault is Not Entitled to Qualified Immunity**

A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). The Supreme Court has made it clear that clearly established law does not require a case directly on point. *Ashcroft v. al-Kidd*, 563 U.S. at 741.

Therefore, a plaintiff may establish that the right is clearly established in three different ways: (1) by pointing to a materially similar case that has already been decided, (2) by pointing to a broader, clearly established principle that should control the novel facts of the situation, or (3) by establishing that the conduct involved in the obviously violates the constitution that prior case law is unnecessary. *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017).

In this instance there are two things that establish violations of clearly established law. The first is that there is a broad, clearly established

principle that should control the novel facts of the situation. The first principle relates to unlawful searches under the Fourth Amendment. The Fourth Amendment protections hinge on the occurrence of a search where the government infringes upon an expectation of privacy that society is prepared to consider reasonable. *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984).[3]  After the Supreme Court's decision in *Carpenter v. United States*, 585 U.S. 296, 138 S. Ct. 2206,  201 L. Ed. 2d 507 (2017), it is plain that society has recognized that, in the modern digital age, an individual has an expectation of privacy in electronic records. That broader principle governs a Fourth Amendment claim.

The second involves due process under the Fifth Amendment to the United States Constitution for denial of access to courts. Denial of access to the courts is a clearly established constitutional right. The Eleventh Circuit's holding in *Chappell v. Rich*, 340 F.3d 1279, 1282–83 (11th Cir. 2003) could not be clearer:

> Access to the courts is clearly a constitutional right, grounded in the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment. *Christopher v. Harbury*, 536 U.S. 403, 415 n.12,

---

[3] A search also includes a subjective expectation of privacy, which is clearly present in this case.

153 L. Ed. 2d 413, 122 S. Ct. 2179 (2002) (noting the Supreme Court's past reliance on all of these bases); *see also Bank of Jackson County v. Cherry*, 980 F.2d 1362, 1370 (11th Cir. 1993) (grounding the right of access to courts in the First Amendment). To pass constitutional muster,  access to the courts must be more than merely formal; it must also be adequate, effective, and meaningful. *Ryland v. Shapiro*, 708 F.2d 967, 972 (5th Cir. 1983) (citing *Bounds v. Smith*, 430 U.S. 817, 822, 52 L. Ed. 2d 72, 97 S. Ct. 1491 (1977))

*Chappell* made it plain that " 'defendants need not literally bar the courthouse door or attack plaintiffs' witnesses. *Chappell*, 340 F.3d at 1282–83 (citing *Bell v. Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984)). Importantly, the Eleventh Circuit made it plain in *Chappell* that *concealment* of facts by a state official is actionable as an unconstitutional deprivation of the constitutional right to access to courts:

Thus, interference with the right of court access by state agents who intentionally conceal the true facts about a crime may be actionable as a deprivation of constitutional rights under 42 U.S.C. §§ 1983 and 1985. *See Flores v. Satz*, 137 F.3d 1275, 1278 n.7 (11th Cir. 1998) (distinguishing between officials who intentionally conceal facts and those who fail to investigate fully); Ryland, 708 F.2d at 973 (allegation "that agents of the state intentionally engaged in conduct that interfered with [the plaintiffs'] exercise of their constitutionally protected right to institute a wrongful death suit" offered a valid theory of recovery).

*Chappell*, 340 F.3d at 1283.

While the complaint herein is inartfully pled regarding the unconstitutional deprivation of access to courts, there are more than sufficient facts in the complaint establishing a credible claim for an unconstitutional deprivation of access to courts under the Fifth Amendment.

For example, paragraphs 19–26 of the complaint allege Manigault, the Inspector General, issued subpoenas to dozens of financial institutions in which she sought confidential banking records, ostensibly relating to city employees, elected officials, vendors, etc. (Complaint, §§ 19–126). All of the subpoenas contained the following statement in all capital letters at the top of the subpoena:

**DISCLOSURE OF THE EXISTENCE OF THIS SUBPOENA OR ITS CONTENTS COULD IMPEDE THE INVESTIGATION BEING CONDUCTED AND THEREBY INTERFERE WITH THE ENFORCEMENT OF LAW.**

**PLEASE DO NOT NOTIFY**.

(Complaint, §§ 24, 28, 32, 36, 40, 44, 48, 52, 56, 60, 64, 68, 72, 76, 80, 84, 88, 92, 96, 100, 104, 108, 112, and 116).

