**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| BERNARD TOKARZ<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF ATLANTA, SHANNON K. MANIGAULT, *individually and in her capacity as Inspector General for City of Atlanta*, and CITY OF ATLANTA OFFICE OF INSPECTOR GENERAL,<br><br>    Defendants. | Civil Action No.<br>1:25-cv-00566-VMC |

**ORDER**

This matter is before the Court on Defendants' Motions to Dismiss. (Docs. 6; 20). Upon review of Plaintiffs' Complaint (Doc. 1), the filings in this case, and all information properly of record, Defendants' Motions to Dismiss are granted.

**Background**

## I.    Factual Background

Because this case is before the Court on a Motion to Dismiss, the following facts are drawn from Plaintiff's Complaint and are accepted as true. *Cooper v. Pate*, 378 U.S. 546, 546 (1964).

The Office of Inspector General ("OIG") is an independent agency of the City of Atlanta that conducts reviews, provides advice and education, and investigates fraud, waste, abuse, and corruption allegations of "City of Atlanta

employees, elected officials, commission and board members, vendors and subcontractors." (Doc. 1 ¶ 9–11).

The Inspector General is an elected office that is appointed by a governing board, confirmed by the City of Atlanta, and approved by the Mayor. (*Id.* ¶ 12). As an independent body, OIG is led by an Inspector General, and together, both the OIG and Inspector General report to its governing board. (*Id.* ¶ 13). Although it operates as an independent body, the OIG is required to comply with all Georgia statutes and federal law. (*Id.* ¶ 14). Specifically, when conducting investigations, the OIG and Inspector General can only issue subpoenas to financial institutions in compliance with O.C.G.A. § 7-1-360(b). (*Id.* ¶ 15). This statute states that when an agency seeks production or disclosure of documents, it must provide notice to the depositor or customer. *See* O.C.G.A. § 7-1-360(b).

At the time the Complaint was filed, Defendant Shannon K. Manigault ("Manigault") was the Inspector General of the OIG. (*Id.* ¶ 7). During her tenure, she oversaw the issuance of numerous subpoenas, purportedly issued under O.C.G.A. § 7-1-360(b), sent between May 2022 and April 2024. (*Id.* ¶¶ 21, 113). Specifically, these subpoenas requested, without notification to the customer, production of bank records from various financial institutions. (*Id.* ¶¶ 24–116). These subpoenas affected various City of Atlanta residents, City employees and vendors, including Plaintiff. (*Id.* ¶¶ 21, 41, 45, 51, 61, 81, 85, 89, 93).

2

It is unclear whether all of Defendant Manigault's subpoenas were effective, but according to Plaintiff, she did receive his bank records from a financial institution. (*Id.* ¶ 120). After receiving Plaintiff's bank information, Defendant Manigault submitted a report, on August 14, 2024, accusing Plaintiff "and others of corruption and financial misconduct." (*Id.* ¶ 121). Plaintiff responded to this report on September 3, 2024, by refuting the claims in the report and denouncing Defendant Manigault's "investigative methods, misconduct and violations of his and others' constitutional rights." (*Id.* ¶ 122). In response, Defendant Manigault filed a "clearly retaliatory," and "frivolous" ethics complaint with the State Ethics Commission, "well after" she had completed her investigation into Plaintiff's bank records. (*Id.* ¶¶ 123–125).

Then, shortly after issuing additional subpoenas, the City of Atlanta's General Counsel issued a letter to the OIG and Defendant Manigault on February 3, 2025, "demanding that they stop the pattern and practice of violating the rights of citizens, vendors, and employees of the City of Atlanta." (*Id.* ¶¶ 117–118). And as a result of these actions, Plaintiff now brings the following claims in his Complaint: Count I for preliminary injunction, Count II for violation of his Fourth Amendment Rights under Section 1983, Count III for violation of his First Amendment Rights under Section 1983, and Count IV for Invasion of Privacy under state law. (*Id.* ¶¶ 127–162).

## II.    Procedural Background

In response to the Complaint, Defendants have filed two Motions to Dismiss arguing that Plaintiffs' claims warrant dismissal under Federal Rule of Civil Procedure Rule 12(b)(6) for failure to state a claim. (*See* Docs. 6; 10). Plaintiff opposes these Motions and Defendants and Plaintiff have filed their respective responses and replies. (*See* Docs. 9; 13; 15; 16; 17).  The Court addresses the Parties' arguments below.

### Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For the purposes of a motion to dismiss, the court must accept all factual allegations in the complaint as true; however, the court is not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although the plaintiff is not required to provide "detailed factual allegations" to survive dismissal, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678; *Twombly*, 550 U.S. at 555.

4

## Discussion

As a threshold matter, Plaintiff has clarified a few things relating to his Complaint. First, he has withdrawn Count I for a preliminary injunction. (Doc. 9 at 14). Second, he has confirmed that his invasion of privacy claim against Defendant Manigault is in her individual capacity only. (*Id.*). Finally, he does not bring his First Amendment Section 1983 Claim against the City of Atlanta. (*Id.*).

The Court will address the Parties' arguments based on the claims brought against each Defendant, as well as Plaintiff's request for leave to amend the Complaint.

### III.    Plaintiff's Claims Against the City of Atlanta (Count II)

Here, it appears that by Plaintiff's own admissions, he brings one claim against the City of Atlanta.[1] Specifically, Plaintiff alleges that the City of Atlanta "engaged in a policy, practice, or custom that violates the Fourth Amendment to the United States Constitution," when it oversaw and sanctioned Defendant Manigault's and the OIG's unlawful search and seizure of "Plaintiff's confidential banking information without due process of law." (Doc. 1 ¶ 141). Thus, it appears

---

[1] This conclusion is based on Plaintiff's admissions and allegations in his Complaint. Specifically, since Count I, asserted against all Defendants is withdrawn, and Plaintiff does not assert Count III or IV against the City of Atlanta, the only remaining Count against this Defendant is Count II. (*See* Docs. 1 ¶¶ 127–162; 9 at 14).

that Plaintiff asserts a *Monell* claim against the City of Atlanta. *See Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658 (1978).

The City of Atlanta argues however, that this claim should be dismissed because Plaintiff has not alleged that "the City of Atlanta had authority to exercise control over Manigault's issuance of subpoenas," and Plaintiff's "own allegations make it abundantly clear that Atlanta did not sanction or order Manigault's actions." (Doc. 6 at 9). The City of Atlanta further argues that the Complaint "explains that shortly after learning of the alleged conduct, the City of Atlanta sent a cease-and-desist letter," and thus "it cannot be said Atlanta sanctioned, ordered, or in any way participated in Manigault's subpoenas." (*Id.* at 10).

Plaintiff argues in response that the "Complaint fairly alleges that the City had authority over Manigault with respect to" issuing subpoenas, and that Plaintiff has pled several facts "which establish that [the] City of Atlanta had the requisite control over . . . Manigault's issuance of subpoenas." (Doc. 9 at 10).

"To establish municipal liability under § 1983, a plaintiff must show that: (1) his constitutional rights were violated, (2) the municipality had a custom or policy that constituted deliberate indifference to that constitutional right, and (3) the policy or custom caused the violation." *Henning v. Walmart Stores Inc.*, 738 F. App'x 992, 999 (11th Cir. 2018). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to

be acting on behalf of the municipality." *Kraus v. Martin Cnty. Sheriff's Off.*, 753 F. App'x 668, 674 (11th Cir. 2018). "[A] custom is a practice that is so settled and permanent that it takes on the force of law." *Id.* "[T]he custom or policy must be the 'moving force' behind the constitutional deprivation for there to be sufficient causation." *Marantes v. Miami-Dade Cnty.*, 649 F. App'x 665, 672 (11th Cir. 2016) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–94). "[T]he bar to establish municipal liability is very high." *Simmons v. Bradshaw*, 879 F.3d 1157, 1169 (11th Cir. 2018). Ultimately, the plaintiff "must show that the municipality has officially sanctioned or ordered the action causing the alleged injury." *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1307 n.21 (11th Cir. 2019).

Here, although the Parties appear to disagree on whether the City of Atlanta exercised control of Defendant Manigault's actions, that is irrelevant for purposes of Plaintiff's *Monell* claim. Instead, the relevant inquiry is whether the municipality sanctioned or ordered the actions that caused the alleged injuries. And because Plaintiff's own Complaint alleges that the City of Atlanta sent a cease-and-desist letter to Defendant Manigault regarding her issuance of subpoenas, Plaintiff has admitted, "that Atlanta did not sanction or order Manigault's actions." (Doc. 6 at 9). Therefore, Plaintiff's *Monell* claim against the City of Atlanta fails. Accordingly, Count II is dismissed against the City of Atlanta.

## IV.    Plaintiff's Claims Against the OIG (Count II)

Plaintiff brings a Section 1983 claim against the OIG for alleged violations of his rights under the Fourth Amendment. (*See* Doc. 1 ¶¶ 133–145). Specifically, Plaintiff alleges that the OIG illegally searched his property, and "engaged in a policy, practice, or custom that violates the Fourth Amendment." (*Id.* ¶¶ 134–142).