There is no question that O.C.G.A. § 7-1-360(b) and (c) the notation that Manigault placed on the subpoena *directing* the financial institution to conceal the existence of the subpoena and not to disclose

the existence of the subpoena deprived Tokarz of his right to petition state and federal courts to quash the subpoena for his banking records. O.C.G.A. § 7-1-360(c) provides:

> (c) Each customer or depositor to whom notice of an order, subpoena, or request for disclosure, examination, or production of records was lawfully given may, prior to the date specified therein for disclosure, examination, or production, file in the court issuing an order or subpoena for the records or in the Georgia or federal court where the civil matter is being heard or, in the absence of such a court, in the superior court of the county in which the financial institution is located a motion to quash the order, subpoena, or request or for a protective order and shall serve such motion on the party requesting disclosure and the financial institution as may be otherwise provided by law for similar motions. Failure to file and serve such motion to quash or for protection shall constitute consent for all purposes to disclosure, production, or examination made pursuant to this Code section.

O.C.G.A. § 7-1-360(c).

It was more than clear to the City Attorney for Atlanta that Manigault's intentional concealment of the subpoenas from Tokarz and other affected individuals was intentional and violated the law, depriving Tokarz and others of their constitutional right to access to the courts. In its February 3, 2025 reprimand and "cease and desist" letter to Manigault, the City Attorney specifically referenced O.C.G.A. § 7-

1-360, told Manigault that the right of individuals' access to the courts (by referencing O.C.G.A. § 7-1-360) and OIG's governing board had been "eviscerated":

> On behalf of the City of Atlanta, I am demanding that your office cease the practice of adding disclosure notices on your subpoenas immediately. The specific language to be removed is "Disclosure of the existence of this subpoena or its contents could impede the investigation being conducted and thereby interfere with the enforcement of/aw. Please do not notify." This language is designed to have financial institutions view this subpoena as being one issued pursuant to O.C.G.A. Section 7-1-360 (3) as a part of a criminal or tax investigation of the depositor or customer of the financial institution. Your subpoenas are in the nature of those issued pursuant to O.C.G.A. Section 7-1-360 (2). The difference is the requirement of notice to be provided to the depositor or customer of the financial institution.
>
> The failure to provide notice to the depositor or customer which is a citizen, vendor or employee of the City of Atlanta is not legal, and it places the City of Atlanta at risk for potential liability for *this intentional violation of Georgia's Banking and Finance laws*. This practice also subverts the provisions in Part I, (Charter and Related Laws), Subpart A, (Charter), Article 8, Section 8-101 (e) of the Municipal Code of the City of Atlanta which grants a party subject to a subpoena the right to file a motion with your board to seek to quash the subpoena. Without notice of the issuance of the subpoena, this right has been *eviscerated*.

The City Attorney's letter to Manigault clearly states Manigault's conduct was an "intentional violation." Moreover, as Tokarz has

previously advised the Court, he has additional facts which establish that Manigualt deliberately concealed the existence of the subpoena from Tokarz and numerous other individuals whom she investigated. Those facts include (a) Manigault underwent extensive training from the City of Atlanta and the City Attorney regarding the issuance of subpoenas and from that training understood the disclosure requirements under O.C.G.A. § 7-1-360, (b) Manigault and members of her staff met with the State of Georgia's Inspector General and his staff to explore the ways in which the Inspector General could obtain authority to as a recognized law enforcement agency authorized to issue investigative subpoenas. Manigault clearly understood that her lack of authority to issue investigative subpoenas would require disclosure of her subpoenas under O.C.G.A. 7-1-360 and other statutes.

### B. Manigault is Not Entitled to Qualified Immunity on the First Amendment Claim

Manigault cites the Court to various cases for the proposition that "it is particularly difficult to overcome the qualified immunity defense in the First Amendment context." (Defendant's Brief, pg. 18. All of the cases cited by Manigault for this proposition are cases in which employees of the government brought an action against their public

employer for violation of the First Amendment. Those cases are inapposite because employees' speech about terminations, suspensions and other discipline will rarely be protected speech under the First Amendment. Tokarz is not and has never been an employee of the City of Atlanta. Further as set forth below, Manigault misstates the nature of Tokarz's First Amendment claim.

The second argument Manigault makes in favor of qualified immunity is that courts have declined to define "retaliatory investigation," as a constitutional tort." (Defendant's Brief, pg. 19). Manigault misstates the nature of Tokarz's First Amendment claim. Tokarz's First Amendment claim is not grounded in a "retaliatory investigation." Indeed, Manigault did not send the letter to the State Ethics Commission as part of a retaliatory investigation.