Here, it is unclear to the Court whether the OIG has moved to dismiss this claim because its Motion to Dismiss (Doc. 6) makes no mention of this claim and the arguments in its reply brief address the City of Atlanta and Defendant Manigault only. (*See* Doc. 13 at 6–10). Similarly, Plaintiff fails to acknowledge his Fourth Amendment claim against the OIG as well. (*See generally* Doc. 9). Therefore, Count II is dismissed against the City of Atlanta Office of Inspector General.

## V.    Plaintiff's Claims Against Defendant Manigault (Counts II–IV)

### A.    Plaintiff Cannot Maintain his Section 1983 Claims Against Defendant Manigault in her Official Capacity

As a threshold matter, it is not entirely clear if Plaintiff intended to bring his Section 1983 claims against Defendant Manigault in her official capacity, individual capacity, or both. However, regardless of his decision, these claims fail against Defendant Manigault in both her official and individual capacities.

First, as to Plaintiff's Section 1983 claims against Defendant Manigault in her official capacity, Defendant Manigault argues that she cannot be sued in her

official capacity "because she has resigned from OIG," and Plaintiff gives no response in opposition. (*See* Doc. 10 at 9 citing Fed. R. Civ. P. 25(d)).

Defendant Manigault is correct that she cannot be sued in her official capacity as the Inspector General because the Federal Rules of Civil Procedure will not allow it. Indeed, Federal Rule of Civil Procedure 25(d) states that "when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending . . .[t]he officer's successor is automatically substituted as a party." Accordingly, Plaintiff's Section 1983 claims against Defendant Manigault in her official capacity are dismissed.

### B.    Plaintiff Cannot Maintain his Section 1983 Claims Against Defendant Manigault in her Individual Capacity

Defendant Manigault argues that "qualified immunity bars Plaintiff's federal claims for damages against [Defendant] Manigault in her individual capacity." (Doc. 10 at 27). The Court agrees.

The doctrine of qualified immunity protects government officials performing discretionary functions from being sued in their individual capacities. *Wilson v. Layne*, 526 U.S. 603, 609 (1999). Officials are shielded "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority." *Cottone v. Jenne*, 326 F.3d

9

1352, 1357 (11th Cir. 2003). Once the government official has satisfied this initial burden, the burden shifts to the plaintiff to satisfy a two-part test establishing "that the defendant committed a constitutional violation and that the law governing the circumstances was already clearly established at the time of the violation." *Youmans v. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Here, as to Plaintiff's Fourth Amendment claim, Plaintiff alleges that Defendant Manigault violated his "his right to be free of unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution" when she illegally obtained his bank records. (*See* Doc. 1 ¶¶ 133–145). Defendant Manigault argues that this claim should be dismissed because there is no "right to the privacy of financial records in the possession of a bank." (Doc. 10 at 12).

First, Defendant Manigault has met her burden of proving that she was acting within her discretionary authority when she issued subpoenas to financial institutions seeking to obtain Plaintiff's bank records. (*See* Docs. 6 at 16; 10 at 5). Therefore, the burden now shifts to Plaintiff to show that Defendant Manigault

10

violated a clearly established constitutional right. And the Court finds that Plaintiff has not met that burden as to his Fourth Amendment claim.

Indeed, as Defendant Manigault correctly argues, Plaintiff has no privacy right in bank records. (Doc. 10 at 12). Specifically, in *United States v. Miller*, the Supreme Court held that as it relates to bank account information, "a subpoena to a third party to obtain the records of that party does not violate the rights of a defendant." 425 U.S. 435, 444 (1976); *see also Hoffman v. Beseler*, 760 F. App'x 775, 778 (11th Cir. 2019) ("[T]he Supreme Court held that individuals do not have a Fourth Amendment expectation of privacy in information they have revealed to a third party, which includes bank records.") (citing *U.S. v. Miller*, 425 U.S. at 443–44). Although Congress's passage of the Financial Privacy Act of 1978 abrogated the holding of *Miller* as it relates to the federal government issuing subpoenas for bank records, the holding still controls in civil cases. *See e.g.*, *Presley v. United States*, 895 F.3d 1284, 1290–91 (11th Cir. 2018) ("[S]ettled precedent requires us to conclude that Plaintiff's clients lack a reasonable expectation of privacy in financial records held by the [b]ank."); *see also Norfolk S. R.R. Co. v. Boatright R.R. Prods., Inc.*, No. 2:17-cv-1787, 2019 WL 12105623, at *3 (S.D. Ala. Sept. 30, 2019). Therefore, Plaintiff cannot maintain his Section 1983 claim for violations of the Fourth Amendment against Defendant Manigault in her individual capacity.