Manigault didn't send the letter to start an investigation or as a retaliatory investigation. In fact, Manigault had already finished her investigation when —out of the blue and shortly after Tokarz issued a blistering criticism of her conduct to over ten city officials. This could not have been a "retaliatory investigation" by Manigault because her investigation had already concluded and she had already sent all of her findings to ten city officials on August 14, 2024.

Manigault sent a referral to the State Ethics Commission only after Tokarz's September 3, 2024 response to the ten city officials. Manigault filed a frivolous complaint with the State Ethics Commission to retaliate for Tokarz's exercise of his rights of expression and association for writing a blistering, highly critical letter to city officials on September 3, 2024 in response to Manigault's August 14, 2024 referral letter to the ten city officials in which she falsely accused Tokarz of fraud, other serious misconduct, and criminal or quasi-criminal violations of Georgia law.

It is clearly established law that a vendor has a cause of action under section 1983 for violation of First Amendment rights where, as here, a government official retaliates against a "contractor or a regular provider of services" for the exercise of rights of expression and/or political association. *O'Hare Truck Serv. V. City of Northlake*, 518 U.S. 712, 116 S. Ct. 2353, 135 L. Ed. 2d 874 (1996). In *O'Hare Truck Serv.*, the Supreme Court was called to decide whether to extend First Amendment protection to independent contractors, such as Tokarz. *O'Hare Truck Serv.,* 518 U.S. at 714, 116 S. Ct. at 2355. In *O'Hare Truck Serv.*, a public official retaliated against a vendor when the vendor spoke out against the public official and supported a different

candidate. The Supreme Court held that a government cannot condition a vendor's contract on the vendor's exercise of his First Amendment rights. *O'Hare Truck Serv.,* 518 U.S. at 718,  116 S. Ct. at 2357.

Manigault's argument that she engaged in no "clearly unlawful" conduct  (Def's Brief, pg. 18) is meritless. It has long been held that instituting a frivolous lawsuit is retaliation. *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983); *Stewart v. Jones Util & Constr. Co*, 806 Fed. Appx. 738 (11th Cir. 2020)(Reaffirming that a legal proceeding filed with a retaliatory motive and lacking  a reasonable basis in fact or law is actionable). Likewise, Manigault's argument that Tokarz has not suffered any penalty or injury is false. To date, Tokarz's vendor contract has not been renewed. Moreover, a plaintiff need not provide detailed facual support for damages to survive a motion to dismiss. *Hoever v. Marks,* 993 F.3d 1353, 1370 (11th Cir. 2021)(Newsom, J., concurring in part) (citing *Rowe v. Shake*, 196 F.3d 778, 781-82 (7th Cir. 1999) ("A deprivation of First Amendment rights standing alone is a cognizable injury. . . . A prisoner is entitled to judicial relief for a violation of his First Amendment rights aside from any physical, mental, or emotional injury he may have sustained.");

### D. Plaintiff's Invasion of Privacy Claim Against Manigault Must Not Be Dismissed Because Her Conduct Was Undertaken with "Actual Malice"

A defendant who acts with "actual malice," *i.e.*, "acted with a deliberate intention to do wrong" is not entitled to official immunity. *Mommies Props., LLC v. Semanson*, 366 Ga. App. 153,159 (2022) Manigault's primary argument is that a police officer is entitled to official immunity from liability "when carrying out an investigation. *Wilson v. Cromer*, 356 Ga. App. 763,  847 S.E.2d 213 (2020); *Marshall v. Browning*, 310 Ga. App. 64, 74, 712 S.E.2d 71 (2011).

*Marshall* land *Wilson* are inapposite to and could not be more different from the facts in this case. In *Marshall*, a police officer investigating a case did not act with personal animus, did not manufacture evidence, or knowingly present perjured testimony. The officer met with a district attorney before seeking arrest warrants and submitted evidence consistent with the evidence uncovered in her investigation. *Browning*, 310 Ga. App. 64, 74, 712 S.E.2d 71. The behavior by the officer was obviously correct and could not have possibly constituted "actual malice."  In *Wilson*, officers saw, detained and arrested a person jogging approximately twenty minutes after an

armed robbery. Arresting suspects who are present near the location of an armed robbery shortly after the armed robbery occurs and  match a description of the armed robber provide sufficient probable cause. *See generally Chambers v. Marony*, 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970). Accordingly, the officer in *Wilson* could not possibly have acted with "actual malice" even if the suspect he arrested later turned out not to be the armed robber.