Finally, as to Plaintiff's First Amendment claim, Plaintiff alleges that Defendant Manigault violated his First Amendment rights when she filed "the frivolous State Ethics Commission" complaint in response to his criticisms of her investigative methods. (*See* Doc. 1 ¶¶ 146–157).

Defendant Manigault first argues that the filed ethics complaint was a retaliatory investigation therefore not "a constitutional tort." (Doc. 10 at 19). In response, Plaintiff argues that the ethics complaint was not a retaliatory investigation because Defendant Manigault "had already finished her investigation." (Doc. 16 at 12). Thus, Plaintiff argues, Defendant Manigault's "referral to the State Ethics Commission" after Plaintiff responded to her investigative report was an action taken in retaliation "for [Plaintiff's] exercise of his rights of expression." (*Id.* at 13). In her reply, Defendant Manigault concedes that although the ethics complaint may not have been a "retaliatory investigation," Plaintiff has still not shown a First Amendment violation because he has cited to no case law that clearly establishes that a "referral of this nature could be considered retaliatory in violation of the First Amendment." (Doc. 17 at 7).

Here, as with Plaintiff's Fourth Amendment claim, Defendant Manigault has met her burden to prove that she was acting within her discretionary authority when she discharged "her lawful duties as Inspector General to refer to appropriate authorities matters outside the jurisdiction of [the] OIG." (*See id.*).

12

Therefore, the burden now shifts to Plaintiff to show that Defendant Manigault violated a clearly established constitutional right. And here, the Court finds that Plaintiff has not met that burden.

First, although it is unclear whether this ethics filing was a retaliatory investigation or a formal complaint, that fact is irrelevant. Indeed, as Defendant Manigault again correctly points out, Plaintiff has failed to point to any supporting authority that it is clearly established under the law that sending a referral to the State Ethics Commission, after completing an investigation, violates the First Amendment. (*See id.*). Indeed, although the referral was made after Plaintiff engaged in protected speech, the only case he cites in support is *Stewart v. Jones Utility & Contracting Co. Inc.*, 806 F. App'x 738, 742 (11th Cir. 2020). (*See* Doc. 16 at 14). However, that case is unavailing because it specifically discussed the issue of retaliation under Title VII and the American with Disabilities Act, not the First Amendment. *Stewart*, 806 F. App'x 738 at 742.

Additionally, Plaintiff's attempt to meet this burden by arguing that his "vendor contract has not been renewed," does not change the Court's conclusion. (Doc. 16 at 14). As Defendant Manigault correctly argues, Plaintiff's Complaint contains "no fact, and gives no indication, supporting any conclusion that OIG's letter of referral . . . resulted in the City of Atlanta denying him a contract." (Doc. 17 at 9). Because Defendant Manigault has objected to these new facts raised by

13

Plaintiff in his response, it will not be treated as if unopposed. *See Welch v. Delta Air Lines, Inc.*, 978 F.Supp. 1133, 1148 (N.D.Ga.1997) ("[U]nder Local Court Rule 7.1 of the United States District Court for the Northern District of Georgia, factual and legal claims to which there is no response should be treated as unopposed."). And if Plaintiff wishes to raise them in the pleadings, he will have to make a formal amendment to his Complaint. Therefore, Plaintiff is also unable to maintain his First Amendment claim against Defendant Manigault in her individual capacity.

Accordingly, Counts II and III of Plaintiff's Complaint are dismissed against Defendant Manigault in both her official and individual capacities.

### C. Plaintiff's Invasion of Privacy Claim Against Defendant Manigault in her Individual Capacity (Count IV)

Finally, Plaintiff alleges that Defendant Manigault invaded his privacy when she obtained his bank records through legally deficient subpoenas. (Doc. 1 ¶¶ 158–162).

In response, Defendant Manigault argues that Plaintiff's privacy claim should be dismissed because (1) it is barred by official immunity, and (2) Plaintiff does not have a "cognizable claim for invasion of privacy." (Doc. 10 at 20–22). Although Defendant Manigault makes two arguments, the Court will only address the second argument because Defendant Manigault cannot benefit from official immunity where she has already admitted she cannot be sued in her official capacity because the purpose of official immunity no longer applies to her. *See*

*Gibson v. Vayens*, No. 1:22-cv-02694-VMC, 2025 WL 3682019, at *13 (N.D. Ga. Mar. 27, 2025) (explaining that the doctrine of official immunity provides limited protection to defendants who are being sued in their individual capacity for actions undertaken in the scope of their authority). Therefore, the Court will only assess whether Plaintiff has sufficiently alleged enough facts to establish an invasion of privacy claim under Georgia law.