The facts alleged or available to be alleged in this case provide even more than a plausible basis for "actual malice." Here, Manigault had training and a meeting with the State Inspector General. The training related directly to the lawful issuance of subpoenas and the meeting with the State Inspector General was held because Manigault wanted information on how Manigault could obtain authority for her OIG office to as a recognized law enforcement agency authorized to issue investigative subpoenas, which, of course, would then not have the restriction of notifying the depositor as to the existence of the subpoena for his or her bank records.

When Manigault later issued numerous subpoenas for bank records, she deliberately placed a notation prohibiting the financial institution knowing that the depositor would not have the opportunity to seek a

court order quashing the subpoena. Manigault knew that she was obtaining the banking information unlawfully. She knew that she was invading the privacy of Tokarz and numerous other citizens. Manigault's conduct wasn't merely reckless; she "acted with a deliberate intention to do wrong." Where, as here, a plaintiff alleges an officer or government employee undertakes an action he knows is prohibited by law, the officer has acted with actual malice and the case cannot be dismissed. *Baker v. City of Atlanta*, 662 F.Supp.3d 1308, 1327 (N.D.Ga. 2023)(citing *City of Atlanta v. Shavers*, 326 Ga. App. 95, 756 S.E.2d 204, 207 (Ga. Ct. App. 2014)). Manigault's motion to dismiss the invasion of privacy claim should be denied.

### C. Tokarz Should Be Afforded an Opportunity to Amend His Complaint in the Event the Court is Inclined to Dismiss

In the event the Court concludes, Rule 15(a) provides that a party may amend its pleading once as a matter of course within 21 days after serving it and, after that, with the opposing party's written consent or the court's leave (which the court should freely give leave when justice so requires). Fed. R. Civ. P. 15(a).

While a court has discretion to deny a proposed amendment, it must provide a substantial reason for such a denial, because "Rule 15(a)

Page 17 of 19

severely restricts the district court's freedom." *Wilmington Trust, N.A. v. Ameritas Life Ins. Corp.*, 2007 U.S. Dist. LEXIS 119441 (N.D.Ga. May 15, 2024)(citing *Shipner v. E. Air Lines*, 868 F.2d 401, 407 (11th Cir. 1989) (policy embodied in Federal Rules of Civil Procedure favors liberally permitting amendments))(Calvert, J.).

Here, none of the factors militating against allowing an amendment. For example, there has been no undue prejudice to the opposing party, undue delay, bad faith on the part of the movant, futility of the motion, or repeated failure to cure deficiencies by previous amendments. *Wilmington Trust,* 2007 U.S. Dist. LEXIS 119441, at *12.

With regard to Manigault in her individual capacity, an amended complaint would address two important matters: (1) additional facts establishing that Manigault acted deliberately when she violated the law and obtained the records through illegal subpoenas, and (2) restatement of the due process claim under the Fifth Amendment for denial of access to courts.

All or most of the facts necessary to establish the Fifth Amendment denial of access to the courts, but the legal claim could be clarified. There is no question that a denial of access to the courts is clearly established law that will give rise to a Fifth Amendment due process

claim under 42 U.S.C. § 1983. *Chappell v. Rich*, 340 F.3d 1279, 1282–83 (11th Cir. 2003). Moreover, a government official's concealment of facts that interfere with access to courts is more than sufficient to state a claim for denial of access to courts under 42 U.S.C. § 1983. *Chappell*, 340 F.3d at 1283 and cites therein. An amended complaint would clarify the due process claim is indicated and would not prejudice any party because all or most all of the facts supporting the claim are already in the complaint. A clear statement of this claim is in the interest of all parties and to reach a correct determination on the merits.

**WHEREFORE**, Plaintiff requests that the Court deny Defendants' Motion to Dismiss or, in the alternative, allow Plaintiff leave to file an amended complaint.

Date:  13 May 2025.

By: **/s/ Stephen M. Katz**
Stephen M. Katz
Ga. Bar No. 409065

**THE KATZ LAW GROUP** LLC
137 Johnson-Ferry Road  ·  Suite 2230
Marietta, Georgia 30068-4949
Email: smkatz@katz.legal
Telephone: 770.988.8181
Email: smkatz@katz.legal