In Georgia, the tort of "invasion of privacy" can be divided into four categories:

> (1) [I]ntrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; [and] (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness."

*Anderson v. Mergenhagen*, 642 S.E.2d 105, 109 (Ga. Ct. App. 2007). Here, Plaintiff's invasion of privacy claim falls into the first category because he alleges that Defendant Manigault's conduct "constituted an affront to [his] personal dignity and an intrusion of solitude and private affairs." (Doc. 1 ¶ 159).

The Georgia Court of Appeals recently explained that an invasion of privacy claim, specifically one based on intrusion of seclusion:

> [I]nvolves a prying or intrusion, which would be offensive or objectionable to a reasonable person, into a person's private concerns. [And] . . . to recover for intrusion upon seclusion, [the plaintiff] must

15

> demonstrate that [he] was subjected to a physical intrusion analogous to a trespass.

*Herzler v. Herzler*, 890 S.E.2d 16, 20 (Ga. Ct. App. 2023) (quoting *Ass'n Servs., Inc. v. Smith*, 549 S.E.2d 454, 458 (Ga. Ct. App. 2001)).

Here, as Defendant Manigault correctly argues, the Complaint includes no "facts from which the Court could assume" that Defendant Manigault "physically intrud[ed] Plaintiff in any way." (Doc. 10 at 24). Indeed, the alleged act of sending legally deficient subpoenas to a financial institution for bank records and other financial information does not support a finding of a physical intrusion. (*See generally* Doc. 1).[2] Accordingly, Count IV is dismissed.

## VI.    Plaintiff's Request for Leave to Amend the Complaint

Finally, Plaintiff argues, in his response brief in opposition to Defendant Manigault's Motion to Dismiss, that it should be granted an opportunity to amend his Complaint. (*See* Doc. 16 at 17).

Rule 15(a)(2) provides that a court should "freely" give leave to amend a pleading "when justice so requires." Rule 15(a)(2) operates within the confines of Rule 7(b), which provides that a "request for a court order must be made by [a] motion" that "state[s] with particularity the grounds for seeking the order" and

---

[2] Plaintiff provides no arguments in response to Defendant Manigault's claim that he has not alleged sufficient facts to show a physical intrusion in support of his invasion of privacy claim. (*See* Doc. 16 at 15–17).

"state[s] the relief sought." Fed. R. Civ. P. 7(b). In the context of motions for leave to amend, the Eleventh Circuit has interpreted Rule 7(b) to require attaching a proposed amended complaint to a motion for leave to amend if the motion itself does not fully "set forth the substance of the proposed amendment." *Advance Tr. & Life Escrow Servs., LTA v. Protective Life Ins. Co.*, 93 F.4th 1315, 1336 (11th Cir. 2024). Rule 7(b)'s formal motion requirement is strictly construed, with the Eleventh Circuit holding that "[w]here a request for leave to file an amended complaint simply is embedded within an opposition memorandum, the issue has not been raised properly." *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018) (internal quotations and citations omitted).

As the City of Atlanta correctly argues, Plaintiff has improperly requested leave to amend because he has embedded this request in his opposition memorandum. (Doc. 13 at 12–14). Therefore, if Plaintiff wishes to amend his Complaint, he must do so in accordance with the law of this Circuit.

## Conclusion

For the foregoing reasons, it is **ORDERED** that Defendants' Motions to Dismiss (Docs. 6; 10) are **GRANTED**. Plaintiff's Complaint (Doc. 1) is **DISMISSED WITHOUT PREJUDICE** as to all Defendants. It is

**FURTHER ORDERED** that if Plaintiff desires to amend his Complaint, he is **DIRECTED**, to seek leave to file an amended complaint within **TWENTY-ONE**

17

**(21) DAYS** of the date of entry of this Order. Failure to do so will result in the Court dismissing this action for want of prosecution. It is

    **FURTHER ORDERED** that the Clerk is **DIRECTED** to resubmit this matter to the undersigned after expiration of the deadline.

    **SO ORDERED** this 30th day of March, 2026.

                       _____

                       Victoria Marie Calvert
                       United States District Judge